IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, ET AL.,<br><br>             Plaintiffs,<br><br>     vs.<br><br>PAULA HAYGARTH, ET AL.,<br><br>             Defendants. | CIV. NO. 25-00297 JAO-RT<br><br>ORDER (1) GRANTING IN PART DEFENDANTS' *DAUBERT* MOTION, ECF NO. 42; (2) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT, ECF NO. 46; (3) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS, ECF NO. 49; AND DENYING PLAINTIFFS' MOTION TO STRIKE, ECF NO. 72 |

**ORDER (1) GRANTING IN PART DEFENDANTS' *DAUBERT* MOTION, ECF NO. 42; (2) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT, ECF NO. 46; (3) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS, ECF NO. 49; AND DENYING PLAINTIFFS' MOTION TO STRIKE, ECF NO. 72**

Plaintiffs/Counter-Defendants Liane Wilson ("Liane") and Life Mastery Network LLC ("LMN") (collectively, "Plaintiffs") brought this defamation suit against Defendants/Counter-Claimants Paula Haygarth ("Paula"), Byron Horvath ("Byron"), and Stefanie Vogt-Horvath ("Stefanie") (collectively, "Defendants"). Defendants asserted counterclaims that Plaintiffs, in actuality, defamed them.

Before the Court are four motions.  Defendants first seek to exclude evidence pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 37, Federal Rule of Evidence ("FRE") 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  ECF No. 42 ("*Daubert* Motion").  Then Defendants moved for summary judgment against Plaintiffs' First Amended Complaint ("FAC"), ECF No. 46 ("FAC MSJ"), and summary judgment in favor of their counterclaims, ECF No. 49 ("Counterclaims MSJ").  Finally, Plaintiffs moved to strike two declarations that were attached to Defendants' reply in support of their FAC MSJ, ECF No. 72 ("Motion to Strike").

For the following reasons, the Court GRANTS in part and DENIES in part the *Daubert* Motion, FAC MSJ, and Counterclaims MSJ; and DENIES the Motion to Strike.

## I.    BACKGROUND

### A.    General Facts[1]

Liane, who goes by Liana Shanti, founded her company, LMN, which is used to operate online educational courses that aim to improve students' businesses, lifestyles, and overall wellness.  *See* ECF No. 69-1 ¶¶ 1–2.  On Plaintiffs' website, Liane markets herself as a "world renowned thought leader in

---

[1] Unless otherwise indicated, the following facts are alleged in the FAC or in Defendants' Answer and Counterclaims.  Many of the following are disputed.

quantum energy healing, spiritual psychology, nutrition, emotional transformation, and feminine wealth[.]"  ECF No. 45-11.  She has more than 35,000 social media followers and more than 100,000 customers in 90 countries.  *See* ECF No. 84 ¶ 1; ECF No. 63 ¶ 1.

All Defendants are Canadian and reside in Saskatchewan, Canada.  *See* ECF No. 82-5 at 14 ¶¶ 3–6.  Paula is a spiritual leader who serves clients in Canada. *See* ECF No. 45-2 ¶ 2.  Paula's significant other is Wade Martin, who was previously married to Amanda Brady ("Amanda"), a former student of Liane.  *See* ECF No. 63 at 15 ¶ 3.  Byron and Stefanie are currently married, although Byron was formerly married to Haley Winter ("Haley"), who also was one of Liane's students.  *See id.* ¶ 4.

### 1.    Plaintiffs' Defamation Claims

Defamatory statements about Plaintiffs started surfacing online around April 2022 after Haley began to speak out on her own social media accounts about abuse she allegedly experienced.  *See id.* at 15–16 ¶ 6.  Plaintiffs allege that Defendants have made false and damaging factual statements about Plaintiffs, including accusations of running a cult, human trafficking, extortion, fraud, and other misconduct.  ECF No. 69-1 ¶ 10.  The statements that Plaintiffs claim are defamatory can be organized into three categories as described below.  Specific statements will be included within the Court's analysis.

First, Plaintiffs allege that Defendants, utilizing anonymous accounts, posted defamatory statements on social media, such as Instagram, Reddit, and a website titled, Cult Education Institute ("CEI").  *See id.* ¶ 11.  This has caused Liane and her family to receive threats of violence and LMN to lose clients.  *See id.* ¶¶ 14–15. As to how Plaintiffs knew who authored these anonymous statements, two non-parties to this lawsuit, Amanda and her husband Drew Brady ("Drew") hired Alexander Feil ("Feil") from Sourced Intelligence, LLC ("Sourced") around May 2022 to investigate who was behind these anonymous posts.[2]  *See* ECF No. 63-2 at 31:17–23.  He created a draft report titled, "Attribution Investigation: Working Product 1.0" (hereinafter "Draft Report"), which concluded with "high confidence" that Paula and Byron were the authors of at least some of the anonymous statements.  *Id.* at 31:17–23, 73:1–5; ECF No. 63-8 at 4.

Second, Paula reposted allegedly defamatory content from Reddit on her personal Facebook page.  *See* ECF No. 69-1 ¶ 39.  Although not mentioned in the FAC, Plaintiffs now report that Paula also added defamatory content to the post. *See* ECF No. 59 at 15.

Third, Defendants submitted allegedly false or misleading statements in Liane's criminal case in the United States District Court for the District of Hawaii,

---

[2] Plaintiffs do not explain why Amanda and Drew hired Feil.

*United States of America v. Liane Wilson*, Case 1:19-cr-00105-SOM ("*United States v. Wilson*").  *See* ECF No. 69-1 ¶¶ 55–57.  In December 2021, the Honorable Susan Oki Mollway sentenced Liane to five years of probation for one count of bankruptcy fraud.  *See United States v. Wilson*, Dkt. No. 72.[3]  Around March 2023, and while Liane was on probation, Defendants sent Judge Mollway letters ("Court Letters"), outlining several of her then-recent misdeeds, which prompted the Government to seek an additional probation condition.  *See id.*, Dkt. Nos. 80, 99, 102, 106.

### 2.    Defendants' Defamation Counterclaims

Defendants refute Plaintiffs' allegations and assert that *Plaintiffs defamed them*.  *See* ECF No. 82-5 at 13.  Since at least November 2022, Plaintiffs posted allegedly defamatory statements about Defendants under the Instagram username, @lianashanti and a website they created titled, "Exposing Family Abuse," which used to be "Exposing Family Cults."  *See id.* at 15–23.  One post listed all Defendants among other individuals' names as a "vile group of PEDOS PEDO

---

[3]  Defendants request the Court take judicial notice of Liane's criminal case and the records in it.  *See* ECF Nos. 83, 84.  At the Hearing, Plaintiffs did not oppose.  Because Plaintiffs' claims rely on material that was submitted in Liane's criminal case, the Court will take judicial notice of the case and records as needed.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of other court cases to determine essential issues and also taking judicial notice of sealed documents when a party in the instant case was already privy to the sealed documents).

SUPPORTERS PEDO ALIGNERS VICTIM BLAMERS[.]"  *Id.* at 16–17 ¶ 19.

Plaintiffs also targeted Defendants individually, which will be discussed in more

detail below.

**B.    Procedural History**

Plaintiffs filed their complaint on December 6, 2022 in the Circuit Court of

the Fifth Circuit of the State of Hawai'i ("State Court").  *See* ECF No. 1 at 2.

Byron and Paula filed an answer and counterclaim against Plaintiffs in January

2023.  *See id.*  Around June 30, 2025, the State Court granted Plaintiffs leave to

amend their complaint and add Stefanie as a Defendant, after which Plaintiffs filed

their operative FAC.  *See id.* at 2–3.  In the FAC, Plaintiffs allege the following

claims against all Defendants:  Count I (Defamation – Libel); Count II (False

Light); Count III (Intentional/Negligent Infliction of Emotional Distress); Count IV

(Civil Conspiracy); and Count V (Punitive Damages).  *See* ECF No. 69-1 at 9–12.

A couple weeks later, on July 17, 2025, Defendants removed the case on

diversity grounds.[4]  *See* ECF No. 1 at 3–4.  The day before Defendants removed

the case, they filed an amended answer and amended counterclaim that added

Stefanie as a counter-claimant.  ECF No. 82-5.  In it, Defendants allege one count

---

[4] Despite the case proceeding in State Court for several years, Plaintiffs did not
challenge the timeliness of removal.

of defamation and a second count for false light and invasion of privacy against both Plaintiffs.  *See* ECF No. 82-5 at 24–27.

Because the parties had been litigating the case in State Court for about two and a half years, most of the discovery deadlines had already passed once the case was removed.  *See* ECF No. 82-2.  Relevant here, Plaintiffs' expert disclosures were due by November 8, 2024.  *See id.* at 4.

There are four motions that relate to Defendants' MSJs.  First, Defendants' *Daubert* Motion aims to exclude the testimony of Feil and the Draft Report because Plaintiffs never designated Feil as an expert and his testimony and the Draft Report are not reliable or relevant.  *See* ECF No. 42.  Second, Defendants filed their FAC MSJ to dispose of Plaintiffs' FAC.  *See* ECF No. 46.  Third, they also moved for affirmative summary judgment on their counterclaims, arguing that no dispute of material fact exists that would preclude them from prevailing.  *See* ECF No. 49.  Plaintiffs opposed all three motions.  ECF Nos. 55, 59, 61.

Finally, after Defendants filed replies in support of their MSJs, Plaintiffs moved to strike two declarations attached to Defendants' FAC MSJ reply because Defendants improperly included new facts; Plaintiffs alternatively requested leave to file a surreply.  *See* ECF No. 72.  Defendants opposed.  ECF No. 76.  During this process, the parties had to file several errata and amended Concise Statements of Fact ("CSFs").  ECF Nos. 50, 63, 69, 70, 71, 79, 83, 84.  The Court held a

hearing for the four motions on April 9, 2026 ("Hearing").  ECF No. 86.  On May

8, 2026, Defendants filed a Notice of Supplemental Authority in support of their

FAC MSJ, which included *Laura Loomer v. Bill Maher, et al.*, --F. Supp. 3d--,

2026 WL 1098163 (M.D. Florida, April 22, 2026).  ECF No. 90.

## II.    DAUBERT MOTION

Defendants' *Daubert* Motion is also a discovery motion because, in addition

to relying on FRE 702, they seek to exclude Feil's testimony and the Draft Report

prepared by Feil based on FRCP 26 and 37.  *See* ECF No. 42 at 6.  Plaintiffs argue

that Feil is a percipient witness, but even if he is considered an expert, Defendants

are not prejudiced and his testimony should be allowed.  *See* ECF No. 55 at 6–7.

Feil is a representative of Sourced and was the sole person investigating the

anonymous posts.  *See* ECF No. 63-2 at 7:20–22, 73:2–5.  Feil has had

intelligence training, such as receiving a certificate from the Advanced Threat

Assessment Academy and has completed specific courses with the Marine Corps,

graduating from the intelligence officer course.  *See* ECF No. 42-8 at 14:3–22.  To

begin his investigation, he spoke with the clients (non-parties Amanda and Drew)

on the phone and looked for conversations, groups, or commentary that referenced

the clients or Liane, with a primary focus on posts by Paula and Byron.  *See* ECF

No. 63-2 at 73:6–76:25.  After tracking the social media accounts of Paula, Byron,

and others between April and May 2022, Feil concluded with about an 80 to 95

percent degree of confidence that Paula and Byron were involved in posting the content.  *See* ECF No. 42-2 at 1–4; ECF No. 55-5 at 81:8–82:12.

## A.   Legal Standard

### 1.   FRCP 26 and 37

FRCP 26(a)(2)(A) requires a party to disclose any witness it may use at trial to present evidence under FRE 702, 703, or 705.  Witnesses are experts if they base their testimony on scientific, technical, or other specialized knowledge.  *Compare* Fed. R. Evid. 701(c) (lay witness is limited to opinion testimony that is "*not* based on scientific, technical, or other specialized knowledge") (emphasis added) *with* Fed. R. Evid. 702 (outlining requirements for opinion testimony of expert witness who is qualified "by knowledge, skill, experience, training, or education").  FRCP 26(a)(2)(D) requires that parties "must make [expert] disclosures at the times and in the sequence that the court orders."

FRCP 37 "gives teeth to these requirements by forbidding the use at trial of any information . . . that is not properly disclosed."  *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  In relevant part, FRCP 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The party facing sanctions has the

burden to prove its failure was substantially justified or was harmless. *See Yeti by Molly*, 259 F.3d at 1107. The Court may assess the following factors to determine whether a violation is substantially justified or harmless:

> (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.

*Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *see also Gryglak v. HSBC Bank USA, N.A.*, 2023 WL 3243998, at *2 (9th Cir. May 4, 2023); *Paniagua, v. Hilton Management, LLC, et al.*, 2025 WL 4087078, at *2 (D. Haw. Nov. 19, 2025).

### 2. *Daubert*

FRE 702 governs the admissibility of expert evidence. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003). Witnesses may offer their expert opinions if these requirements are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The admissibility of expert testimony is evaluated under *Daubert*. "Under *Daubert*, 'the district court judge must ensure that all admitted expert testimony is both relevant and reliable.'" *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotation marks and footnote omitted). The Court's gatekeeping function extends to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

**B.    Discussion**

Defendants argue that the Court should exclude Feil's testimony and the Draft Report because (1) Feil is an expert; (2) Plaintiffs failed to properly disclose him; and (3) his testimony and the Draft Report do not meet *Daubert* standards. *See* ECF No. 42 at 7. Plaintiffs argue that Feil is not an expert under FRE 702 and he should be able to testify as a percipient witness. *See* ECF No. 55 at 6.

**1.    Whether Feil is an Expert Witness**

The most pertinent inquiry here is whether Feil's testimony as outlined in the Draft Report is an expert opinion under FRE 702 or lay witness opinion under

FRE 701.  Defendants argue Feil is an expert because his testimony and the Draft

Report are based on scientific, technical, or other specialized knowledge.  *See* ECF

No. 42 at 13.  Plaintiffs adamantly deny he's an expert because they did not

designate him as an expert (which the Court disregards as a circular argument) and

his testimony is based on his personal knowledge while he conducted an

investigation for non-parties.  *See* ECF No. 55 at 10–11.

Lay witnesses are precluded from providing an opinion that is based on

scientific, technical, or other specialized knowledge within the scope of FRE 702.

*See* Fed. R. Evid. 701(c).  Indeed, FRE 701 specifically includes this provision "to

eliminate the risk that the reliability requirements set forth in Rule 702 will be

evaded through the simple expedient of proffering an expert in lay witness

clothing[,] . . . [which] also ensures that a party will not evade the expert witness

disclosure requirements set forth in Fed. R. Civ. P. 26[.]"  *Black v. Correa*, 2008

WL 3845230, at *7 (D. Haw. Aug. 18, 2008) (quoting Fed. R. Evid. 701 advisory

committee's note to 2000 amendment); *see also United States v. Figueroa-Lopez*,

125 F.3d 1241, 1246 (9th Cir. 1997) (holding that opinions and observations of

federal agent that were not "common" but required expertise and were improper as

lay witness testimony).  However, a witness may have dual roles and "the line

between lay and expert opinion *depends on the basis of the opinion*, not its subject

matter." *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017) (emphasis added).

The Court fails to see how Plaintiffs can genuinely view Feil's testimony and his Draft Report as purely lay opinion. Feil concludes in the Draft Report, "[b]ased on linguistic analysis of the posts published by Haygarth and anonymous users[,] . . . with a high degree of confidence that Paula Haygarth is ONE of the author(s) of the communications." ECF No. 42-2 at 22. He also avers "with a high degree of confidence that" Byron was a participant in the anonymous communications. *Id.* In his deposition, Feil goes so far to say that his degree of confidence was about 80 to 95 percent. *See* ECF No. 55-5 at 81:8–82:12. However, Feil and Plaintiffs fail to explain the basis for these opinions.

The Court concludes that the basis of such opinion would require specialized knowledge. Linguistics experts are often called to testify on common uses of certain phrases. *See, e.g.*, *Git-R-Done Prods., Inc. v. Giterdone C Store, LLC*, 2017 WL 11681859, at *4 (S.D. Miss. Jan. 3, 2017); *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1370 (N.D. Ga. 2021); *Zavadovsky, et al. v. Republic Of Austria, et al.*, 2026 WL 875148, at *16 n. 15 (D.D.C. Mar. 31, 2026); *LG Elecs. v. Whirlpool Corp.*, 2010 WL 3613814, at *5–6 (N.D. Ill. Sept. 3, 2010). This suggests that specialized knowledge is required to opine on such matters. *See Black*, 2008 WL 3845230, at *7. Indeed, Feil himself

13

testified that he believes "it's more uncommon than common" to use all-capitalization for emphasis in online posts but admits that is "pure . . . speculation" on his part.  ECF No. 42-8 at 106:17–23.

On the other hand, the Court finds that Feil is a dual witness.  Feil was hired on April 28, 2022 and tracked the social media activities of individuals his clients identified.  *See* ECF No. 63-2 at 31:17–23.  Since Feil was tracking certain data in real time, he may discuss his observations of what was said, who said it, when it was said, where it was said, etc.,[5] because such observations do not require expertise.  However, without direct knowledge, any testimony that opines on who authored the anonymous accounts would need to meet expert requirements.  *See Black*, 2008 WL 3845230, at *7.  And, regardless, even if the Court determined Feil's opinion did not involve any specialized knowledge, it would not be helpful because the jury can compare the social media posts themselves and he would "essentially 'spoon-[feed] his interpretations of the [evidence] to the jury.'" *United States v. Dorsey*, 122 F.4th 850, 858 (9th Cir. 2024) (quoting *United States v. Gadson*, 763 F.3d 1189, 1207–08 (9th Cir. 2014)).

While Plaintiffs further argue that Feil is not an expert because he formed his opinion while he was working for non-parties, the cases that they rely on are

---

[5] The Court defers to trial the question of admissibility of such statements under the rules of evidence.

unhelpful to their cause. ECF No. 55 at 10–11. For example, *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), supports the Court's determination that Feil is a dual witness whose testimony should be curbed. There, the Second Circuit held that a bank employee who conducted an investigation for the bank could testify only as to his perceptions with regard to his investigation. *See id.* at 181 (stating that the admission of testimony "was error because it was not based entirely on [the employee]'s perceptions; the District Court abused its discretion to the extent it admitted the testimony based on [the employee]'s experience and specialized knowledge in international banking" and explaining that "to the extent Huang's testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible . . . because it was based on his *perceptions*" (emphasis in original)). Applying that rationale here, Feil is precluded from testifying about his opinions that were based on more than just his perception—i.e., his conclusions that, for example, the postings he reviewed were likely written by Defendants because of the use of capitalization in their known postings and the anonymous postings.

Consequently, the Court now determines whether Plaintiffs' failure to disclose Feil as an expert was harmless or justified. And, if Plaintiffs' failure was harmless or justified, then Feil's expert testimony needs to meet *Daubert* standards.

## 2.    Whether the Lack of Disclosure was Substantially Justified or Harmless

Plaintiffs do not dispute that they never disclosed Feil as an expert in a timely manner,[6] thus the Court must decide whether their noncompliance was substantially justified or harmless.  The Court's analysis here examines the "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) [whether] bad faith or willfulness [were] involved in not timely disclosing the evidence." *Lanard Toys*, 375 F. App'x at 713.

Defendants explain they have been prejudiced because Feil's testimony "blames" them for making the anonymous posts without relying on verified facts and data.  ECF No. 42 at 19.  Plaintiffs do not attempt to justify their non-disclosure (other than a misguided belief that Feil was simply a lay witness).  Instead, they argue that if Feil is an expert, the non-disclosure was harmless and they should be excused because Defendants are not prejudiced, since Defendants retained a rebuttal expert.  *See* ECF No. 55 at 12–13.  However, such suggestion would punish Defendants for complying with the Federal Rules and reward

---

[6] Nor could they dispute that any disclosure was untimely because the discovery deadlines in state court generally apply even after removal, *see e.g. Granny Goose Foods, Inc. v. Bhd. of Tmtrs. & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974), and the deadline for expert disclosures was in November 2024.

Plaintiffs' noncompliance.  Furthermore, Feil's deposition did not render Plaintiff's

failure to disclose harmless because Defendants could not conduct a proper expert

deposition without a fully compliant report.

The Draft Report does not in fact comply with FRCP 26(a)(2)(B), which

requires:

> (i) a complete statement of all opinions the witness will express and
> the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications
> authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the
> witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and
> testimony in the case.

Except for maybe elements (i) and (ii), the Draft Report could not even

constructively meet the requirements for a written expert report.  This increases the

prejudice Defendants face because they would not have had much information

available to them at the time of the deposition, so their deposition of Feil would

necessarily be more limited than if they had a fulsome expert report.  Plaintiffs

have the burden to show harmlessness or substantial justification, and they failed to

do so.  *See Yeti by Molly*, 259 F.3d at 1107.  Thus, the Court excludes the Draft

Report and Feil's opinions therein for failure to comply with FRCP 26 to the extent it provides expert opinion.

### 3.  *Daubert*

Because the Court excludes Feil's expert opinion testimony based on FRCP 26, it need not reach the *Daubert* question.  But even if Plaintiffs' noncompliance was substantially justified or harmless, Plaintiffs failed to meet their burden in establishing Feil's testimony was reliable.

Plaintiffs intend to use Feil's testimony and the Draft Report to establish that Defendants were likely the authors of the anonymous posts, but Plaintiffs need to establish that opinion is reliable before Feil can testify to it.  *See Black*, 2008 WL 3845230, at *7.  Defendants argue that Feil's expert testimony and Draft Report are based on unreliable principles and methodology.  *See* ECF No. 42 at 20.  Instead of rebutting Defendants' *Daubert* arguments, Plaintiffs merely maintain that Defendants cannot be prejudiced because they retained their own expert.  *See* ECF No. 55 at 12–13.

The Court "has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case."  *Primiano*, 598 F.3d at 564 (citations omitted).  The proponent of the expert's testimony has the burden to establish admissibility.  *See Lust by & Through Lust v. Merrell Dow Pharm.,* 89 F.3d 594, 598 (9th Cir. 1996).  Feil's

deposition establishes that he has had some intelligence training, such as taking courses while at the Marine Corps and receiving a certificate at the Advanced Threat Assessment Academy, but such training appears unrelated to an expert opinion on linguistic analyses. *See* ECF No. 42-8 at 14:3–22. As for methodology, Feil seems to have approached his investigation only "from experience," which again, does not connect well with his analysis. *Id.* at 69:8–11. In any event, Plaintiffs don't proffer an argument in support of his qualifications or methodology. Because Plaintiffs fail to meet their burden, Feil's testimony would be excluded under *Daubert* anyway.

### III.    MOTION TO STRIKE AND MOTIONS FOR SUMMARY JUDGMENT

In addition to the *Daubert* Motion, Defendants filed two MSJs, one defensive and one affirmative. During briefing, two issues arose. First, Plaintiffs moved to strike two declarations that were attached to Defendants' Reply in support of their FAC MSJ. Second, Defendants argued in their Reply in support of their Counterclaims MSJ that Liane's declaration should be stricken because she perjured herself. The Court DENIES both motions to strike and GRANTS IN PART and DENIES IN PART both MSJs.

//

//

19

## A.    Motion to Strike

### 1.    Amanda's and Anna's Declarations

The Court first turns to Plaintiffs' Motion to Strike the declarations of Amanda and Anna Kelly ("Anna").  In Plaintiffs' Opposition to the FAC MSJ, Liane provided sworn testimony to defend the legitimacy of her business against accusations contained in the anonymous posts.  *See* ECF No. 71 at 15–18 ¶¶ 3–18. In their Reply, Defendants included declarations by Plaintiffs' former students, Amanda and Anna, who claim to have personally witnessed Plaintiffs' business practices and dispute their lawfulness.  *See* ECF No. 84 at 13–19 ¶¶ 3–18.

Plaintiffs argue that the Court should strike these declarations because they were only included in Defendants' Reply and contained new facts.  *See* ECF No. 72 at 2.  Defendants contend that they included Amanda and Anna's declarations to respond to the new facts Plaintiffs introduced.  *See* ECF No. 76 at 4–5. Plaintiffs request that the Court alternatively allow them to submit a surreply to respond to Amanda's and Anna's declarations, *see* ECF No. 72 at 9, but if given the option, Defendants would rather have the declarations stricken, *see* ECF No. 76

at 13.[7]  For the reasons outlined below, the Court declines to strike the depositions and will not allow Plaintiffs to submit a surreply.

Generally, a court will not consider evidence submitted for the first time in reply without giving the opposing party an opportunity to respond.  *See Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir. 1996) (finding that district court erred in considering new evidence presented in a reply without giving the non-movant an opportunity to respond).  However, evidence in a reply may not be considered "new" when the reply brief provided full context for the same set of facts addressed in the opposition.  *See Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007).

Unprompted, Plaintiffs challenged the veracity of the anonymous posts in their Opposition's CSF.  *See* ECF No. 71 at 14–36.  Defendants then disputed Plaintiffs' CSF with their own set of opposing facts.  *See* ECF No. 84 at 13–26. For example, Plaintiffs' CSF states, "Ms. Shanti has been running a lawful business for 14 years and she has never received a complaint of extortion from any student or client during such time—accusing her of such conduct is reckless." ECF No. 71 ¶ 3.  Defendants then contested that statement with a citation to

---

[7] Defendants also argued at the Hearing that if the Court strikes the two declarations, it should also strike the immaterial facts in Plaintiffs' CSF.  Plaintiffs rebuffed Defendants' last minute oral motion.  Because the Court will not strike the declarations, it also will not strike Plaintiffs' CSF.

Amanda's declaration that, to the extent Plaintiffs' business never received a complaint, it was because of how "dissent and criticism" were handled. ECF No. 84-2 ¶¶ 23–24 (describing how those who criticized Liane were removed and slandered, and "[a]s a result, complaints were not documented or preserved in any formal manner, and members were aware that raising concerns would result in expulsion and reputational harm . . . [which] prevented complaints from being acknowledged"). Defendants also cited to Anna's declaration, in which she claims did not receive promised deliverables for the $110,000 she paid to Plaintiffs. *See* ECF No. 84-3 ¶¶ 3–6. The Court does not view the declarations as "new" facts that should be stricken or that require an additional response because they directly addressed facts raised in the Opposition. *Terrell*, 232 F. App'x at 629 n.2. In any event, as will be evident below, the Court does not rely on Amanda's or Anna's declarations (or Plaintiffs' assertions of running a lawful business) in rendering its decision because the truth of their statements are irrelevant to the FAC MSJ. Accordingly, the Motion to Strike is DENIED. Plaintiffs' alternative request to submit a surreply is also DENIED.

### 2. Liane's Declaration

Next, Defendants argue Liane's declaration attached to Plaintiffs' Opposition to the Counterclaims MSJ should be stricken (and/or Plaintiffs should be sanctioned) because she contradicts statements she made in her criminal case.

22

*See* ECF No. 68 at 5.  In *United States v. Wilson*, Liane responded to the Court

Letters by submitting an August 2, 2023 Position Statement ("Position

Statement").  *See United States v. Wilson*, Dkt. 127.  There, she proudly discussed

creating the Exposing Family Abuse website for her advocacy work, *id.* at 24,[8] but

in the instant case, Liane denies creating the Exposing Family Abuse website at all,

ECF No. 70 at 17 ¶¶ 16, 30.

Under FRCP 56(h), if an affidavit or declaration is submitted in bad faith,

the Court "after notice and a reasonable time to respond—may order . . . [a]n

offending party or attorney . . . be . . . subjected to . . . appropriate sanctions."

Courts have found "'bad faith' only where affidavits contained perjurious or

blatantly false allegations or omitted facts concerning issues central to the

resolution of the case."  *Abdelkhaleq v. Precision Door of Akron*, 653 F. Supp. 2d

773, 787 (N.D. Ohio 2009) (citations and quotations omitted).  Sanctions under

FRCP 56(h) are rare because the conduct involved generally must be egregious.

*See id.*  "Bad faith in the context of Rule 56(h) requires a deliberate or knowing act

for an improper purpose.  Affidavit testimony that is materially contradicted by

---

[8]  Although Liane's counsel redacted the title of the website in the public version
of her Position Statement, the Court has viewed the unsealed documents and finds
that there is no reasonable basis for that information to remain confidential,
especially because the context of the public version nonetheless establishes a
diametric inconsistency.  *See* Case 1:19-cr-00105-HG, Dkt. 125-1 at 23; 125-2 at
15.

prior deposition testimony alone is not sufficient to show the necessary bad faith under Rule 56(h)." *Raher v. Fed. Bureau of Prisons*, 2011 WL 4832574, at *8 (D. Or. Oct. 12, 2011).

The Court declines to find Plaintiffs submitted the declaration in bad faith. Notably, Liane did not sign her Position Statement under penalty of perjury nor swear it under oath before submitting it to Judge Mollway. *See United States v. Wilson*, Dkt. 127. Because Liane did not swear under oath about the veracity of her Position Statement, this scenario is distinct from the other cases where courts compare seemingly inconsistent *sworn* statements before turning to the question of sanctions. *See e.g.*, *Raher*, 2011 WL 4832574, at *8 (comparing affidavit to deposition); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1306 (S.D. Fla. 2010) (same); *Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 235 n.2 (S.D.N.Y. 2011) (same). In any event, even disregarding the offending portion of Liane's declaration, the Court would still deny in part Defendants' MSJs. *See Abdelkhaleq*, 653 F Supp. 2d at 787 (no sanctions "where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion" (citations omitted)).

So while she did declare under penalty of perjury here that she did not create the problematic website, the Court declines to find that the difference between her Position Statement and her declaration alone is sufficient grounds for

24

a bad faith finding. *See Raher*, 2011 WL 4832574, at *8. Indeed, it is not for this Court to determine which of the two statements is false, and, if the falsity lies in the Position Statement, there isn't much this Court can do as the undersigned does not preside over the criminal case.

Nevertheless, this conduct is troubling. At best, Plaintiffs' counsel misinterpreted Liane and neglected to diligently read the Position Statement she submitted in *United States v. Wilson*, and Liane then failed to thoroughly read her own declaration and correct the mistake before signing it. At worst, Liane intended to mislead this Court or Judge Mollway. However, making a call either way would be speculative.

In sum, the Court declines to strike any of the declarations here.

## B.   FAC MSJ

Proceeding to the FAC MSJ, Defendants argue that summary judgment should be granted because (1) there is no evidence suggesting Defendants authored the anonymous posts; (2) Paula's Facebook post that re-posted a Reddit thread is protected by the Communications Decency Act ("CDA"); and (3) the Court Letters are protected by litigation privilege. *See* ECF No. 46 at 8. Plaintiffs argue that there is enough record evidence to create an issue of material fact as to the authors of the anonymous posts and that Defendants should not be protected by either the CDA or litigation privilege. *See* ECF No. 59 at 6. The Court agrees in part that

summary judgment should be granted to Defendants for the Facebook post and Court Letters; however, there remains a triable issue as to the authors of the anonymous posts.

### 1.    Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to

support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991) (citing *id.*).

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, then summary judgment shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994) (citing *id.*); *Blue Ocean*, 754 F. Supp. at 1455 (same).

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the

other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

## 2. Discussion

The elements for a defamation claim include: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher . . . ; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Gold v. Harrison*, 88 Haw. 94, 100, 962 P.2d 353, 359 (1998) (quoting *Dunlea v. Dappen*, 83 Haw. 28, 36, 924 P.2d 196, 204 (1996)). Furthermore, a plaintiff must demonstrate that the statements at issue were of or concerning the plaintiff. *See Miracle v. New Yorker Mag.*, 190 F. Supp. 2d 1192, 1199 (D. Haw. 2001).

"The threshold issue in defamation cases is whether, as a matter of law, the statements at issue are reasonably susceptible of a defamatory meaning." *Id.* at 101, 962 P.2d at 360 (citing *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228, 649

P.2d 1144, 1147 (Haw. 1982)).  "Pure opinions" are protected by the First Amendment and are not actionable.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).  At minimum, a statement must express or imply a verifiably false fact about the plaintiff.  *See id.*, at 19–20.  Hawaiʻi has adopted the Ninth Circuit's three-part test for determining non-actionable opinions:  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false."  *Gold*, 88 Hawaiʻi at 101, 962 P.2d at 360 (quoting *Fasi v. Gannett Co., Inc.*, 930 F. Supp. 1403, 1409 (D. Haw. 1995)).  Whether a statement is an opinion is a question of law.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995).

A statement has defamatory meaning when it tends to "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  *Fernandes*, 65 Haw. at 228, 649 P.2d at 1147 (quoting Restatement (Second) of Torts § 559 (1976)).  "If the court finds that the statements are not reasonably susceptible of the defamatory meaning ascribed to it by the plaintiff, the defamation claim should not be put before the trier of fact."  *Miracle*, 190 F. Supp. 2d at 1199 (citing *Fernandes*, 65 Haw. at 228 n.1, 649 P.2d at 1147 n.1).

29

### a.   Public Figure

Defendants assert that Liane is a public figure, *see* ECF No. 46 at 22, which Plaintiffs do not dispute, *see generally* ECF No. 59.[9]  The law recognizes that defamation cases against public figures may implicate First Amendment rights of free expression.  *See Kroll Assocs. v. City & Cnty. of Honolulu*, 833 F. Supp. 802, 804 (D. Haw. 1993) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964)).  Thus, to balance an individual's right to be free from defamation and the public's right to freedom of speech, a public figure must show that the defamatory statement was made with "actual malice," which occurs when the defendant had knowledge that the statement was false or acted with reckless disregard of its truth.  *Id.* at 804–05 (citations omitted).  Whether a party is a public figure is a matter of law for the court to decide.  *Id.* at 805 (citing *Rosenblatt v. Baer,* 383 U.S. 75 (1966)).

Public figures include "artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) (quoting *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968)).  A public figure may also be an individual who "achieve[s] such pervasive fame or notoriety

---

[9] At the Hearing, Plaintiffs' counsel conceded Liane is a public figure, but that Defendants have the burden to establish that point.

that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

Here, the Court finds that Liane is a public figure. It is indisputable that she describes herself as a "world renowned thought leader in quantum energy healing, spiritual psychology, nutrition, emotional transformation, and feminine wealth consciousness" on her business website. ECF No. 45-11. She also has more than 35,000 social media followers and over 100,000 customers in 90 countries. *See id.*; ECF No. 45-5 at 12:12–24. Therefore, Liane is a businessperson who is famous for who she is, making her a general purpose public figure.[10] *See Manzari*, 830 F.3d at 888; *see also Chapman v. J. Concepts, Inc.*, 528 F. Supp. 2d 1081, 1090 (D. Haw. 2007) (finding plaintiff a general-purpose public figure in the surfing community who voluntarily exposed himself to risk of injury from defamatory falsehood). This means Plaintiffs must show "the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence[.]" *Anderson*, 477 U.S. at 255–56.

---

[10] Neither side discusses whether LMN is a public figure. Because the Court holds that at least some of Plaintiffs' claims survive even on the stricter malice standard, it need not decide LMN's status at this stage.

### b.    *Anonymous Posts*

Moving now to the first category of defamatory statements, Defendants argue that there is no evidence that they authored any of the social media posts made by anonymous users and, in any event, Plaintiffs have not shown the statements were made with malice.  *See* ECF No. 46 at 14, 22.  Plaintiffs assert that there is enough evidence to create a triable issue regarding the identity of the anonymous authors.  *See* ECF No. 59 at 12.  Plaintiffs further maintain that the anonymous statements were false and reckless.  *See e.g.*, ECF No. 71 at 17 ¶¶ 18–22.

### i.    *Statements*

Plaintiffs allege Defendants made anonymous social media accounts that defamed them.  *See* ECF No. 69-1 ¶ 11.  On Instagram, an anonymous username, "lianashanti_cult_recovery" made the following statements:[11]

- Liane "is a FAKE CON ARTIST MASTER MANIPULATOR FILTERED AVATAR PUPPET MASTER CULT LEADER"

- Liane was "making money and is 'abundant' in a very '3D' way. EXTORTION"

---

[11] These statements are taken verbatim from the pleadings.

- Liane "coaches other woman on how to claim sexual/physical abuse against their partner"

- Liane "really does encourage false police reports"

- Liane "funnel[s] investors money out of Canada into Florida where theyre using a state tax loophole to fund their mansion and cult."

*Id.* ¶¶ 16, 18, 20, 22, 24.

On Reddit, beginning in May 2022, an anonymous username "u/Liana_shanti_cult369" posted a subreddit titled, "The Shanti Summary," which stated the following:

- Liane's "programs are heavily rooted in traditional psychology but use programming and undue influence, societal pressures and private groups to extort women into disconnecting from their families, friends and spouses in order to truly 'heal'."

- Liane "has influenced at least 2 dozen women and their children to leave their 'Nazi' States/Countries and families (regardless of custody orders) and flee, primarily to the United States. We know of at least one woman who attempted to kidnap her children and cross the border from Canada into the United States."

- That "[a] couple of experts we have consulted with have concluded this is likely an online version of human and child trafficking with the

end goal of having a large compound in the USA (Florida), built and

maintained by her followers (for free).”

*Id.* ¶¶ 27, 29, 31.  Later, in September 2022, the same username stated on Reddit

that, “the possible crimes committed by her followers as a result of Liana’s

narratives and coaching techniques online deem her a potential accomplice[.]”  *Id.*

¶ 35.

Another anonymous username “Salt-Health6213” stated Liane “literally robs

her students and thrives from making sure her ‘students’ stay stuck.  Her programs

are all copied and none of the content is hers - it’s stolen material from other

people.  She expects people to worship her and if they don’t, she kicks them out of

her ‘groups’ and still takes their money.”  *Id.* ¶ 33.  Another user,

“Alarmed_Aspected1678,” stated Liane “was working on scamming and

manipulating [a person] out of all his money and then take off somewhere. The

B**** used the kids to manipulate him and then accuse him of the worst possible

things with the kids.”  *Id.* ¶ 37.

Around May 2022, an anonymous user with the screenname

“lianarecovery,” made similar statements on CEI, such as:

- Liane’s “programs are heavily rooted in traditional psychology but
  use thought programming and undue influence, social pressure and
  side groups to extort women.”

34

- Liane "influence[s] women to leave their husbands, file for sole custody, and go no contact with them or any other family member … We have been inundated with stories from fathers of their wives and ex wives violating custody orders and preventing them from seeing their children[.]"

- Liane "has influenced at least 2 dozen women and their children to pick up and leave their states/countries and families (regardless of custody decisions) and move - primarily to the United States. We know of at least one woman who attempted to kidnap her children and cross the border from Canada into the United States."

- "[An] expert we consulted has called this an online version of human and child trafficking."

*See id.* ¶¶ 42, 44, 46, 48.

> ii.    *Analysis*

Although the Court is excluding Feil's opinions about whether Defendants authored the anonymous posts, Feil will be allowed to testify about what he observed during his investigation, such as when and what types of content were posted on the applicable accounts, including Defendants' known accounts.  These facts create just enough of a dispute as to whether there is a legitimate connection between Defendants and the anonymous posts.

Furthermore, Plaintiffs argue that other circumstantial evidence links Defendants and the anonymous accounts.  For one, after Defendants submitted their Court Letters, they went on a zoom call to discuss the status of those statements with others and they were part of an anonymous email list, Liana Shanti Cult Recovery, which is the name of the anonymous Reddit account.  *See* ECF No. 71-4 at 42:16–20; *see also*, ECF Nos. 71-9, 71-10, 71-11.  Defendants also spoke with a reporter for *The Daily Beast*, though Plaintiffs don't make clear how their interview traces them to the anonymous statements, other than to say that Defendants' comments to *The Daily Beast* were negative.  *See* ECF No. 71-3 at 118:5–119:6, 120:6–11; ECF No. 71-4 at 83: 15–24; ECF No. 71-5 at 219:7–218:7.  In any event, taking the evidence in the light most favorable to Plaintiffs, the Court is satisfied that there is a question of fact as to whether Defendants posted the anonymous defamatory comments.  *Cf. Rodriguez v. Nishiki*, 65 Haw. 430, 435, 653 P.2d 1145, 1148–49 (1982) (reversing, with a concession from plaintiffs, the denial of a motion for summary judgment where "there is *no evidence* in the record in the instant case from which a finding could be made that [particular defendants] participated in the publication of the statements at issue." (emphasis added)).

Defendants generally argue that Plaintiffs have not demonstrated any of the statements were made with actual malice.[12]  *See* ECF No. 46 at 22.  To satisfy this, Plaintiffs must show by clear and convincing evidence that a reasonable jury could conclude that the anonymous posts were published with either knowledge that the information was false or with reckless disregard for the truth.  *See Anderson,* 477 U.S. at 255–56; *Chapman v. J. Concepts, Inc.*, 2008 WL 5381353, at \*15 (D. Haw. Dec. 24, 2008).  In *Rodriguez*, the Hawaiʻi Supreme Court wrestled with the "clear and convincing" proof requirement at the summary judgment stage.  *See* 65 Haw. at 438.  It adopted the "majority view" and held that "[i]f there is a factual dispute about [a] defendant's state of mind with regard to actual malice, summary judgment should not be granted."  *Id*. at 439.  Quoting the United States Supreme Court, the Hawaiʻi Supreme Court explained that "'[t]he proof of "actual malice" calls a defendant's state of mind into question, . . . and does not readily lend itself to summary disposition.'"  *Id*. (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) (other citation omitted)).  The Hawaiʻi Supreme Court further elucidated:

> We hold, therefore, that the trial court must deny defendant's motion
> for summary judgment in actual malice defamation actions, if there
> appears a genuine issue of material fact from which a reasonable trier

---

[12] Defendants have not argued that the anonymous statements were void of defamatory meaning, so the Court only addresses whether the statements were made with malice.

of fact could find actual malice with convincing clarity, viewing all the evidence and reasonable inferences arising therefrom in the light most favorable to the plaintiff as the nonmovant.

*Id*. at 440; *see also*, *Tagawa v. Maui Pub. Co.*, 50 Haw. 648, 655, 448 P.2d 337, 342 (1968) (discussing how if the author's column was "purely a figment of [the author's] imagination, then the issue of 'actual malice' would have arisen").

Assuming Defendants authored the anonymous posts, the issue, then, is whether Plaintiffs have proffered enough evidence for there to be a question as to the posters' knowledge that the information was false or if the posts were made with reckless disregard for the truth. Viewing the facts in the light most favorable to the non-moving party, the Court concludes there is still a question of fact as to the anonymous users' state of mind. For example, Liane expressly disclaims encouraging her students to violate custody orders and in fact warns them against "going rogue" in custody disputes. ECF No. 71 at 25 ¶ 14. Plaintiffs assert in their CSFs that the statements made in this category were "false and reckless because it wrongfully accuses [Liane] of routinely inducing women to violate custody orders and . . . accuses her of orchestrating or inciting criminal conduct[.]" ECF No. 71 at 28 ¶ 23. Because Liane's declaration is sufficient for a reasonable jury to determine whether the anonymous statement is false, there is a genuine issue of material fact as to whether making such a statement was reckless. As such, the Court DENIES the FAC MSJ with regard to the anonymous postings.

### c.    *Reposted Content*

Defendants argue that Paula's repost of a link to the subreddit titled, "The

Shanti Summary" is protected by the CDA.  *See* ECF No. 46 at 16.  Plaintiffs

respond that the CDA does not apply to Paula because she authored the subreddit

content or conspired to spread the defamatory messaging, and she shared the link

with her own commentary.  *See* ECF No. 59 at 13–17.  At the Hearing, Plaintiffs

altered their position to say that only Paula's commentary is unprotected.  The

Court analyzes both the reposting and her commentary since Plaintiffs alleged only

the reposting as defamation in their FAC and did not include her commentary.[13]

*See* ECF No. 69-1 ¶ 39.

### i.    *Statements*

One social media post was clearly attributed to one Defendant, Paula.  She

posted a link to the "The Shanti Summary" subreddit on her personal Facebook

page.  *See* ECF No. 69-1 ¶ 39; ECF No. 84 ¶ 5.  Included with the link was the

following commentary:[14]

> I have been really hesitant to speak about this.  This is dam hard to
> say:

---

[13] Although courts typically disallow plaintiffs to change their theories of liability
at the summary judgment phase, *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271,
1292 (9th Cir. 2000), because the outcome favors Defendants regardless, the Court
will move forward with its analysis.

[14] The following statement is verbatim from the screenshot of Paula's post.

hey, this is what we are going through, because it's truly only seen on tv around our small parts of the world.

We are not victims.  We don't want to be viewed that way at all.  So please don't put that on us.

We want to educate.  It's very unjust what is going for many families. I have been sitting with it for months. I had to question myself as to why I would speak up, and to make sure it wasn't from a place of fuelling my own ego.

There have been many past, and more concerning recent events that have led me to share this.

This has directly affected my life and the lives of people I love for years. Since about 2016.

I have been targeted by this woman and one of her students as a demonic, lucifarian, spell casting, evil witch.  I've been accused of "trying to kill my friends and harm the children" I have cared for, for 7 years.

I am not here to defend myself.  I don't need to.

Me being targeted…… is peanuts compared to how far this has gone.

I am sharing to educate anyone who is involved with "Liana Shanti" or followed her or is considering getting involved in anyway. Ultimately it is your choice.

Trust me.  I didn't want to believe any of this either.  I don't do well with labels.  I'm not a fan.  But the best one for this – is Cult.

And I am showed to know that our province and many women, fathers and children have been harmed by this crap.  This isn't secluded to Saskatchewan and its been going on for years.

Finally people are speaking up.

> And if this can save just one father, grandparent, aunt or uncle, illegally losing access to his children there, then here it is.
>
> I am not one to speak about another this way.  But this person is dangerous.  And so are her students who have gone deep into it. Again.  This isn't coming from judgement.  It's coming from personal experience.  Children are involved.  That tends to be where I draw the line of accepting you for who you are.

ECF No. 71-8 at 20.

### ii.    Analysis

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The Second Circuit has developed a three-part test for CDA immunity: "(1) [the defendant] is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information."  *La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020) (citations omitted).

Paula indisputably enjoys immunity under the CDA for reposting content. Many courts have included private individuals within the scope of a "user."  *See e.g. Banaian v. Bascom*, 175 N.H. 151, 158, 281 A.3d 975, 980 (2022); *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 450 (E.D. Va. 2012); *Barrett v. Rosenthal*, 40 Cal.4th 33, 75 (2006).  Thus, (1) Paula is a "user of an interactive computer service"; (2) the subreddit link is "based on information

41

provided by another information content provider"; and (3) Plaintiffs' claim would treat Paula "as the publisher or speaker of that information." *La Liberte*, 966 F.3d at 89. As such, and as Plaintiffs have conceded at the Hearing, Paula is immune from lawsuit for what she reposted from Reddit.

But because the CDA does not immunize someone who posts original content, it makes sense that adding comments to something that is re-posted would not trigger CDA immunity. *See US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 36 (D.D.C. 2022); *see also*, *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (user may be immune so long as they did not "contribute[] materially to any alleged defamation."). While these cited cases are not directly on point, the Court concludes that Paula's comments regarding what she reposted are not subject to CDA immunity. *See La Liberte*, 966 F.3d at 89.

The Court must then determine if her statement is pure opinion or susceptible to defamatory meaning and, if so, whether it was made with malice. Here, Plaintiffs do not really explain how Paula's commentary is defamatory. *See* ECF No. 59 at 15. While "[a] statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' . . . if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts,

42

the statement is not actionable." *Partington v. Bugliosi,* 56 F.3d 1147, 1156 (9th

Cir. 1995) (quoting *Haynes v. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993).

Furthermore, "when a speaker outlines the factual basis for his conclusion, his

statement is protected," assuming "that the factual basis itself is true." *See Flowers*

*v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002) (internal quotation and citation

omitted).

Paula's Facebook post in its full context expresses her subjective view and

theory that Plaintiffs are dangerous based on her own experience, in addition to

what she read on the subreddit. Paula qualifies her statement and tells her audience

to make their own "choice" in what they believe, ECF No. 71-8 at 20, which

"negates the impression that the defendant was asserting an objective fact[.]"

*Gold*, 88 Hawai'i at 101, 962 P.2d at 360.

As to malice, Paula supports her opinion with her own experience (which

Plaintiffs have not challenged), the subreddit, and what others had posted. And

Plaintiffs do not argue Paula's commentary is "purely a figment of [her]

imagination," so they would not be able to establish actual malice without further

evidence. *See Tagawa,* 50 Haw. at 656, 448 P.2d at 342.

Thus, summary judgment is GRANTED for Paula's reposted content and for

her added commentary.

### d.    Court Letters

Defendants also maintain that their Court Letters are protected by litigation privilege. *See* ECF No. 46 at 18. They alternatively argue that the contents of the letters are not defamatory in nature. *See id.* at 20–21. Plaintiffs retort that the Court Letters should not be protected because they were wholly unrelated to the criminal case, and even if the privilege applied, Defendants waived it because they used the statements outside the context of litigation. *See* ECF No. 59 at 17–18.

#### i.    Statements

Defendants wrote Court Letters in Liane's criminal case around March 2023, which alleged Liane used false claims to earn clients' trust and induced them into taking harmful actions against their families. *See United States v. Wilson*, Dkt. Nos. 80, 99, 102, 106. The letters were sealed and redacted from the public. *Id.*, Dkt. No. 95. After considering both the letters and Liane's responses, Judge Mollway decided not to impose further conditions on Liane's probation that were requested in the letters. *See id.*, Dkt. No. 130. Judge Mollway noted that, although the accusations against Liane were serious, "on the present record, [she] [could] not say that such conduct, even if extremely problematic, is necessarily criminal." *Id.*

//

//

44

ii.    *Analysis*

"Hawaiʻi courts have applied an absolute litigation privilege in defamation

actions for words and writings that are material and pertinent to judicial

proceedings." *Matsuura v. E.I. du Pont de Nemours and Co.*, 102 Haw. 149, 154,

73 P.3d 687, 692 (2003). The litigation privilege's purpose is to "encourag[e]

witnesses and parties to take part in judicial proceedings" because "the threat of

subsequent liability discourages participation." *Id.* at 156–57, 73 P.3d at 694–95

(citations omitted). The privilege affords "litigants and witnesses the utmost

freedom of access to the courts without fear of being harassed subsequently by

derivative tort actions." *Id.* at 157, 73 P.3d at 695 (citations omitted). Other policy

considerations include:

> (1) promoting the candid, objective, and undistorted disclosure of
> evidence; (2) placing the burden of testing the evidence upon the
> litigants during trial; (3) avoiding the chilling effect resulting from the
> threat of subsequent litigation; (4) reinforcing the finality of judgments;
> (5) limiting collateral attacks upon judgments; (6) promoting zealous
> advocacy; (7) discouraging abusive litigation practices; and (8)
> encouraging settlement.

*Id.* at 155, 73 P.3d at 693.

A statement may be material and pertinent to a judicial proceeding if "there

is a sufficient connection between the defamatory statements and the judicial

proceeding." *Isobe v. Sakatani*, 127 Haw. 368, 383, 279 P.3d 33, 48 (Ct. App.

2012) (quoting *McCarthy v. Yempuku*, 5 Haw. App. 45, 48–49, 678 P.2d 11, 14

45

(1984) (internal citations omitted)).  The defamatory comment must "*have some connection or logical relation to the judicial proceeding,*" and be "made to achieve the objects of the litigation."  *Id.* (internal citations omitted); *see e.g., Roberts v. City & Cnty. of Honolulu*, 2008 WL 4107983, at *7 (D. Haw. Sept. 3, 2008) (granting summary judgment and finding defendant's statement was material and pertinent in underlying quasi-judicial proceeding because it ended up being a reason for plaintiff's termination); *see also Dural v. City & Cnty. of Honolulu*, 658 F. Supp. 3d 855, 875 (D. Haw. 2023) (litigation privilege applied to city employees who made statements against plaintiffs in the investigation and prosecution against his criminal case).

Defendants explain that the Court Letters were material and pertinent to Liane's criminal case because they addressed the following condition of her probation:

> If the probation officer determines that you pose a risk to an organization or a person relating to your criminal record or personal history or characteristics, the probation officer may require, with the court's approval, that you notify that organization or person (or that person's parent, guardian, caretaker, or other individual responsible for the person's welfare) about the risk, and you must comply with that instruction. The probation officer may contact the organization or person that you were directed to notify and confirm that you notified that organization or person about the risk.

*United States v. Wilson*, Dkt. 73 at 3.  Defendants submitted their Court Letters to inform Liane's probation officer and Judge Mollway about their experiences with

Liane and asked the court to require Liane to make a broad notification of her legal name and fraud conviction.  *See id.*, Dkt. 130.

As an initial matter, while Defendants originally characterized their Court Letters as "victim impact statements," the Court finds that Defendants do not meet the definition of "crime victim" under the Crime Victim Rights Act ("CVRA"), 18 U.S.C. § 3771(a), for Liane's criminal case.  *See United States v. Burkholder*, 590 F.3d 1071, 1074 (9th Cir. 2010) (noting that "[t]he CVRA defines 'crime victim' as 'a person directly and proximately harmed as a result of the commission of a Federal offense'" when deciding whether district court properly struck victim impact statements) (citing 18 U.S.C. § 3771(e)).  In the Court Letters, Defendants primarily claim that Liane had personally harassed them via social media and harmed their family, *see* ECF No. 45-13, which is conduct unrelated to Liane's bankruptcy fraud charge, so Defendants were not directly or proximately harmed by her federal offense.

With that said, the Court Letters were "material and pertinent to judicial proceedings."  *Matsuura*, 102 Haw. at 154, 73 P.3d at 692.  The Court Letters had some logical relation to the judicial proceeding of Liane's probation.  Specifically, they were "made to achieve the objects of the litigation" because Liane's probation terms specified that her probation officer may seek the court's approval to require notification to organizations or people to whom Liane may pose a risk "relat[ed] to

[her] criminal record or personal history or characteristics[,]" *United States v. Wilson*, Dkt. 73 at 3. *See McCarthy*, 5 Haw. App. at 48–49, 678 P.2d at 14. Furthermore, two of the eight policy considerations are relevant here: (1) promoting the candid, objective, and undistorted disclosure of evidence and (2) avoiding the chilling effect resulting from the threat of subsequent litigation. *See Matsuura*, 102 Haw. at 155, 73 P.3d at 693. If the Court holds that the Court Letters are not protected and are susceptible to civil litigation, witnesses and victims may be reluctant to come forward with concerns over a convicted person's compliance with their terms of probation. Significantly, Judge Mollway also did not strike the Court Letters nor did she rule that they were irrelevant to Liane's supervision. Thus, absolute litigation privilege applies here. Summary judgment is GRANTED for Defendants as to the Court Letters.

>    ### e.   *Conspiracy, Intentional/Negligent Emotional Distress, False Light*

Defendants primarily argue that, because summary judgment should be granted for Plaintiffs' defamation claims, the remaining claims should likewise be dismissed. *See* ECF No. 46 at 23–24. Plaintiffs disagree. *See* ECF No. 59 at 19–20. Since the Court has already partially denied Defendants' FAC MSJ and at least some of Plaintiffs' claims survive, the Court likewise DENIES summary judgment on Plaintiffs' civil conspiracy, false light, and intentional emotional distress claims on the surviving defamation claims.

48

Independent from the defamation arguments, Defendants argue that Plaintiffs' negligent infliction of emotional distress ("NIED") claim should be dismissed.  *See* ECF No. 46 at 24–25.  For NIED, "to recover for [plaintiffs'] purely psychic injuries, the plaintiffs would be compelled by our precedent to establish a predicate physical injury to a person as a guarantee of the trustworthiness of their claim." *Doe Parents No. 1 v. State, Dep't of Educ.*, 100 Haw. 34, 70, 58 P.3d 545, 581 (2002), *as amended* (Dec. 5, 2002); *Tseu v. Jeyte,* 88 Hawai'i 85, 92, 962 P.2d 344, 351 (1998).  Plaintiffs do not dispute that physical injury is required in a NIED claim and that they do not allege a physical injury; thus, the claim cannot survive.  *See Miracle*, 190 F. Supp. 2d at 1202 (dismissing NIED claim when plaintiff failed to allege physical injury).  The Court GRANTS summary judgment on Plaintiffs' NIED claim.

## C.  Counterclaims MSJ

Defendants argue that they are entitled to summary judgment in favor of their counterclaims because there is no dispute of material fact that Plaintiffs

defamed them.[15]  *See* ECF No. 49 at 17.  Plaintiffs retort that statements made against Defendants were nonactionable opinions, and if not, their defenses—truth/substantial truth—are matters for a jury to decide.  *See* ECF No. 61 at 9–10.

### 1.    Legal Standard

While the general summary judgment legal standard still applies, when "the movant bears the burden of proof on a claim at trial, then its burden of production is greater.  It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing."  10A Alan Wright, Artur Miller & Mary Kane, Federal Practice and Procedure § 2727.1 & n.19 (4th ed. 2024); *see also Celotex*, 477 U.S. at 331 ("If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a

---

[15] Plaintiffs assert that Defendants are seeking a partial summary judgment because the Counterclaims MSJ doesn't include all statements in Defendants' Amended Counterclaims.  *See* ECF No. 61 at 10.  The Court also notes that Defendants' Counterclaims MSJ (1) does not mention their second count for false light and invasion of privacy and (2) is not clear as to which statements they believe are entitled to summary judgment.  The fact section includes statements regarding each Defendant, but then some statements are not actually analyzed and other statements are only mentioned later.  *Compare* ECF No. 49 at 7–15 (factual background) *with* 19–27 (legal argument).  The Court has done its best to address all the statements at issue.  In any event, the Court denies in part the Counterclaims MSJ, so it does not matter whether Defendants are only moving for partial summary judgment.

directed verdict if not controverted at trial.") (Brennan, J., dissenting); *Shakur v. Schiro*, 514 F.3d 878, 890 (9th Cir. 2008) ("When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." (internal quotation marks and citation omitted)).

Hawaiʻi law recognizes that "[c]ertain publications are said to be actionable *per se*. By this is meant that an action will lie for making them without proof of actual injury, because their necessary or natural and proximate consequence would be to cause injury to the person of whom they are spoken, and therefore injury is to be presumed." *Kahanamoku v. Advertiser Pub. Co.*, 25 Haw. 701, 709 (1920). Defamation per se are "libels that affect the character of private persons according to their objects" and "tend[] 'to subject the person charged to social degradation (sic) and to the contempt of all right thinking people.'" *Russell v. Am. Guild of Variety Artists*, 53 Haw. 456, 458, 497 P.2d 40, 42 (1972) (quoting *Kahanamoku*, 25 Haw. at 716). Examples include (1) imputations that a person committed a crime; (2) untruthful statements that may "injure [a person's] office, profession, calling, or trade"; and (3) accusations that would "hold [a person] up to scorn and ridicule and to feelings of contempt or execration." *See id.*

Even if a party meets the *per se* requirements, the claim for relief is subject to the opposing party's defenses. *See id.* at 459, 497 P.2d at 43. Truth is an

51

absolute defense to defamation, and whether a statement is substantially true is a matter for the jury to decide. *See Kohn v. West Hawaii Today, Inc.,* 65 Haw. 584, 590, 656 P.2d 79, 83 (1982). Although the common law rule was that a defamatory statement was presumed false and the defendant must bear the burden of proving truth, the Supreme Court has held that even a private plaintiff has the "constitutional requirement . . . [to] bear the burden of showing falsity, as well as fault, before recovering damages." *Philadelphia Newspaper, Inc. v. Hepps,* 475 U.S. 767, 776 (1986).

### 2. Paula's Counterclaims

#### a. *Statements About Paula*

Defendants allege Liane posted false statements about Paula on the internet, which have caused Paula to receive threats of harm and lose business. ECF No. 82-5 at 15 ¶¶ 10–12. More specifically, on November 5, 2022, an Instagram account username, @lianashanti, posted the following statements, verbatim:

- "MEET PAULA HAYGARTH. WE HAVEN'T FORGOTTEN ABOUT HER. SHE'S ONE OF THE LEAD PEOPLE TRACED DIRECTLY THROUGH IP ADDRESES AND KNOWN EMAILS TO REDDIT AND THE OTHER FRAUD WEBSITES IN THE 30+ PAGE INVESTIGATIVE REPORT. *SHE IS A DARK REIKI PRACTITIONER WHO HAS PRACTICED EXTENSIVE BLACK*

*WITCHCRAFT* ON MALIE'S DAUGHTHER'S SHE – NOT

SURPRISINGLY – HAS THE SAME ATTORNEY AS BYRON

HORVATH. THEY ARE NOT FRIENDS, JUST AN UNHOLY

ALLIANCE." *Id.* ¶ 13 (emphasis added).

- "*Jesus, we ask you to DELETE AND DESTROY all toxic lies from this*

  *satan servant* – PAULA HAYGARTH – who is campaigning to

  invalidate truths of #childabuse to cover up her own misery. She is

  hateful and envious, and in her hatred and envy, she cannot bring

  herself to acknowledge the pain of all the children who have been

  harmed by their parents. *She abandoned her own son Austin*, and her

  guilt and shame have turned her into a *soldier of satan*." *Id.* at 16 ¶ 15

  (emphases added).

- "What WE are doing – this JESUS LED community calling out

  THESE people . . . Paula Haygarth . . . *This vile group of PEDOS[;]*

  *PEDO SUPPORTERS*[;] PEDO ALIGNERS[;] VICTIM BLAMERS .

  . . Paula Haygarth." ECF No. 48-26 (emphases added).

In addition to Instagram, Defendants allege Plaintiffs published the

following defamatory statements about Paula on the website, "Exposing Family

Abuse":

- "At the same time as the smear campaign against Haley began, Brian Winter and Paula Haygarth started an 'anonymous' Reddit hate account against Liana Shanti. Trying to create a narrative that Liana is a cult, in an attempt to damage Liana's outstanding ten year reputation, because Liana is a very vocal supporter of victim's rights, including Haley's."  ECF No. 82-5 at 17 ¶ 22.

- Paula is a "bitter aging woman with a bleak future, with a broke husband, desperate to get her claws into the BRADY'S wealth by gaining custody of her husband's children. WHO IS AUSTIN, *THE SON SHE ABANDONED AS A BABY* . . . The snapshot of Paula? Washed up, failed energy 'healer,' who gave up custody of her own son, went through multiple relationships, and all of us who have seen her in action know that she cycles through friends like toilet paper. In every town she has lived in, she has cycled through so many friends because *she is manipulative and dishonest*, and people catch on quick[.]"  ECF No. 48-27 at 2, 8 (emphasis added).

- "Paula Haygarth is *a black magic and reiki practitioner*[.]"  ECF No. 82-5 at 18 ¶ 26 (emphasis added).

//

//

### b.    Analysis

Defendants' arguments here fall into three groups.  First, they contend that

some of the comments—that Paula is a "dark reiki practitioner," "witch,"

"pedo/pedo supporter," and "manipulative and dishonest"—are defamatory per se.

*See* ECF No. 49 at 19–20.  Second, they argue that the statement that Paula has

abandoned her child is "demonstrably false."[16]  *Id*. at 20.  Third, they say that, "in

making the posts and online statements, Plaintiffs' conduct amounts to at least

negligence[,]" but don't explain which comments they are referring to.  *Id*.  In a

related vein, they contend that statements asking Jesus to "delete and destroy" lies

and evil from Paula, whom Plaintiffs characterize as a "satan servant" were made

maliciously and recklessly because Plaintiffs acknowledge that the posts were

intended to promote Liane's business.  *See id*. at 21.  Plaintiffs do not dispute that

they have made those statements but instead argue that the statements are

substantially true or not verifiable facts.  *See* ECF No. 61 at 11.

#### i.    Dark Reiki Practitioner/Witch

First, describing Paula as a dark reiki practitioner and witch is not

susceptible to defamatory meaning.  Like Liane, Paula is also a spiritual leader.

---

[16] Although Defendants organize their argument by separating defamatory per se statements from a statement that is demonstrably false, to prevail on their claims, they must prove a statement is both false and defamatory per se. *See Gold*, 88 Hawai'i at 100, 962 P.2d at 359.

*See* ECF No. 48-3 ¶ 2.  Although Paula denies being either a "dark reiki practitioner" or practicing black witchcraft, *id.* ¶ 9, she does not deny generally practicing reiki and—though not explicitly argued by Plaintiffs—there is context to believe Paula used to practice reiki, *see e.g.* ECF No. 48-6 at 4.  Thus, Liane's characterization of Paula's reiki practice as "dark" can be interpreted as opinion, at least for purposes of the instant motion.  Her rhetoric is more figurative and there is no real way to prove whether Paula's reiki practice is "dark."  *Cf. Gold*, 88 Hawai'i at 101, 962 P.2d at 360.  Similarly, Liane likens reiki to witchcraft, so accusing Paula of practicing "black witchcraft" is also an opinion.  *Id.*  Summary judgment is DENIED on these statements.

### ii. Manipulative and Dishonest

Second, being called "manipulative and dishonest" is an opinion statement that supposedly explains why Paula loses friends.  *See* ECF 48 ¶ 9.  That statement is further unable to be proven true or false because it speculates on why other unidentified people may have ended friendships with Paula.  Thus, summary judgment is DENIED on this statement.

### iii. Pedo/Pedo Supporter

Third, the statement that Paula is a pedo/pedo supporter presents a more difficult challenge.  In context, the Instagram post lists a group of about 25 names, including Byron and Stefanie, who are allegedly "pedos/pedo supporters/pedo

56

aligners/victim blamers." ECF No. 48-26. Paula, of course, denies being any of these. *See* ECF No. 48-3 ¶ 9. And Plaintiffs' arguments regarding these statements are a moving target. On the one hand, Plaintiffs appear to suggest that the statement is substantially true:

> The subject social media post is a prayer and religiously framed condemnation of a collective "Silencing Group" describing them as "PEDOS PEDO SUPPORTERS PEDO ALIGNERS VICTIM BLAMERS" which included a convicted pedophile, Anton Hein, persons who support pedophiles . . and family members and allies like Paula Hagarth who align with the accused abusers and attack those who disclose abuse.

ECF No. 61 at 11–12. But in the next breath, they say that this "prayer concerning Paula Haygarth reflects negative feelings towards her but it should not be construed as a statement that Ms. Shanti believes that Paula Haygarth is a "PEDO" or "PEDO SUPPORTER." *Id*. at 12.

To the extent that Plaintiffs attempt to argue that the statement is not defamatory, the Court disagrees. A reasonable person is likely to read the statement for what it is—an accusation that the people on the list are pedophiles or support pedophiles. This is not just a matter of hyperbolic rhetoric that is totally unrelated to the contextual conflict. *Cf. Gold*, 88 Hawai'i at 101, 962 P.2d at 360 (holding that the defendant's statement that he felt like he was getting raped over a property dispute could not be construed to mean that he believed the plaintiffs were

57

actually rapists). Here, the post is literal and Plaintiffs even state that at least one person on the list is a pedophile.

On the other hand, there is at least some, albeit spare, evidence in the record that Paula may have associated herself with pedophiles through her involvement with the anonymous Liana Shanti Cult Recovery group, particularly because Plaintiffs have accused Byron of abusing his child. ECF No. 70 at 16 ¶¶ 7, 9; *id.* at 18 ¶ 18; ECF No. 71-3 at 151:9–152:22. While associating with a pedophile wouldn't necessarily suggest support for him, because the Liana Shanti Cult Recovery group disputes the abuse accusations, participating in the group's efforts arguably means supporting alleged pedophiles within it. Thus, there is a triable issue as to whether the statement is substantially true and not defamatory. *See Kohn*, 65 Haw. at 590, 656 P.2d at 83. The Court therefore DENIES summary judgment on this statement.

### iv. *Abandoned Child*

Next, Plaintiffs have accused Paula of abandoning her child. ECF No. 48-24. Plaintiffs do not contest that the statement is defamatory, which the Court considers a concession. *See New York Marine & Gen. Ins. Co. v. Peters*, 2022 WL 1104741, at *1 (S.D. Cal. Apr. 13, 2022) (collecting cases). Indeed, the Court finds that this statement is verifiable because Paula either did or did not abandon her child and such accusation would subject Paula to ridicule or scorn. *Cf. Russell*,

53 Haw. at 458, 497 P.2d at 42.  Paula unsurprisingly denies that she abandoned her son.  *See* ECF No. 48-3 ¶ 9.  Although the claimant bears the burden of proving falsity and thereby must show "evidence is so powerful that no reasonable jury would be free to disbelieve it," the Court is satisfied Paula has met this burden, particularly because Plaintiffs offer no evidence of its truth.  *See Shakur*, 514 F.3d at 890.  While *Philadelphia Newspaper* emphasizes that courts should protect first amendment rights on "matters of public concern[,]" 475 U.S. at 776–77, Paula's personal and private family matters are not the public's concern.  Plaintiffs do not dispute making the statement and have not even bothered to justify or explain why it was made, let alone provide facts that create a triable issue here.  *See e.g.*, ECF No. 70 at 6 ¶ 6; *T.W. Elec.*, 809 F.2d at 630.

Furthermore, without being able to provide facts to establish whether Paula abandoned her child is substantially true, Plaintiffs were at the very least negligent in publishing that statement.  *Cf. Tagawa,* 50 Haw. at 656, 448 P.2d at 342.  In sum, Paula has established defamation *per se* and Plaintiffs have not countered this with any triable facts.  The Court GRANTS summary judgment in favor of this statement.  The question of damages will be left for trial.

> v.    *Satan's Soldier*

Although Plaintiffs don't squarely address Defendants' argument that the comments characterizing Paula as "Satan's soldier" were made maliciously, it is

not totally clear from the Counterclaim MSJ that Defendants argue the statement is

verifiable.  At the Hearing, counsel for Defendants contended that Satan

worshippers are real, and that, as such, the statements are capable of being proved

true or false.  But the Court finds that the figurative and hyperbolic nature of the

post negates the impression that Liane was asserting an objective fact that Paula (or

the rest of Defendants) were Satan's soldiers, particularly when the Court must

consider the facts in the light most favorable to the non-moving party.  *See Gold*,

88 Hawai'i at 101, 962 P.2d at 360.  Summary Judgment is DENIED as to this

statement.

### 3.    Byron's Counterclaims

#### a.    *Statements About Byron*

Defendants allege Plaintiffs also posted false statements about Byron on

Liane's Instagram account and the "Exposing Family Abuse" website.  For

example, the Instagram account, @lianashanti, made the following statements,

verbatim:

- "Byron is a classic case of SEVERE Mother wounding by his mother
  Sandra Horvath.  Unfortunately *she emasculated her son*, prevented
  him from growing into masculinity, so he turned to destructive coping
  mechanisms."  ECF No. 48-12 (emphasis added).

- *"BYRON AND STEFANIE ARE MISERABLE. SEX BETWEEN THEM ONLY HAPPENS UNDER THE INFLUENCE OF ALCOHOL.  THEY ARE STRUGGLING TO DEAL WITH THEIR SON WHO IS NOT HEALHTY OR WELL."*  ECF No. 48-18 (emphasis added).

- "Jesus we ask you to *DELETE IMMEDIATELY all evil from the darkest of Satan's soldiers*, people who have GREATLY HARMED me and other women and children in this community with their actions words and deeds, we ask for IMMEDIATELY AND FINAL retribution for . . . *Byron Horvath . . . . People so evil that they offend everything you stand for Jesus*."  ECF No. 48-22 (emphases added).

- "What WE are doing – this JESUS LED community calling out THESE people . . . This vile group *of PEDOS[;] PEDO SUPPORTERS*[;] PEDO ALIGNERS[;] VICTIM BLAMERS . . . *Byron Horvath*".  ECF No. 48-26 (emphasis added).

Plaintiffs also allegedly labeled Byron as a violent man, child abuser, pedophile, stalker, and drug addict.  ECF No. 48-4 ¶ 4.

### b.    Analysis

As with the statements about Paula, Defendants' arguments regarding the statements about Byron fall into three groups:  (1) the statements that Byron is a drug addict and was emasculated by his mother are per se defamatory; (2) the

statement that he is a child abuser/pedophile is demonstrably false; and (3)

Plaintiffs made some statements negligently and/or recklessly and maliciously.

*See* ECF No. 49 at 22–23.  Regarding this third group, Defendants do not make

clear precisely which statements they believe were made negligently, but point to a

statement that Byron is "the darkest of Satan's soldiers" and "so evil that they

offend everything you stand for Jesus" as recklessly or maliciously made for

purposes of promoting Liane's business.  Plaintiffs respond that they did not make

some of the statements, other statements were in fact true, and some statements are

not verifiable.  *See* ECF 61 at 12–14.

### i.  Drug Addict

Defendants contend that the statements that Byron is a drug addict is

defamatory per se.  Plaintiffs deny ever calling Byron a drug addict, but also

maintain that Byron's admitted drug use establishes a factual issue for trial.  *See*

ECF No. 61 at 13.[17]  Since Plaintiffs deny the statement and Byron admitted to

using illicit drugs, the Court concludes that the question of who made the statement

and the substantial truth of the statement shall be decided by a jury.  The

Counterclaims MSJ is DENIED as to this statement.

---

[17] Plaintiffs cite to an Exhibit 2 at 183:12–19, but the Court is unable to locate the document they are referring to.  That exhibit only goes to page 166.  *See* ECF No. 63-2 at 18.

### ii.   Emasculation

Regarding the comment that Byron's mother emasculated him, Plaintiffs argue that no evidence has been presented to the Court reflecting such a statement, and that the statement is not verifiable in any event. *See id*. at 14.  In fact, Defendants did proffer a social media post with the "emasculating" statement. *See* ECF No. 48-12.  But the Court agrees with Plaintiffs that emasculating someone is a subjective matter and thus cannot be proven true or false. *See Miracle*, 190 F. Supp. 2d at 1200 (subjective opinion on person's appearance is nonactionable); *Partington,* 56 F.3d at 1157–58 (finding critiques are subjective statements not susceptible to being proven true or false).  Summary judgment is DENIED as to this statement.

### iii.   Child Abuser/Pedophile

Defendants contend that the statements about Byron being a child abuser or pedophile are plainly false and are per se defamatory. *See* ECF No. 49 at 22. Plaintiffs contend that the statements were based on Haley's accounts to Liane about what happened to her and her daughter, and that Liane "was simply amplifying a mother's safety concerns." *Id*. at 12–13; *see also* ECF No. 70 at 19 ¶ 24.  Defendants respond that what Liane allegedly learned from another person does not create a question of fact because the information is not corroborated. *See* ECF No. 68 at 19.

Statements accusing Byron of being a child abuser are certainly capable of "lower[ing] him in the estimation of the community or deter[ring] third persons from associating or dealing with him." *Fernandes*, 65 Haw. at 228, 649 P.2d at 1147. They are also facts that can be verified or proven false. But while Defendants argue that Plaintiffs cannot rely on declarations that include hearsay at the summary judgment phase, the latest iteration of the FRCP makes clear that an affidavit need only establish evidence that *would* be admissible. *Compare Scosche Industries, Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (9th Cir. 1997) (disregarding report that relied on hearsay based on old FRCP) *with JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony"). While Liane's declaration includes hearsay from Haley, it sets out facts that would be admissible if Haley testified at trial. At the Hearing, Plaintiffs confirmed that they plan on calling Haley as a witness to describe her observations of her daughter, which creates a triable issue as to the truthfulness of Plaintiffs' statements. Thus, summary judgment is DENIED for statements regarding whether Byron is a pedophile or child abuser.

   *iv.*    *Satan's Soldier*

  Plaintiffs argue that characterizing Byron as "Satan's soldier" is both hyperbolic and incapable of being proved true. *See* ECF No. 61 at 14. The Court agrees for the same reasons it concluded that similar statements about Paula are not susceptible to defamatory meaning. Summary judgment is DENIED as to statements characterizing Byron as Satan's soldier.

  **4.**    **Stefanie's Counterclaims**

  *a.*    ***Statements About Stefanie***

  Defendants also allege Plaintiffs posted false statements about Stefanie on both Liane's Instagram account and the "Exposing Family Abuse" website, many of which are intertwined with the statements about Byron, such as the assertion that the two cannot have sex without first drinking alcohol. *See* ECF Nos. 48-18, 48-22. She is similarly named among the "vile group of PEDOS[;] PEDO SUPPORTERS[;] PEDO ALIGNERS[;] VICTIM BLAMERS[.]" ECF No. 48-26. Plaintiffs also called Stefanie "Satan's soldiers" who "GREATLY HARMED [her] and other women and children in this community with their actions words and deeds[.]" ECF No. 48-22.

  Liane also made several posts on her Instagram that claimed Stefanie was "so desperate to become Haley by morphing herself to look as much like her as she could . . . moving into Haley's marital home and bed, and EVEN leaving Haley's

wedding gift of a picture up on the wall, the woman whose OWN MOTHER said on the wedding video that Stefanie wanted desperately to be with Byron for THIRTEEN YEARS . . . and who Haley said was DEPRESSED when Byron fell madly in love with HALEY and chose HER not Stefanie."  ECF No. 82-5 at 23 ¶ 55.  Liane also stated how Stefanie and Byron are "struggling to deal with their son who is not healthy or well."  ECF No. 48-18.

### b.    Analysis

Again, Defendants approach the statements regarding Stephanie with three different arguments:  (1) that the "Satan's soldier" comments are defamatory per se because they suggest that Stephanie committed a crime, and that the statement about Stephanie and Byron's inability to have sex without first consuming alcohol is also defamatory per se; (2) the statements about Stephanie and Byron's relationship with regard to their son is verifiably false; and (3) the statements were made negligently and/or recklessly and maliciously.  *See* ECF No. 49 at 24–27.  Plaintiffs' responses again vary by statement.

### i.    Satan's Soldier

As explained above, "Satan's soldier" is arguably figurative and hyperbolic and the Court declines to decide as a matter of law that the statement is capable of verification.  Summary judgment is DENIED as to this statement as it relates to Stefanie.

66

### ii.    Alcohol Before Intimacy

As for the statement that Byron and Stefanie are incapable of having sex without consuming alcohol, Plaintiffs contend that Liane learned about this information from Haley. *See* ECF No. 61 at 15 ("Haley Winter also reported to Ms. Shanti that Stefanie Horvath and Byron Horvath drink heavily because Byron Horvath cannot stand to be around her and that their intimacy occurs only when they are drunk."). The Court is not in a position at this stage to grant summary judgment in favor of Defendants on these statements for the reason that Plaintiffs have indicated that they plan to call Haley as a witness at trial, and the Court does not know to whom Haley would attribute *her* knowledge of this claim. So while the Court is skeptical that these statements will in fact survive through verdict, the Court DENIES summary judgment as to them.

### iii.    Struggle with Son's Health

Plaintiffs argue that the statements about Stephanie and Byron's struggles regarding their son's health are not alleged in the First Amended Counterclaim, and so the Court should disregard this statement. *See* ECF No. 61 at 15. Defendants do not respond to this argument. In any event, while Stefanie and Byron's son's health may be verifiable, whatever "struggle" they may face from it would not be. Struggle is subjective here, and Stefanie and Byron cannot claim defamation for a statement about a third-party (their son). *See Miracle*, 190 F.

67

Supp. 2d at 1199 ("plaintiff cannot support a claim of defamation by showing that a statement defamed third persons.") (citations omitted).  Accordingly, summary judgment is DENIED for these statements as well.

5.      **Result of the Ruling on Non-defamatory Statements**

Because, as outlined above, the Court finds that some of the statements Defendants sought summary judgment on are not susceptible to defamatory meaning as a matter of law, the Court denies Defendants' Counterclaims Motion in part.  However, Plaintiffs did not move for summary judgment, so they have not met their burden to obtain summary judgment in their favor for counterclaims related to those statements.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the *movant* is entitled to judgment as a matter of law.") (emphasis added).  Thus, those statements for which the Court denied Defendants' Counterclaim MSJ shall still proceed to trial.

## IV.   CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part Defendants' *Daubert* Motion (ECF No. 42); DENIES Plaintiffs' Motion to Strike (ECF No. 72); GRANTS in part and DENIES in part Defendants' FAC MSJ (ECF No. 46); and GRANTS in part and DENIES in part Defendants' Counterclaims MSJ (ECF No. 49).

In sum:

- Daubert Motion

  o Feil's testimony will be limited to what he observed during his investigation, and he may not opine on the identity of the anonymous authors.

- FAC MSJ

  o Plaintiffs' claims related to statements made in Paula's Facebook post and the Court Letters and are dismissed.

  o Plaintiff's NIED claim is dismissed.

  o Plaintiffs' defamation and defamation-based claims in Counts I, II, III (except for NIED), IV, and V of their FAC remain as to statements made in the anonymous posts only.

- Counterclaims MSJ

  o Summary judgment is granted in favor of Defendants' defamation and defamation-based counterclaims regarding whether Paula abandoned her child.  The question of damages will remain for trial.

  o Summary judgment is denied on Defendants' defamation and defamation-based counterclaims in Counts I and II as to the following statements based on a dispute of material facts:

69

- References to Defendants being part of the "vile group of PEDOS[;] PEDO SUPPORTERS[;] PEDO ALIGNERS[;] VICTIM BLAMERS[.]"

- Whether Byron is a "child abuser."

- Whether Byron is a "drug addict."

o Summary judgment is denied as to Defendants' counterclaims regarding all other statements.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 22, 2026.

Jill A. Otake
United States District Judge

CIV. NO. 25-00297 JAO-RT, *Life Mastery Network LLC, et al. v. Haygarth, et al.*; ORDER (1) GRANTING IN PART DEFENDANTS' *DAUBERT* MOTION, ECF NO. 42; (2) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT, ECF NO. 46; (3) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS, ECF NO. 49; AND DENYING PLAINTIFFS' MOTION TO STRIKE, ECF NO. 72