IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, a Nevada limited liability company dba LIANA SHANTI ENTERPRISES and LIANE WILSON, also known in the community as LIANA SHANTI,<br><br>            Plaintiffs/Counterclaim Defendants,<br><br>      v.<br><br>PAULA HAYGARTH, BYRON HORVATH, STEFANIE HORVATH, JANE DOES 2-10, and JOHN DOES 1-10,<br><br>            Defendants/ Counterclaimants. | CIVIL NO. 1:25-cv-00297-JAO-RT<br><br>**MEMORANDUM IN SUPPORT OF MOTION**<br><br><br><br>Judge: Honorable Jill A. Otake<br>Trial: August 3, 2026. |

**MEMORANDUM IN SUPPORT OF MOTION**

**I.    INTRODUCTION AND BACKGROUND**

Plaintiffs' *First Amended Complaint*, written discovery responses, and deposition testimony contain allegations and arguments that on May 19, 2022, Mr. Horvath allegedly called Wilson's phone and left threatening messages. Ex. A at ¶ 14; Ex. B; Ex. C at page 32:5-34:25. Wilson also repeatedly—and falsely— posted on her social media that Mr. Horvath made death threats to her on her cell phone (which he vehemently denies). Ex. D at pdf 21 ¶ 47; Exs. E, F.

1

Defendants' discovery requests demanded evidence of these alleged recordings along with their metadata. Ex. G pdf 8. Plaintiffs produced poor-quality recordings (Exs. H, I), but they were stand-alone M4A files—**not** voicemail messages—and lacked any attendant metadata to verify when and from what number the messages allegedly originated. Plaintiffs initially agreed to produce both the metadata and screen shots of the incoming messages (Moritz Decl., ¶ 9, Ex. J), but Wilson later testified **that she disposed of the phone** on which she had allegedly received the voicemail messages. Ex. C at 36:2-38:10. Wilson's supplemental discovery response contended that the metadata could not be produced because she no longer had the phone on which the messages were allegedly received. Ex. K.

This evidence was solely within the possession, custody, and control of Plaintiffs, yet they failed to preserve it despite starting this litigation with the intention to accuse Mr. Horvath of having made death threats against Wilson. Thus, Defendants have been deprived of relevant information which would demonstrate Mr. Horvath made no such telephone calls and left no messages to Wilson.

## II.    ARGUMENT

District courts may impose sanctions under their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Williams v. Kohl's Department Stores, Inc.*, Civ. No. EDCV 19-397, 2020 WL 3882953, *3 (C.D. Cal. June 16, 2020). Spoliation is "the destruction or significant

US_ACTIVE\137850748\V-4

alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Id.* As to metadata, FRAP 37(e) sets the criteria to show that electronically stored information (ESI) was spoliated: (1) the ESI "should have been preserved in the anticipation or conduct of litigation;" (2) it "is lost because a party failed to take reasonable steps to preserve it;" and (3) "it cannot be restored or replaced through additional discovery." *Dish Network LLC v. Jadoo TV, Inc.*, Civ. 20-cv-01891-CRB (LB), 2023 WL 3801947 (N.D. Cal. 2023); FRCP 37(e), Adv. Comm. Notes, 2015 Amend. Rule 37(e)(1) provides that the Court "may order measures no greater than necessary to cure the prejudice," but FRAP 37(e)(2) provides for severe sanctions in cases where a party ***intentionally***[2] destroys information, as here. In that case, the court may issue (1) a presumption that the lost information was unfavorable to the party, (2) a jury instruction that it must presume the information was unfavorable to the destroying party, or (3) a dismissal or default judgment. *Id.* And where access to non-ESI evidence was destroyed—i.e., screen shots of the incoming messages Plaintiffs initially promised but never provided because the phone was allegedly thrown away—the Court is free to use its

---

[2] Under Rule 37(e)(2), "intent…means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations." *Dish Network, supra, citing Facebook, Inc. v. OnlineNIC Inc.*, No. 19-cv-07071-SI (SVK), 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022). Relevant factors concerning intent include "…the timing of the destruction, the method of deletion (e.g. automatic deletion vs. affirmative steps of erasure), [and] selective preservation…" *Id*.

3

discretion to fashion an appropriate remedy, such as an instruction that any reference to the alleged death threats be prohibited at trial. *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 533 (E.D. Cal. 2010) (court is permitted to exclude witness testimony based on the spoliated evidence).

Here, the facts show Plaintiffs purposefully destroyed evidence to avoid litigation obligations. Plaintiffs filed this proceeding on December 6, 2022, but they contemplated its filing as early as six months before doing so[3] and were aware of the duty to preserve evidence at the time they disposed of the phone, given their representation by counsel.[4] According to Wilson's own testimony, Plaintiffs affirmatively disposed of the phone. Ex. C at 36:2-38:10. Further, there is strong evidence of "selective preservation" in that Plaintiffs mysteriously were able to preserve alleged recordings of the voicemail messages as M4A files, but chose **not** to preserve the attendant metadata[5] or take screen shots of the incoming messages which could have confirmed whether the messages even existed and/or originated

---

[3] Declaration of Amanda Brady, ¶¶ 3-4.

[4] Duty to preserve relevant evidence can arise before commencement of litigation. *Continental Cas. Co.*, *supra*, 265 F.R.D. at 532-33. "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

[5] "[A]ctive ESI and its metadata is discoverable and producible at the requested party's expense." *American Automobile Ins. Co. v. Hawaii Nut & Bolt, Inc. Moore*, No. 15-00245 ACK-KSC, 2017 WL 80248 (D. Haw. Jan. 9, 2017).

US_ACTIVE\137850748\V-4

from Mr. Horvath.[6] Plaintiffs claim the recordings are proof of the alleged threats, but they prove no such thing: there is no telephone number tied to the alleged messages, there is no date and time confirming origination, nor do they contain any other pertinent metadata associated with the files. This missing information is key because it can prove—or disprove—Wilson's contention that the alleged messages came from Mr. Horvath. The evidence was within the exclusive control of Plaintiffs, and its absence must be held against the Plaintiffs. Plaintiffs should be prevented from presenting any evidence or argument that Wilson ever received a death threat on her phone from Mr. Horvath.

## III. CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant the motion and issue an order *in limine* preventing Plaintiffs from presenting evidence or argument that Mr. Horvath made death threats to Wilson, or, alternatively, issue an instruction that the jury should draw an inference that the destroyed evidence was exculpatory and favorable to Mr. Horvath.

Honolulu, Hawai'i, June 18, 2026.

/s/ Laura P. Moritz
LOUISE K.Y. ING
LAURA P. MORITZ

---

[6] Converting data stored electronically into a less accessible form that hinders future discovery violates the obligation to preserve evidence. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371 n. 4 (S.D.N.Y. 2006)

5

US_ACTIVE\137850748\V-4