Case 1:25-cv-00297-JAO-RT   Document 101-8   Filed 06/18/26   Page 1 of 7
PageID.1976                                                      Page 1

LIANE WILSON, Vol II on 01/16/2025
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.

Page 1

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT

STATE OF HAWAII

LIFE MASTERY NETWORK LLC,      )CIVIL NO. 5CCV-22-0000107
a Nevada limited               )(Other Civil Action)
liability company dba          )
LIANA SHANTI ENTERPRISES       )
and LIANE WILSON, also         )
known in the community as      )
LIANA SHANTI,                  )(Pages 1 to 139)
                               )
Plaintiff/Counterclaim         )
Defendants,                    )
                               )
vs.                            )
                               )
PAULA HAYGARTH, BYRON          )
HOROVATH, JANE DOES 1-10,      )
and JOHN DOES 1-10,            )
                               )
Defendants/                    )
Counterclaimants.              )
_____)

**Certified Transcript**

VOLUME II of II

VIDEOTAPED DEPOSITION OF LIANE WILSON

Thursday, January 16, 2025

REPORTED BY:  JAMIE S. MIYASATO, RPR

State of Hawaii CSR No. 394


**EXHIBIT C**

Case 1:25-cv-00297-JAO-RT    Document 101-8    Filed 06/18/26    Page 2 of 7
PageID.1977
LIANE WILSON, Vol II on 01/16/2025
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.
Pages 2–5

Page 2

IN THE CIRCUIT COURT OF THE FIFTH CIRCUIT

STATE OF HAWAII

LIFE MASTERY NETWORK LLC,    )CIVIL NO. 5CCV-22-0000107
a Nevada limited             )(Other Civil Action)
liability company dba        )
LIANA SHANTI ENTERPRISES     )
and LIANE WILSON, also       )
known in the community as    )
LIANA SHANTI,                )
                             )
Plaintiff/Counterclaim       )
Defendants,                  )
                             )
vs.                          )
                             )
PAULA HAYGARTH, BYRON        )
HOROVATH, JANE DOES 1-10,    )
and JOHN DOES 1-10,          )
                             )
Defendants/                  )
Counterclaimants.            )
_____)

VOLUME II

VIDEOTAPED DEPOSITION OF LIANE WILSON,
taken on behalf of the Defendants/Counterclaimants
pursuant to Notice, on Thursday, January 16, 2025,
commencing at 10:06 a.m., at Chamber of Commerce,
4268-I Rice Street, Lihue, Hawaii, 96766, before
Jamie Miyasato, RPR, State of Hawaii CSR No. 394.

Page 3

APPEARANCES:

For Plaintiffs/Counterclaim Defendants LIFE MASTERY
NETWORK LLC, a Nevada limited liability company dba
LIANA SHANTI ENTERPRISES and LIANE WILSON, also known
in the community as LIANA SHANTI:

        JEFFREY S. PORTNOY, ESQ.
        Cades Schutte
        1000 Bishop Street, Suite 1200
        Honolulu, Hawaii 96813-4212
        Telephone: (808)521-9200
        Email: jportnoy@cades.com

For the Defendants/Counterclaimants PAULA HAYGARTH
and BYRON HORVATH (via Zoom):
        LAURA P. MORITZ, ESQ.
        LOUISE K.Y. ING, ESQ.
        Dentons US LLP
        1001 Bishop Street, Suite 1800
        Honolulu, Hawaii 96813-3689
        Telephone: (808)524-1800
        Email: laura.moritz@dentons.com
             louise.ing@dentons.com

Also present:
David Linhares, iDepo Certified Video Specialist
Chance Wilson, Deponent Liane Wilson's son

Page 4

WITNESS INDEX

WITNESS                                          Page

LIANE WILSON

EXAMINATION BY MS. MORITZ....................    7

Page 5

INDEX OF EXHIBITS

| Marked | Description | Page |
| --- | --- | --- |
| 6 | Byron Horvath's Answer to Complaint & Counterclaim (6 pp) | 8 |
| 7 | Plaintiffs/Counterclaim Defendants Liana Shanti Enterprises and Liana Shanti's Answer to Defendant/Counterclaimant Byron Horvath's Counterclaim (7 pp) | 9 |
| 8 | Instagram Screen Grabs, BH000001 to BH000015 (15 pp) | 25 |
| 9 | Instagram Screen Grabs, BH000016 to BH000020 (5 pp) | 55 |
| 10 | Instagram Screen Grab, BH000187 (1 p) | 58 |
| 11 | Instagram Screen Grab, BH000272 (1 p) | 65 |
| 12 | Liana Shanti Answers (6 pp) | 66 |
| 13 | Plaintiff/Counterclaim Defendant Liane Wilson's Response to Defendant/Counterclaimant Paula Haygarth's First Request for Answer to Interrogatories (21 pp) | 70 |
| 14 | Plaintiff/Counterclaim Defendant Liane Wilson's Response to Defendant/Counterclaimant Paula Haygarth's First Request for Production of Documents (13 pp) | 78 |
| 15 | Tax Return Forms, Shanti-001028 to Shanti-001032 (5 pp) | 95 |
| 16 | Cease & Desist Notice to Liana Shanti from Haley Winter (1 p) | 133 |



LIANE WILSON, Vol II on 01/16/2025
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.
Pages 6–9

Page 6

LIHUE, HAWAI`I

Thursday, January 16, 2025

10:06 a.m.

-o0o-

(Pursuant to Rule 14 of the Rules Governing Court Reporting in Hawaii, the reporter's disclosure is available.)

THE VIDEOGRAPHER:  We are now recording on the record.  My name is David Linhares.  I am a certified legal video specialist for iDepo Hawaii.  My business address is Finances Factors Center, 1164 Bishop Street, Honolulu, Hawaii, 96813.  I am not related to any party in this action.  I am not financially interested in the outcome in any way.

Today is 1/16/2025, and the time is 10:06.  This is the deposition of Liane Wilson, aka Liana Shanti, Volume II.  In the Matter of Life Mastery Network, LLC, a limited liability company, dba Liana Shanti Enterprises, Plaintiff/Counterclaimant, versus Paula Haygarth, et al., Defendant/Counterclaimant, in the Circuit Court of the Fifth Circuit of the State of Hawaii.

Page 7

This deposition is being taken at the Chamber of Commerce Hawaii, Lihue, Hawaii, 96766, on behalf of the Defendant/Counterclaimants.  The court reporter is Jamie Miyasato of iDepo Hawaii, LLC.  The counsel have stated their appearances, and the deponent remains under oath.

LIANE WILSON,

having been called as a witness and being previously duly sworn to tell the truth, the whole truth and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MS. MORITZ:

Q   Good morning, Liana.

A   Hello.

Q   Thanks for coming back today.  And you remember you are still under oath?

A   Yes, ma'am.

Q   Okay.  Great.  I'll try and work as efficiently as I can today so we can get through this.  Just to begin, I wanted to confirm your Instagram account is lianashanti, one word, l-i-a-n-a-s-h-a-n-t-i?

Page 8

A   Yes.

Q   Okay.  Great.  That's the account that you post from; correct?

A   That's one of the accounts that I post from.

Q   You anticipated my next question.  The other accounts that you personally post from include what?

A   The ones I said yesterday.

Q   Okay.  And I'm sorry.  Could I ask -- do you post from an account called Jesus Truths?

A   Jesus Truths?  No.

Q   No? Okay.  Thank you.  All right.  I'm marking as 6, if I remember correctly.  This is Defendant Byron Horovath's Answer to the Complaint and Counterclaim.

Turning to the Counterclaim, second page, paragraph 4, there's an allegation that -- well, first of all, I want to confirm.  In your answer, you admitted to making that statement.  Do you still stand by that?

(Whereupon, Defendants' Exhibit No. 6 was marked for identification by the deposition officer and is attached hereto.)

Page 9

A   I have no idea what statement you're talking about.

Q   Okay.  The Statement in No. 4.  Take your time to look at it.

A   Statement No. 4?

Q   Or, sorry.  Paragraph 4.  I beg your pardon.  On the second page.

A   Under Counterclaim Facts?

Q   Under Counterclaim Instagram Defamatory Statements.

A   Again, as I said yesterday, and I'll be repeating today, something from three years ago, I can't say whether or not I put them in a story.  Stories disappear.  So you can ask me, but there's no answer to whether I posted something three years ago.

Q   Marking as Exhibit 7.  This is Plaintiffs/Counterclaim Defendants Liana Shanti Enterprises and Liana Shanti's Answer to Defendant/Counterclaimant Byron Horovath's Counterclaim.

Turning to the second page, paragraph 5, it states, Plaintiffs admit the allegations contained in paragraphs 4, 6, 8, 10, 12, and 14 of the Counterclaim.  Do you see that there?

(Whereupon, Defendants' Exhibit No. 7 was



Case 1:25-cv-00297-JAO-RT    Document 101-8    Filed 06/18/26    Page 4 of 7
PageID.1979
LIANE WILSON, Vol II on 01/16/2025    Pages 30–33
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.

Page 30

What I've done instead is create my own. It's called lianashanti_cult_recovery. And on that page I have experts like Dr. Kaia Alline, who's a licensed therapist, who's going to be working with people on religious cults. It's sort of become a pet project of mine to bring together women who are experts in their field. And I am going to be the person who has the huge section on religious cults.

So at one point, although I was potentially going to collaborate with the people who created exposingfamilycults.com and I was going to be the religious expert, I've not done that. I've never done that. I instead chose to create my own project and bring together women from around the world who are experts in child abuse, in child sexual abuse, and in family cults.

Q   Who created the "Exposing Family Cults" website?

A   As I told you yesterday, I do not know.

Q   But you just testified that you were working with these people to contribute --

A   No. I said they messaged me and asked, Would you mind contributing? I have no problem contributing. I was actually kind of excited to share my expertise on religious cults and family

Page 31

cults and then just decided the direction they were going on wasn't the focus I wanted to have. Because I didn't want to focus on individual people or families. I want to create a resource that can reach people worldwide. And I felt that the content they have on "Exposing Family Cults" is too specific to like specific families versus my goal, which is to educate people worldwide about the dangers of religious cults and family cults.

And I wanted to include that information in a much more broad way, in a way that I feel will be a massive resource and will actually spread quite far and wide because it affects millions and millions of people.

So my original intent was, Sure, I'll collaborate with these people and my expertise, and then I didn't really like the direction they were going in. So I have my own site now. As I said, it's called lianashanti_cult_recovery.

Q   Kaia Eileen. Did I get that name right?

A   It's Kaia Alline, A-l.

Q   Kaia Alline?

A   A-l-l-i-n-e.

Q   Thank you. And is she a student of yours?

Page 32

A   She's a student of mine, yes. She's also a doctor.

Q   Okay. Okay. You can set this aside for now.

I know you've mentioned this a few times in response to other questions, but I'll ask this specific question. Why do you believe Byron Horovath made death threats to you and your family?

MR. PORTNOY: Okay. I don't have a problem with her answering it again, but I'm going to make an objection. It's been asked and answered, even today. But that's okay.

Go ahead.

THE DEPONENT: I can answer?

MR. PORTNOY: I know you want to, so go ahead.

THE DEPONENT: Because Byron called my phone and said he was going to kill my son. He called my husband, Robert Beard, and said he was going to kill my family. He called my ex-husband and said he was coming to Kauai to kill my family. And he called Malie several times and said he was going to kill her family.

And we have his voice on recordings. And his wife, Haley, who's known him for a very long

Page 33

time, listened to it and immediately said, That is Byron and I know that for a fact.

And I had no idea because I've never heard Byron speak. I had never heard Cameron Irwin speak. I knew the phone number was Cameron Irwin. And once Haley confirmed that it was him and her friend Sheena confirmed that it was him -- there were a number of people who said that's definitely Byron.

Again, no reason for anybody to lie because these are not people that had anything to do with this, with his death threats. And when Haley confirmed that it was Byron and we reported him to the FBI and the FBI had Cameron's phone number, you know, there was no reason to doubt anything that Haley had said. So --

BY MS. MORITZ:

Q   Okay. Did all of the calls that you just referred to come from Cameron Irwin's telephone number?

A   Yes.

Q   Okay. Do -- so they all had a caller ID, or it was the same number?

A   No. There were two of the calls that they tried to block the number because, you know, they try to do these things anonymously because



Case 1:25-cv-00297-JAO-RT    Document 101-8    Filed 06/18/26    Page 5 of 7
PageID.1980
LIANE WILSON, Vol II on 01/16/2025                    Pages 34–37
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.

Page 34

they're scumbags. But they made a mistake and forgot to block their number on several of the calls, so several of the calls have Cameron's number.

All of the calls came in in the same period of time on the same day and were all happening in succession. And several of them had Cameron's phone number.

And in addition to that, Haley and Elise also confirmed that Cameron and Byron were together that day in some town called I think it was Moose Jaw. So they were together on that day that the death threats came in.

Q   But to be clear, I just want to make sure I'm getting your testimony correct, not all the calls had the caller ID with Cameron Irwin's number? You're testifying that some of them did and some of them didn't; correct?

A   Right. Some of them had the anonymous call blocked.

Q   You said the FBI had Cameron's phone number. How do you know that?

A   I gave it to them. Malie gave it to them. She reported them to the FBI in Florida. I reported it to the FBI field officer here in Hawaii, actually in Honolulu. Also to the police, the Kauai

Page 35

police. And Malie had police come to her house in Florida. So it was local law enforcement as well as federal.

And we also had given them information about suspected drug trafficking through some trucking company that apparently Byron and Cameron are involved in. So there was more to it than just the death threats.

But one of the things that the FBI agent asked me was, you know, do you believe these threats are credible? And I said, Absolutely because of what had been shared with me about drug trafficking between Byron Horovath and Cameron Irwin and some trucking company. I can't remember the name off the top of my head. I'm pretty sure I have the name of that somewhere because it was included in the FBI report. Suspected drug trafficking. Byron's history of stalking and threatening other women, which I've seen in Byron's own words in his own texts. His history, abuse with cocaine and domestic violence and child abuse, which I shared with the FBI, saying that all of these reasons, you know, led me to believe that absolutely that this was very credible threats to my family and Malie's family. And the fact that so many people were called with multiple threats, not

Page 36

just me, not just Malie.

Q   Are those threats or those voicemails -- are they still on your phone?

A   I forwarded -- they're part of the discovery. I don't know if they're still in my phone. But I know I definitely forwarded all of those in the discovery early on in fact.

Q   Are you saying you deleted them from your phone?

A   I definitely would not have deleted them. But I don't know how long -- you know, I've switched. I probably had two new phones since then. I don't know if they're still on there.

Q   Do you still have the phone that they arrived at, that they came to?

A   No. I'm like two phones past that now.

Q   But my question is, do you still have the old phone?

A   No.

Q   And you didn't have the -- when you reported to local law enforcement, did they take any steps to examine your phone, take any forensic evidence about where the calls came in, or anything like that?

A   I can't speak to exactly what they did,

Page 37

but they did do something in person. I don't know what their process is or what they --

Q   So --

A   I don't know anything about -- you're asking that word again, forensic. I don't know what they do. I'm not an expert in that at all. So I can't testify to what federal law enforcement did, or local law enforcement.

Q   How long ago did you trade in that old phone that the death threats came in on?

A   I don't remember.

Q   Would you have those records?

A   Of when I --

Q   Got a new phone.

A   I mean, I just buy my phones from the iPhone store -- I mean, from Apple online.

Q   Okay. So -- but, you know, would your phone records indicate when you would get a new phone?

A   My phone records wouldn't because I don't do it through my phone carrier. I literally just go on apple.com and buy a brand-new phone. I don't do trade-ins or anything like that.

Q   Okay. So you don't trade it in? What do you do with the old phone?

LIANE WILSON, Vol II on 01/16/2025    Pages 38–41
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.

Page 38

A    I usually just toss it.  I keep it -- I usually -- sorry.  Go ahead.

Q    I want you to finish your thought.

A    I usually keep the phone for a little bit in case.  Sometimes when I switch a new phone, some of the apps don't work or I need old passwords for old apps.  And because I run my business from my phone, I wait until I make sure that all of my apps -- my banking apps, my business apps -- are functioning on the new phone and then I toss it.

Q    Okay.  But you would have receipts of when you buy a new phone; correct?

A    Possibly.  It's possible.

Q    There was a post on your Instagram stories.  And I'll -- if you need to see it, I'm happy to.  I'm just going to try and shortcut this, so I'm going to ask the question, but there's a statement that states, You all know Byron has made death threats against me which are RECORDED AND PRESERVED.  RECORDED AND PRESERVED is in all caps.  And all caps, CONFIRMED to be him not only by his ex-wife Haley, but by other methods as well.

And my question for you is:  What other methods did you use to try and confirm that it was Byron that made the death threats against you?

Page 39

MR. PORTNOY:  Other than what she's already testified to?

MS. MORITZ:  Other than what she's already testified to.

THE DEPONENT:  Just what I've testified to.  The people who told me that it was Byron, several people who know him, and the fact that it was Cameron Irwin's phone, which was confirmed for a fact, and that it's his best friend and that they were took together in this Moose Jaw place on the day that several families got death threats called in to them.

BY MS. MORITZ:

Q    I'll just note for the record that I was reading from Bates stamped document BH000176.

There's a document that you produced.  I don't have a copy to show you, but I'm going to tell you about it and see if you remember what it is.  It was marked as Bates stamp Shanti-001430.  You mentioned it yesterday, and that's why I wanted to ask you about it.  It's a screenshot of a Twitter/X post -- I don't know which -- by a user with the handle Fox, and it's dated June 17th.  But it does not indicate the year.

Do you know the -- the post I'm referring

Page 40

to?

A    If it's the rape threat, then yes.

Q    Okay.  Was that -- yes.  And I am going to review what it said.  Was that a direct message or was that a post?

A    That's a -- a Twitter.  It's similar to on Instagram somebody privately messaged me and said that they were going to rape me.

Q    That was my impression, but I wanted to confirm that.  Thank you.

A    Yes.

Q    Do you know what year that was posted?

A    I don't.

Q    It does say, June 17th, but that's not helpful for you to pin down the year?

A    I don't want to guess.

Q    I know.  What it reads is, "I'm going to rape you."  Okay.  Excuse me.  I want to make sure I'm accurate.  It says, "I'm going to rape you.  Don't sleep."  And that is time stamped at 5:32 a.m.

And the next entry says at 5:34 a.m., I heard you like to fuck with people.  Hope this is an eye opener for you."

So we're talking about the right post; correct?  Or the right direct message?  Excuse me.

Page 41

Does that sound right?

A    Excuse me for a minute.

Q    Sure.  Take a moment.

MR. PORTNOY:  Do you want to take a break?

THE DEPONENT:  Is it okay?

MR. PORTNOY:  Yeah.

MS. MORITZ:  Let's go off the record.

THE VIDEOGRAPHER:  The time is 10:49.  We are off the record.

(A recess was taken.)

THE VIDEOGRAPHER:  The time is 10:53 and we are back on record.

BY MS. MORITZ:

Q    Liana, you are still under oath.  And I -- I only have one -- I think I only have one question about that post that we were just discussing.  And that is, do you have any evidence that ties either of my clients to the social media account that sent you that direct message?

A    Haley.

Q    And what did Haley say about that?

A    That it was coming from Byron.

Q    Did she tell you what evidence she had?

A    No.

Case 1:25-cv-00297-JAO-RT    Document 101-8    Filed 06/18/26    Page 7 of 7
PageID.1982
LIANE WILSON, Vol II on 01/16/2025                                    Pages 138–139
LIFE MASTERY NETWORK LLC, et al., vs PAULA HAYGARTH, et al.

Page 138

STATE OF HAWAI'I          )
                          )
CITY AND COUNTY OF HONOLULU )

      I, JAMIE MIYASATO, Certified Court Reporter,
Certificate No. 394, for the State of Hawaii, hereby
certify:
      That on January 16, 2025, at 10:06 a.m., that
LIANE WILSON, witness, appeared before me whose
testimony is contained herein; that prior to being
examined, the witness was, by me, duly sworn;
      That pursuant to Rule 30(e) of the Hawaii
Rules of Civil of Civil Procedure, a request for an
opportunity to review and make changes to this
transcript:

      (  )  Was made by the deponent or a party
            (and/or their attorney) prior to the
            completion of the deposition.

      (  )  Was NOT made by the deponent or a
            party (and/or their attorney) prior to
            the completion of the deposition.

      (X)  Was made by the deponent or a party
            (and/or their attorney) immediately
            after the completion of the
            deposition.
      (  )  Was waived.
      I further certify that I am not an attorney
for any of the parties hereto, nor in any way
concerned with the cause.

      Dated:  January 21, 2025, in Honolulu, Hawaii.

            /s/ Jamie Miyasato

            _Jamie Miyasato_
            _____
            JAMIE MIYASATO, HAWAII CSR 394
            iDepo Hawaii, LLC
            808-664-6677

Page 139

                  ERRATA LIST

PAGE  LINE   ERROR      CORRECTION    REASON
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____
____  ____  _____  _____  _____

            I, undersigned, do hereby certify that
I have read the foregoing deposition, and find it to be
a true and accurate transcription of my testimony, with
the above-noted corrections,
   If any:


_____    _____
   Signature of Deponent                Date

