LOUISE K.Y. ING        2394
LAURA P. MORITZ        7860

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI 96813
Telephone:  808 524 1800
Facsimile:  808 524 4591
Email:      louise.ing@dentons.com
            laura.moritz@dentons.com

Attorneys for Defendants/Counterclaimants
PAULA HAYGARTH, BYRON HORVATH, and
STEFANIE HORVATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, a Nevada limited liability company dba LIANA SHANTI ENTERPRISES and LIANE WILSON, also known in the community as LIANA SHANTI, <br><br>      Plaintiffs/Counterclaim Defendants, <br><br>      v. <br><br> PAULA HAYGARTH, BYRON HORVATH, STEFANIE HORVATH, JANE DOES 2-10, and JOHN DOES 1-10, <br><br>      Defendants/ Counterclaimants. | Civil No.: 1:25-cv-00297-JAO-RT <br><br> **DEFENDANTS/ COUNTERCLAIMANTS PAULA HAYGARTH, BYRON HORVATH, AND STEFANIE HORVATH'S FINAL PRETRIAL STATEMENT** <br><br> FINAL PRETRIAL CONFERENCE <br> Date:   July 20, 2026 <br> Time:  8:30 a.m. <br> Judge:  Magistrate Judge Rom Trader <br><br> Trial Date:   August 3, 2025 <br> Trial Judge:  Hon. Jill A. Otake |

### DEFENDANTS/COUNTERCLAIMANTS PAULA HAYGARTH, BYRON HORVATH, AND STEFANIE HORVATH'S FINAL PRETRIAL STATEMENT

**A.     PARTIES**

This Final Pretrial Statement is filed on behalf of Defendants/ Counterclaimants Paula Haygarth, Byron Horvath, and Stefanie Horvath (collectively "**Defendants**"), through their attorneys, Dentons US LLP, pursuant to LR 16.4 of the Rules of the United States District Court for the District of Hawaii and the Amended Rule 16 Scheduling Order filed on September 12, 2025 [ECF 30].

**B.     JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Plaintiff Liane Wilson is a citizen of the State of Hawai'i. Plaintiff Life Mastery Network is a Nevada limited liability company with a single member, Plaintiff Liane Wilson. Defendants are all citizens of Canada. The amount in controversy exceeds $75,000, exclusive of fees, interests, and costs.

Venue in this District appears proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the District of Hawaii.

Defendants do no believe any party disputes jurisdiction or venue.

**C.     SUBSTANCE OF ACTION**

Plaintiffs filed this lawsuit in an effort to stifle online criticism of Plaintiff Liane Wilson's activities as a self-proclaimed spiritual, nutrition, wealth, business

and women's counselor. For a number of years, certain anonymous online social media accounts have posted statements expressing concern over Wilson's work as a self-described "world-renowned thought leader in quantum energy healing, spiritual psychology, nutrition, emotional transformation, and feminine wealth consciousness." Although she lacked any evidence tying any of the Defendants to the anonymous statements, Wilson evidently decided that Defendants were responsible for such posts and filed this action for defamation and false light in Fifth Circuit Court, State of Hawai'i ("State Ct.") against Ms. Haygarth and Mr. Horvath in December 2022. A few years later, Plaintiffs amended their complaint to name Ms. Horvath as an additional defendant and added claims for intentional infliction of emotional distress and conspiracy.[1] Defendants each firmly deny being responsible for the anonymous posts or other allegations against them, nor do they know the identity of the person(s) responsible.

Before this lawsuit was ever filed, Plaintiffs had launched repeated vicious online attacks against each of the Defendants on social media and the Internet generally. On Wilson's @lianashanti Instagram account, Plaintiffs undisputedly posted hundreds (if not thousands) of defamatory and/or false light statements about each of the Defendants, including, but not limited to, statements that:

---

[1] Plaintiffs also alleged negligent infliction of emotional distress, but that claim has been dismissed on summary judgment. *See* ECF 92.

2

- accuse Defendants of being pedophiles and supporters of child abuse,

- accuse Ms. Haygarth of abandoning her own son,

- accuse Mr. and Ms. Horvath of being miserable in their marriage and only having sex when they are drunk, and

- insult, harass and bully them, often with cruel and/or pseudo-religious fervor.

Plaintiffs also posted similar statements about Defendants on a website formerly known as www.exposingfamilycults.com, now known as www.exposingfamilyabuse.com. These statements form the bases of Defendants' counterclaims for defamation and false light against Plaintiffs. This Court has already granted summary judgment in Ms. Haygarth's favor as to Plaintiffs' statement that Ms. Haygarth "abandoned her own son" at birth, and all that remains on that issue is determination of damages against Plaintiffs. *See* ECF 92.

**D.    UNDISPUTED FACTS**

The following facts are not reasonably disputed.

| **Facts Not Reasonably Disputed** |
|---|
| Plaintiff Liane Wilson, aka Liana Shanti, is a public figure with more than 35,000 social media followers and more than 100,000 customers in 90 countries. |
| Defendants first met in person in early 2022 to discuss their respective child custody situations and concerns about Plaintiff Wilson's influence over Mr. Martin and Mr. Horvath's ex-spouses, Amanda Brady and Haley Winter, respectively. |
| The Horvaths asked Mr. Martin and Ms. Haygarth to write a statement about their own experience with Ms. Wilson that was submitted in Mr. Horvath's custody |

| Facts Not Reasonably Disputed |
|---|
| dispute with his ex-wife Ms. Winter. |
| Plaintiff Liane Wilson posts under the Instagram account name @lianashanti. |
| Plaintiffs collectively operate the website www.lianashanti.com |
| On or around November 5, 2022, using the @lianashanti Instagram account, Plaintiff Wilson posted a photo of Ms. Haygarth and stated: "Jesus, we ask you to DELETE AND DESTROY all toxic lies from this satan servant – PAULA HAYGARTH – who is campaigning to invalidate truths of #childabuse to cover up her own misery. … She abandoned her own son Austin, and her guilt and shame have turned her into a soldier of satan." |
| On or around January 9, 2023, Plaintiffs, using the @lianashanti Instagram account, posted a photo of Paula with an overlying statement: "This #blackmagicsatanist Paula Haygarth who abandoned Austin, her own son as a baby, was the person who posted on Cult Education Forum. We understand why now, with her involvement in child trafficking and convicted felon Rick Ross." |
| On or around January 22, 2023, using the @lianashanti Instagram account, Plaintiffs stated: What WE are doing – this JESUS LED community calling out THESE people … Paula Haygarth… This vile group of PEDOS PEDO SUPPORTERS PEDO ALIGNERS VICTIM BLAMERS … Paula Haygarth. |
| Plaintiffs have posted statements on the @lianashanti Instagram account which describe Ms. Haygarth as an abuser of children and supporter of pedophiles. |
| Since before 2022 and continuing on to the present day, Plaintiffs have posted on the @lianashanti Instagram account describing Mr. Horvath as, among other things, a child abuser, a pedophile, and a drug addict. |
| Since before 2022 and continuing on to the present day, Plaintiffs have posted statements on the @lianashanti Instagram account that Mr. Horvath never loved his current wife Stefanie nor wished to marry her and stating that he and his wife only have sex under the influence of alcohol. |
| Since before 2022 and continuing on to the present day, Plaintiffs regularly post statements on the @lianashanti Instagram account, about Ms. Horvath which include, but are not limited to, photographs ridiculing Ms. Horvath about her appearance, stating that her husband Mr. Horvath never loved her nor wished to |

4

15813736\000001\137914939\V-5

| Facts Not Reasonably Disputed |
|---|
| marry her, and stating that she and Mr. Horvath only have sex under the influence of alcohol. |
| Since before 2022 and continuing on to the present day, Plaintiffs regularly posted statements on the @lianashanti Instagram account stating that Ms. Horvath is a child abuser and supports pedophiles and child abusers.[2] |

**E.    DISPUTED FACTUAL ISSUES**

Defendants believe that, other than the undisputed facts identified above, all the remaining facts will be disputed. Counsel will continue to attempt to work cooperatively to identify additional facts not in dispute.

**F.    RELIEF SOUGHT**

Defendants, as Counterclaimants, seek general and special damages to be proven at trial, an award of punitive damages, and costs of suit against Plaintiffs and each of them. General and special damages will include, but not necessarily be limited to, fees and costs incurred from litigation with third parties (such as against Mr. Horvath's ex-wife Ms. Winter and Mr. Martin's ex-wife Ms. Brady) which was caused by Plaintiffs (approximately $183,960.48 in Canadian currency and $11,226.14 USD incurred defending against two separate proceedings), and costs

---

[2] Defendants are in the process of identifying additional social media posts about Defendants that were made under the @lianashanti Instagram account to present at trial. Defendants are informed and believe that as to posts made under the @lianashanti Instagram account, there is no dispute that the posts were made by Wilson.

5

related to ongoing counseling services to assist Defendants in processing the emotional trauma and loss of business and income from the social media posts made about them.

Defendants also seek (1) an injunctive order compelling Plaintiffs, among other things, to remove from Instagram, Facebook, exposingfamilyabuse.com, and any other social media or website all false, false light and defamatory statements about Defendants and/or their family members, and (2) an injunctive order prohibiting Plaintiffs from making any false, false light and/or defamatory statements about Defendants and/or their family members on social media and/or the Internet in the future.

## G.    POINTS OF LAW

### 1.    Plaintiffs' Claims

Defamation

Plaintiffs assert claims against Defendants for their (1) alleged anonymous posts about Plaintiffs, which Plaintiffs contend are false and defamatory, and (2) that Defendants somehow conspired in a "smear campaign" against Plaintiffs by submitting witness impact statements[3] in Wilson's criminal case, District of Hawaii Case No. 1:19CR00105-001. Defendants assert counterclaims against Plaintiffs for

---

[3] The Court has already determined that these victim impact statements are not actionable as defamation. ECF 92.

6

their defamatory posts about Defendants made on the @lianashanti Instagram and a website formerly titled www.exposingfamilycults.com, now www.exposingfamilyabuse.com. Defendants do not believe there is a meaningful dispute between the parties as to the legal standards applicable in this case, but cite them here out of an abundance of caution.

> Under Hawai'i law, the elements of a defamation claim are:
>
> (1) a false and defamatory statement concerning another;
>
> (2) an unprivileged publication to a third party;
>
> (3) fault amounting to at least negligence on the part of the publisher;
>
> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Hamilton v. Lefkowitz*, No. CV 18-00501 JAO-WRP, 2019 WL 2583478, at *5 (D. Haw. June 24, 2019) (citing *Gonsalves v. Nissan Motor Corp*., 100 Hawai'i 149, 171, 58 P.3d 1196, 1218 (2002)). Here, a key disputed point is the lack of evidence that any of the Defendants made any of the anonymous statements Plaintiffs accuse them of making. Each of the Defendants firmly deny any responsibility for the statements, and in discovery, it became clear that Plaintiffs' only "evidence" for accusing Defendants of responsibility consisted of Wilson's own conclusions derived from second-hand, unscientific, speculative, unverified information from third parties, including a draft report which the Court has excluded from use at trial.

7

Defendants understand that Plaintiffs do not intend to call any of these purported third parties to testify at trial.

Because Wilson is undisputedly a public figure, Plaintiffs must prove not only that Defendants are responsible for the anonymous statements, but also prove by **clear and convincing evidence** that Defendants made the alleged statements with **actual malice**. *Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974). The Supreme Court has defined actual malice as publication with the knowledge that the statement is false, or with a reckless disregard for truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "Mere negligence does not suffice. Rather, the plaintiff must demonstrate that the author 'in fact entertained serious doubts as to the truth of his publication.'" *Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1991), quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Actual malice can also be shown by evidence that the author or speaker "acted with 'a high degree of awareness of … probable falsity.'" *Masson*, 501 U.S. at 510, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). For Plaintiffs to prevail, they must come forward with not only evidence that Defendants made the anonymous statements, but also with clear and convincing evidence from which a jury could find that each of the Defendants acted with actual malice.

15813736\000001\137914939\V-5

Conspiracy, Intentional Infliction of Emotional Distress, and False Light

Under Hawai'i law, Plaintiffs' civil conspiracy claim has three required elements: (1) the formation of a conspiracy, (2) wrongful conduct in furtherance of a conspiracy, *i.e.*, an actionable claim based on deceit; and (3) damages. *Menash v. Bank of New York*, 850 F.Supp.2d 1120, 1138 (D. Haw. 2012). Because there can be no civil claim based on conspiracy alone, Plaintiffs must prove an underlying actionable clam. *Id.*, citing *Ellis v. Crockett*, 51 Haw. 45, 57-58, 451 P.2d 814, 822-23 (1969).

Plaintiffs' emotional distress claim is based on the same facts as the defamation claims and is therefore "parasitic" of their defamation claims. They "stand or fall" with that claim. *Wilson v. Freitas*, 121 Hawai'i at 131, 214 P.3d at 1121. An intentional infliction of emotional distress claim requires that the act allegedly causing the harm was: (1) intentional or reckless, (2) outrageous, and (3) caused extreme emotional distress to another. *Hac v. University of Hawai'i*, 102 Hawai'i 92, 106-107, 73 P.3d 46, 60-61 (2003). "Outrageous" conduct is conduct that exceeds "all bounds of decency," "be regarded as atrocious, and utterly intolerable in a civilized community," and cause "an average member of the community … to exclaim, 'Outrageous!'" *Simmons v. Aqua Hotels & Resorts, Inc.*, 130 Hawai'i 325, 332, 310 P.3d 1026, 1033 (2013) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d). Here, a key disputed point is whether

9

Defendants' actions constitute outrageous where there is no evidence they even made the allegedly defamatory statements. Another disputed point is whether the anonymous statements about Wilson were true.

Plaintiffs' false light claims are based on the same allegations as the defamation claims (i.e., the anonymous statements posted online). The false light tort is defined in the Restatement (Second) as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other wads place would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.*, 121 Hawai'i at 130, 214 P.3d at 1120, citing RESTATEMENT (SECOND) OF TORTS § 652E (1977). There is substantial overlap between defamation and false light claims. Courts hold that where, as here, "a false-light claim is based on the same statements as a defamation claim, the false-light claim must be dismissed if the defamation claim is dismissed." *Id.*, citing *Gold v. Harrison*, 88 Hawai'i at 103, 962 P.2d at 362.

15813736\000001\137914939\V-5

## 2. Defendants' Counterclaims

Defendants are all undisputedly private figures, so although the elements of a defamation claim are the same, the standard to prove harm/damages is different.[4] As noted above, under Hawai'i law, the elements of a defamation claim are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Hamilton v. Lefkowitz*, *supra*, 2019 WL 2583478, at *5, citing *Gonsalves v. Nissan Motor Corp*., 100 Hawai'i at 171, 58 P.3d at 1218. As to the fourth element, if a writing is defamatory *per se*, injury is presumed and the claimant can recover damages without needing to allege and prove special damages. *Partington v. Bugliosi*, 825 F.Supp. 906, 915 (D. Haw. 1993) (noting that if a writing is defamatory per se, it is actionable without allegation of special damages); *Kahanamoku v. Advertiser Pub. Co*., 25 Haw. 701 (1920) (explaining that if a plaintiff establishes libel per se, "injury to the plaintiff will be presumed and special damages need not be alleged or proven, but general and punitive damages may be recovered.").

---

[4] Defendants accuse Plaintiffs of making the defamatory statements on Wilson's @lianashanti Instagram account and a website www.exposingfamilycults.com, now titled www.exposingfamilyabuse.com.

11

In *Russell v. American Guild of Variety Artists*, 53 Haw. 456, 497 P.2d 40 (1972), the Hawai'i Supreme Court explained the types of libel that could constitute defamation *per se*:

> [I]n determining what constitutes libel per se, the court in *Kahanamoku* classified libels that affect the character of private persons according to their objects as (1) Libels which impute to a person the commission of a crime. (2) Libels which have a tendency to injure him in his office, profession, calling or trade. (3) Libels which hold him up to scorn and ridicule and to feelings of contempt or execration, impair him in the enjoyment of society and those imperfect rights of friendly intercourse and mutual benevolence which man has with respect to man. The court went on to hold that the defamation in question was libelous per se because it tended 'to subject the person charged to social degradation (sic) and to the contempt of all right thinking people.

53 Haw. at 458, 497 P.2d at 42 (*citing Kahanamoku v. Advertiser Pub. Co.*, *supra*). These categories are merely illustrative—not exhaustive. The *Russell* court went on to recognize as defamation *per se* "a statement that one has been committed to a state mental hospital". *Russell*, 53 Haw. at 458-59, 497 P.2d at 43. *See also Partington v. Bugliosi*, 825 F.Supp at 915 ("Under Hawaii law, defamation per se includes statements that 'impute to a person the commission of a crime' and statements that 'have a tendency to injure him in his office, profession, calling or trade'."). Defamatory statements "are not to be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent' of the writing." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000). Allegedly defamatory statements should be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the

12

public to which they are addressed." *Krepps v. Reiner*, 588 F.Supp. 471, 484 (S.D.

N.Y. 2008) (citation omitted).

## H.   PREVIOUS MOTIONS

Numerous motions, especially discovery motions, have been filed in this

action, mostly in the state court proceeding:

| Date | Dkt | Motion | Outcome |
| --- | --- | --- | --- |
| 9/8/23 | 34 (State Ct.) | Defendants' Non-Hearing Motion to Extend Time to Respond to Plaintiffs' Discovery Requests | Withdrawn. (State Ct. Dkt. 36) |
| 2/5/24 | 64 (State Ct.) | Defendants' Motion for Protective Order | Granted in part, denied in part (State Ct. Dkt. 110) |
| 9/19/24 | 156 (State Ct.) | Plaintiffs' Motion to Compel Deposition Testimony of Byron Horvath and Paula Haygart | Granted (State Ct. Dkt. 185) |
| 10/8/24 | 160 (State Ct.) | Defendants' Motion for Leave to File Under Seal Exhibits 7 and 8 to their Memorandum in Opposition to Plaintiffs' Motion to Compel | Granted (State Ct. Dkt. 165) |
| 10/15/24 | 172 (State Ct.) | Defendants' Motion to Compel Responses to (1) Paula Haygarth's First Set of Document Requests; (2) Byron Horvath's First Set of Document Requests; (3) Paula Haygarth's Second Set of Interrogatories; (4) Byron Horvath's Second Set of Interrogatories; (5) Paula Haygarth's Second Set of Document Requests; and (6) Byron Horvath's | Hearing on Dec. 3, 2024 continued to Jan. 28, 2025 (State Ct. Dkt. 250); hearing on Jan. 28, 2025 continued to Apr. 8, 2025 (State Ct. Dkt. 250); hearing on Apr. 8, 2025 continued to Apr. 22, 2025 (State Ct. Dkt. 309); Apr. 22, 2025 hearing continued per stipulation to July 22 (State Ct. Dkt. 314); July 22, 2025 hearing continued until |

13

| Date | Dkt | Motion | Outcome |
|------|-----|--------|---------|
| | | Second Set of Document Requests | moved upon due to removal (State Ct. Dkt. 462) |
| 12/9/24 | 229 (State Ct.) | Defendants' *Ex Parte* Motion for an Order for Issuance of Commission to Notice a Rule 30(b)(6) Deposition upon Oral Examination via Zoom Video Conferencing and for Issuance of Subpoena in the State of Texas | Granted (State Ct. Dkt. 237) |
| 3/31/25 | 287 (State Ct.) | Plaintiffs' *Ex Parte* Motion to File Exhibits "A" and "B" of Plaintiffs' Motion to Compel Under Seal | Granted (State Ct. Dkt. 300) |
| 3/31/25 | 288 (State Ct.) | Plaintiffs' Motion to Compel Defendants to Return, Sequester, and Destroy Inadvertently Produced Documents | Granted (State Ct. Dkt. 356) |
| 3/31/25 | 290 (State Ct.) | Defendants' Motion to Seal Ex. 1 to their Motion for Release After *in camera* Inspection of Documents | Granted (State Ct. Dkt. 302) |
| 3/31/25 | 294 (State Ct.) | Defendants' Motion for Release after *In Camera* Inspection of Document Produced by Plaintiffs | Denied (State Ct. Dkt. 358) |
| 6/10/25 | 379 (State Ct.) | Plaintiff's Non-Hearing Motion for Leave to Amend Complaint | Granted (State Ct. Dkt. 429) |
| 6/10/25 | 381 (State Ct.) | Plaintiffs' Non-Hearing Motion to Identify Stefanie Horvath as Jane Doe 1 | Granted (State Ct. Dkt. 427) |
| 6/10/25 | 383 (State Ct.) | Defendants' Motion for Leave to File Amended Answer to Complaint | Granted (State Ct. Dkt. 431) |

14

| Date | Dkt | Motion | Outcome |
|---|---|---|---|
| 6/23/25 | 416 (State Ct.) | Plaintiffs' *Ex Parte* Motion for an Order for Issuance of Commission to Notice a Deposition upon Oral Examination via Zoom Video Conferencing and for Issuance of Subpoena in the State of Texas | Granted (State Ct. Dkt. 418) |
| 11/14/25 | 42 | Defendants' *Daubert* Motion to Exclude Sourced Intelligence Report and Testimony of Alex Feil | Granted (ECF 92) |
| 12/5/25 | 46 | Defendants' Motion for Summary Judgment on Plaintiffs' *First Amended Complaint* | Granted in part, denied in part (ECF 92) |
| 12/8/25 | 49 | Defendants' Motion for Summary Judgment on *First Amended Counterclaim* | Granted in part, denied in part (ECF 92) |
| 12/11/25 | 52 | Plaintiffs' Motion to Continue Hearing Date | Granted (ECF 54) |
| 2/5/26 | 72 | Plaintiffs' Motion to Strike Declaration of Amanda Brady and Anna Kelly or in the Alternative, Motion for Leave to File Supplemental Briefing | Denied (ECF 92) |

## I.    WITNESSES TO BE CALLED

Defendants will submit their Final Comprehensive Witness List on July 13,

2026 pursuant to the Amended Rule 16 Scheduling Order. At this time, Defendants

anticipate calling the following witnesses and reserve the right to name additional

witnesses listed in Plaintiffs' Final Pretrial Statement and Initial Disclosures and to

15

supplement this list as appropriate, including to name any witnesses necessary for authenticating documents and records.

1.     Paula Haygarth
       c/o Louise K.Y. Ing, Esq.
       Laura P. Moritz, Esq.
       Dentons US LLP
       1001 Bishop Street, Suite 1800
       Honolulu, HI 96813

Ms. Haygarth will testify about liability and damages, including but not limited to that she is not responsible for the anonymous social media posts alleged in Plaintiffs' First Amended Complaint and that she has not engaged in any sort of unlawful, conspiratorial "smear campaign" against Plaintiffs. As to her Counterclaim, Ms. Haygarth will testify about Plaintiffs/Counter Defendants' liability and the social, physical, emotional, and financial consequences she has suffered as a result of the defamatory and/or false light social media and Internet posts Plaintiffs have repeatedly made about her.

2.     Byron Horvath
       c/o Louise K.Y. Ing, Esq.
       Laura P. Moritz, Esq.
       Dentons US LLP
       1001 Bishop Street, Suite 1800
       Honolulu, HI 96813

Mr. Horvath will testify about liability and damages, including but not limited to that he is not responsible for the anonymous social media posts alleged in Plaintiffs' First Amended Complaint and that he has not engaged in any sort of unlawful, conspiratorial "smear campaign" against Plaintiffs. As to his

16

Counterclaim, Mr. Horvath will testify about Plaintiffs/Counter Defendants' liability and the social, physical, emotional, and financial consequences he and his wife have suffered as a result of the defamatory and/or false light social media and Internet posts Plaintiffs have repeatedly made about him.

3.    Stefanie Horvath
c/o Louise K.Y. Ing, Esq.
Laura P. Moritz, Esq.
Dentons US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI 96813

Ms. Horvath will testify about liability and damages, including but not limited to that she is not responsible for the anonymous social media posts alleged in Plaintiffs' First Amended Complaint and that she has not engaged in any sort of unlawful, conspiratorial "smear campaign" against Plaintiffs. As to her Counterclaim, Ms. Horvath will testify about Plaintiffs/Counter Defendants' liability and the social, physical, emotional, and financial consequences she and her husband have suffered as a result of the defamatory and/or false light social media and Internet posts Plaintiffs have repeatedly made about her.

17

4.      Wade Martin
        c/o Louise K.Y. Ing, Esq.
        Laura P. Moritz, Esq.
        Dentons US LLP
        1001 Bishop Street, Suite 1800
        Honolulu, HI 96813

Mr. Martin will testify about liability and damages, including but not limited to the fact that his spouse, Ms. Haygarth, is not responsible for the anonymous social media posts alleged in Plaintiffs' First Amended Complaint and that she has not engaged in any sort of unlawful, conspiratorial "smear campaign" against Plaintiffs. As to the Counterclaim, Mr. Martin will testify about Plaintiffs/Counter Defendants' liability and the social, physical, emotional, and financial consequences Defendants have suffered as a result of the defamatory and/or false light social media and Internet posts Plaintiffs have repeatedly made about them. Mr. Martin will also testify about his experience with Plaintiffs and the effect they had on his relationship with his ex-wife (Amanda Brady) and two children he shares with her.

5.      Haley Winter
        c/o Louise K.Y. Ing, Esq.
        Laura P. Moritz, Esq.
        Dentons US LLP
        1001 Bishop Street, Suite 1800
        Honolulu, HI 96813

Ms. Winter will testify about her time as a "student" of Plaintiff Liane Wilson, the matters about which Wilson counseled her, her reasons for terminating her relationship with Wilson, and her personal observations regarding Wilson. She will

18

also testify as to Mr. Horvath's good care of the child they share together and other

relevant family matters. She will also testify as to the circumstances of her decision

to leave Wilson's community and what occurred in the aftermath.

> 6.  Amanda Brady
> c/o Louise K.Y. Ing, Esq.
> Laura P. Moritz, Esq.
> Dentons US LLP
> 1001 Bishop Street, Suite 1800
> Honolulu, HI 96813

Ms. Brady is the ex-wife of Ms. Haygarth's spouse, Wade Martin.  Ms. Brady

will testify about her time as a "student" of Plaintiff Liane Wilson, the matters about

which Ms. Wilson counseled her, her reasons for terminating her relationship with

Ms. Wilson, and her personal observations regarding Ms. Wilson's conduct and

actions.

> 7.  Paris McIvor
> c/o Louise K.Y. Ing, Esq.
> Laura P. Moritz, Esq.
> Dentons US LLP
> 1001 Bishop Street, Suite 1800
> Honolulu, HI 96813

Ms. McIvor is an employee of Defendants' Canadian counsel,

McKercher LLP Barristers & Solicitors. She will authenticate social media posts by

Plaintiffs on Ms. Wilson's @lianashanti Instagram account of which she took screen

shots and catalogued on behalf of Defendants.

8.  Roxanne Ouellette
    c/o Louise K.Y. Ing, Esq.
    Laura P. Moritz, Esq.
    Dentons US LLP
    1001 Bishop Street, Suite 1800
    Honolulu, HI 96813

Ms. Ouellette represented Mr. Horvath in family court proceedings in Saskatchewan. She will authenticate the social media posts by Plaintiffs on Ms. Wilson's @lianashanti Instagram account of which screen shots were taken and catalogued on behalf of Defendants. Ms. Ouellette will also testify about Defendants' damages, specifically their added legal expense of litigating with third parties due Plaintiffs' conduct and actions.

Defendants reserve their right to call additional witnesses named by Plaintiffs name and the right to call additional witnesses for purposes of rebuttal.

## J.    EXHIBITS, SCHEDULES, AND SUMMARIES

At this time, Defendants expect to offer as exhibits at trial the following documents. Defendants will update and supplement this list of potential exhibits and demonstrative aids at the time exhibits and demonstrative aids are exchanged pursuant to the Amended Rule 16 Scheduling Order. By including an exhibit list, Defendants is not conceding that the document is admissible. Defendants reserve the right to name or identify other witnesses to serve as sponsoring witnesses as necessary or appropriate.

20

| Document/Exhibit | Purpose | Sponsoring Witness |
|---|---|---|
| Judgment in U.S.D.C., District of Hawaii Case No. 1:19CR00105-001 entered December 17, 2021 as to Liane Wilson, aka Liana Shanti | Credibility | Judicial notice |
| @lianashanti Instagram "story" screen shot Bates stamped HH001166 | Evidence of defamatory statement by Plaintiffs | Paris McIvor, Paula Haygarth |
| @lianashanti Instagram "story" screen shot Bates stamped HH001457 | Evidence of defamatory statement by Plaintiffs | Paris McIvor |
| @lianashanti Instagram "story" screen shot Bates stamped HH001607 | Evidence of defamatory statement by Plaintiffs | Paris McIvor |
| @lianashanti Instagram "story" screen shot Bates stamped PH000535 | Evidence of defamatory statement by Plaintiffs | Paula Haygarth |
| @lianashanti Instagram "story" screen shot Bates stamped PH000545 | Evidence of defamatory statement by Plaintiffs | Paula Haygarth |
| @lianashanti Instagram "story" sequential screen shots Bates stamped PH000564-65 | Evidence of defamatory statement by Plaintiffs | Paula Haygarth |
| September 20, 2023 screen captures from the exposingfamilyabuse.com website Bates stamped PH000161-170 | Evidence of defamatory statement by Plaintiffs | Paula Haygarth |
| Excerpts from court filings in Case 1:19-cr-00105-SOM, Bates stamped PH000023 | Evidence of defamatory statements were made by | Liane Wilson, Paula Haygarth, judicial notice |

21

15813736\000001\137914939\V-5

| Document/Exhibit | Purpose | Sponsoring Witness |
|---|---|---|
| | Plaintiffs | |
| Excerpts from court filings in Case 1:19-cr-00105-SOM, Bates stamped BH001114-15 | Evidence of defamatory statements were made by Plaintiffs | Liane Wilson, Stefanie Horvath, judicial notice |
| Excerpts from court filings in Case 1:19-cr-00105-SOM, Bates stamped PH000034 | Evidence that defamatory statements were made by Plaintiffs | Liane Wilson, Paula Haygarth, judicial notice[5] |

Defendants will submit a revised list of exhibits and demonstrative aids at the time exhibits and demonstrative aids are exchanged on July 6, 2026 pursuant to the Amended Rule 16 Scheduling Order. By including an exhibit on their exhibit list, Defendants are not conceding that the document is admissible.

## K.    FURTHER DISCOVERY OR MOTIONS

No further motions or discovery is anticipated at this time.

## L.    STIPULATIONS

No stipulations have been proposed to date. Defendants will meet and confer with Plaintiffs' counsel regarding agreements as to the authenticity and admissibility of trial exhibits, to be stipulated to by the parties unless there exists a good faith argument as to why authenticity/admissibility is in doubt.

---

[5] As noted in fn. 2, above, Defendants are in the process of identifying additional social media posts about Defendants that were made under the @lianashanti Instagram account to present at trial.

22

**M.     AMENDMENTS AND DISMISSALS**

Defendants do not anticipate any substantive amendments to the pleadings. Defendants reserve the right to amend their pleadings to conform to the proof and evidence presented at trial. Defendants further reserve the right to amend pursuant to FRCP 15(b).

**N.     SETTLEMENT DISCUSSIONS**

On October 30, 2025, the parties participated in a settlement conference with Judge Trader.

On June 12, 2025, the parties participated in a further settlement conference with Judge Trader and Judge Mansfield. No settlement was reached. On June 22, 2026, counsel for both sides separately confirmed to Judge Mansfield that the parties have been unable to agree on a negotiated resolution.  Defendants remain open to ongoing settlement discussions with Plaintiffs if Plaintiffs' position changes.

**O.     AGREED STATEMENT**

No agreed statement has been discussed to date, but Defendants anticipate reaching agreement on a stipulated statement as to certain undisputed facts.

**P.     BIFURCATION, SEPARATE TRIAL OF ISSUES**

A bifurcation or separate trial of specific issues does not appear to be feasible or desired.

15813736\000001\137914939\V-5

**Q.    REFERENCE TO MASTER OR MAGISTRATE JUDGE**

Given that the recent *Daubert* motion and summary judgment motions were heard by Judge Otake, Defendants respectfully suggest that trial is best suited to remain with Judge Otake.

**R.    APPOINTMENT OF LIMITED EXPERTS**

Defendants do not see the need for the Court to appoint an impartial expert witness or to limit the number of expert witnesses. Plaintiffs did not name an expert witness. Defendants named an expert witness and are currently evaluating whether his testimony will be required at trial.

**S.    TRIAL**

A jury trial is set to begin on August 3, 2026 before the Honorable J. Jill Otake. In the interests of economizing time and expense, Defendants have expressed to Plaintiffs a willingness to waive jury trial in favor of a bench trial, as well as considering other methods to streamline case presentation. Although never having demanded a jury trial themselves, Plaintiffs have indicated they are now unwilling to waive a jury trial.

**T.    ESTIMATE OF TRIAL TIME**

Defendants currently estimate 4 trial days to present their case.

15813736\000001\137914939\V-5

## U.    CLAIMS OF PRIVILEGE OR WORK PRODUCT

No matter required to be stated by LR 16.4 is covered by the work product

doctrine or any privilege.

## V.    MISCELLANEOUS

At this time, there are no other subjects relevant to the trial or material to its

just, efficient, and economical determination.

DATED:  Honolulu, Hawai'i, June 23, 2026.


 /s/ LAURA P. MORITZ
LOUISE K.Y. ING
LAURA P. MORITZ

Attorneys for Defendants/Counterclaimants
PAULA HAYGARTH, BYRON
HORVATH, and STEFANIE HORVATH

25

15813736\000001\137914939\V-5