LOUISE K.Y. ING   2394
LAURA P. MORITZ   7860

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI 96813
Telephone:  808 524 1800
Facsimile:  808 524 4591
Email:       louise.ing@dentons.com
             laura.moritz@dentons.com

Attorneys for Defendants/Counterclaimants
PAULA HAYGARTH, BYRON HORVATH, and
STEFANIE HORVATH

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, a Nevada limited liability company dba LIANA SHANTI ENTERPRISES and LIANE WILSON, also known in the community as LIANA SHANTI,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>        v.<br><br>PAULA HAYGARTH, BYRON HORVATH, STEFANIE HORVATH, JANE DOES 2-10, and JOHN DOES 1-10,<br><br>    Defendants/ Counterclaimants. | Civil No.:  1:25-cv-00297-JAO-RT<br><br>**DEFENDANTS/ COUNTERCLAIMANTS' TRIAL BRIEF;** DECLARATION OF COUNSEL; EXHIBITS "1"-3<br><br><br><br><br><br>Judge: Honorable Jill A. Otake<br>Trial: August 3, 2026 |

1

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................3

    A.     Summary of the Facts..........................................................................3

    B.     Status of the Litigation .......................................................................5

III.   ISSUES FOR TRIAL ....................................................................................6

    A.     Applicable Legal Framework for Trial: Defamation ..........................6

    B.     Additional Standards Applicable to Plaintiffs' Claims.......................8

    C.     Additional Standards Applicable to Defendants'
        Counterclaims....................................................................................11

    D.     Admissibility Issues Addressed in Defendants' *Daubert*
        Motion and Motions *in Limine*..........................................................14

        1.     Mr. Feil's Testimony, the Draft Report, and
            Defendants' *Daubert* Motion....................................................14

        2.     Defendants' Motion *in Limine* No. 1 (ECF 101)......................15

        3.     Defendants' Motion *in Limine* No. 2 (ECF 102)......................15

        4.     Defendants' Motion *in Limine* No. 3 (ECF 103,
            Errata at ECF 108) ...................................................................15

        5.     Defendants' Motion *in Limine* No. 4 (ECF 104)......................16

IV.    PROCEDURAL ISSUES .............................................................................16

US_ACTIVE\138079539\V-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basilius v. Honolulu Pub. Co.*,
711 F.Supp. 548 (D. Haw. 1989)........................................................................5

*Beamer v. Nishiki*,
66 Haw. 572, 670 P.2d 1264 (1983)...................................................................9

*Cohen v. Hansen*,
No. 2:12-CV-1401 JCM (PAL), 2016 WL 1688004
(D. Nev. Apr. 27, 2016)....................................................................................12

*Ellis v. Crockett*,
51 Haw. 45, 451 P.2d 814 (1969).......................................................................9

*Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*,
762 F.3d 829 (9th Cir. 2014) ...........................................................................12

*Fernandes v. Tenbruggencate*,
65 Haw. 226, 649 P.2d 1144 (1982)............................................................7, 8, 9

*Garrison v. Louisiana*,
379 U.S. 64 (1964)..............................................................................................9

*Gertz v. Robert Welch*,
418 U.S. 323 (1974).............................................................................................8

*Gold v. Harrison*,
88 Hawaiʻi 100, 962 P.2d 353 (1998)...............................................................10

*Gonsalves v. Nissan Motor Corp.*,
100 Hawaiʻi 149, 58 P.3d 1196 (2002)...............................................................6

*Guieb v. Guieb*,
156 Hawaiʻi 162, 571 P.3d 382 (2025)..............................................................11

i

US_ACTIVE\138079539\V-1

*Hac v. University of Hawaiʻi,*
102 Hawaiʻi 92, 73 P.3d 46 (2003)....................................................................10

*Hamilton v. Lefkowitz,*
No. CV 18-00501 JAO-WRP, 2019 WL 2583478
(D. Haw. June 24, 2019) ....................................................................................6

*Kahanamoku v. Advertiser,*
25 Haw. 701 (1920) ......................................................................................7, 13

*Kohn v. West Hawaii Today, Inc.,*
65 Haw. 584, 656 P.2d 79 (1982) ......................................................................7

*Masson v. New Yorker Magazine,*
501 U.S. 496 (1991)............................................................................................9

*Menash v. Bank of New York,*
850 F.Supp.2d 1120 (D. Haw. 2012)...............................................................5, 9

*Nakamoto v. Kawauchi,*
142 Hawaiʻi 259, 418 P.3d 600 (2018)......................................................6, 7, 11

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964)............................................................................................8

*Russell v. American Guild of Variety Artists,*
53 Haw. 456, 497 P.2d 40 (1972) ....................................................................11

*Simmons v. Aqua Hotels & Resorts, Inc.,*
130 Hawaiʻi 325, 310 P.3d 1026 (2013)............................................................10

*St. Amant v. Thompson,*
390 U.S. 727 (1968)............................................................................................9

*Tagawa v. Maui Pub. Co.,*
50 Haw. 648, 448 P.2d 337 (1968)...................................................................8, 9

*Van Poole v. Nippu Jiji Co.,*
34 Haw. 354 (Haw. 1937)...........................................................................12, 13

*Wilson v. Freitas,*
121 Hawaiʻi 120, 214 P.3d 1110 (App. 2009)................................................8, 10

ii

## Other Authorities

RESTATEMENT (SECOND) OF TORTS § 46.................................................................10

RESTATEMENT (SECOND) OF TORTS § 652E (1977) ....................................................8

RESTATEMENT (THIRD) OF TORTS, § 621.................................................................11

US_ACTIVE\138079539\V-1

## DEFENDANTS/COUNTERCLAIMANTS' TRIAL BRIEF

Defendants/Counterclaimants Paula Haygarth, Byron Horvath, and Stefanie Horvath ("Defendants") file this Trial Brief in accordance with the *Amended Rule 16 Scheduling Order* entered on September 12, 2025 [ECF 30]. Trial is set to begin on August 3, 2026 before the Honorable Jill A. Otake.

## I.    INTRODUCTION

As to Plaintiffs, the only remaining defamation claims concern anonymous online statements, and there is no admissible evidence linking any of the alleged statements to any of the Defendants. Plaintiffs also allege claims for civil conspiracy, emotional distress, and false light, all of which are grounded in the same allegations forming the basis of Plaintiffs' defamation claims. Plaintiffs' case against Defendants will fail at trial, because:

(1)    Defendants did not make any of the alleged statements at issue;

(2)    The statements were substantially true and not defamatory;

(3)    Plaintiff Wilson is a public figure, and there is no evidence that any of the Defendants acted with actual malice;

(4)    Plaintiffs' claim for intentional infliction of emotional distress ("IIED") will fail because the underlying defamation and false light claims from which the IIED claim derives are meritless, and because Plaintiffs cannot meet the high standard by which such a claim must be proved; and

(5)    Plaintiffs' claim for conspiracy will also fail because the underlying defamation and false light claims from which the conspiracy claim derives are meritless.

Defendants' counterclaims for defamation and false light against Plaintiffs will succeed, because:

(1)    The evidence will show that Plaintiffs made the statements about Defendants through their @lianashanti Instagram account and on the www.exposingfamilyabuse.com website to tens of thousands of followers;

(2)    The statements made about Defendants were defamatory *per se*;

(3)    The evidence will show Plaintiffs made the public statements about Defendants with a specific intent to cause harm.

The evidence will show the lies Plaintiff Wilson publicized about Defendants were created by her out of whole cloth, and that doing so boosted her business and benefitted her financially. The evidence will also show that Plaintiffs defamed Defendants in writings posted on the website www.exposingfamilyabuse.com.[1]

The Court has already ruled in favor on one of Defendants' counterclaims for defamation (concerning a post about Paula Haygarth), and the only remaining issue is damages.

---

[1] Plaintiffs denied any affiliation with that website in their pleading (*compare*, Ex. 3 (counterclaim), pages 9-10, ¶¶ 43-49 to ECF 12 at PageID.84-85, ¶ 3 denying such allegations), in deposition testimony, and in declarations submitted previously to this Court, but the evidence will show that Plaintiffs boasted about their creation of the website in other judicial proceedings before this Court and in other public statements.

2

US_ACTIVE\138079539\V-1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of the Facts

The evidence will show that in 2022, Plaintiffs regularly posted on her @lianashanti Instagram that certain countries, such as Canada, were "dark" and unsafe. In her online forums for and in private chat groups with her students, Plaintiff Wilson would encourage students to leave their respective countries and move to other locations such as Florida and Texas.

Plaintiffs allege that in 2022, anonymous social media accounts posted statements about Plaintiff Wilson which she contends are defamatory. These statements, according to Plaintiffs, were made on social media and websites, accuse Plaintiff Wilson of being a cult leader, extortion, filing false police reports, and of encouraging women to disconnect from their families and "flee" to the United States with their children regardless of custody orders, among other things. Ex. 2 (First Amended Complaint). Defendants firmly deny any responsibility for the alleged posts. Ex. 3 (Answer to First Amended Complaint and Counterclaim).[2]

In March 2022, Mr. Horvath's ex-wife, Haley Winter—a student and follower of Plaintiff Wilson at the time—attempted to cross the Canadian border into the United States with their minor daughter in violation of their custody agreement.

---

[2] Defendants attach copies of these pleadings for ease of the Court's reference given they were filed in state court before this action was removed.

3

Ms. Winter made this attempt at Plaintiff Wilson's urging. She was not successful, and in the days that followed, Mr. Horvath obtained full custody of their minor daughter. As part of those family court proceedings, Mr. Horvath submitted evidence from himself and other parties (namely, Wade Martin and Paula Haygarth) demonstrating how Plaintiff Wilson encouraged the actions of Ms. Winter and other women within her community.

The custody proceedings between Mr. Horvath and Ms. Winter enraged Plaintiff Wilson, who regularly posted about them on social media. Plaintiffs began to post defamatory statements about Defendants on their Instagram handle, @lianashanti, and on the website www.exposingfamilyabuse.com.[3] These posts accuse Defendants of pedophilia, child abuse, of associating with pedophiles, and make false claims about deeply personal matters in Defendants' lives. These posts have continued to the present day, and are not only defamatory and libelous *per se*, but also cast Defendants in a false light and invaded their privacy. The evidence will show these narratives were created by Plaintiffs out of whole cloth and have caused untold harm and disruption to Defendants' lives.

Meanwhile, the online attention brought to Defendants by Plaintiffs evidently caught the attention of others who had been affected by Plaintiff Wilson and her community as well. An anonymous group called the "Liana Shanti Cult Recovery

---

[3] The website was originally called www.exposingfamilycults.com.

4

Group" reached out to Ms. Haygarth and the Horvaths on social media, and added them to their bulk email mailing list which, from time to time, provided information about proceedings relating to Plaintiff Wilson to Defendants. Defendants also attended a single Zoom meeting hosted by the "Liana Shanti Cult Recovery Group" where they were asked to submit witness impact statements in a criminal proceeding involving Plaintiff Wilson.

## B.      Status of the Litigation

Plaintiffs filed suit on December 6, 2022 against Ms. Haygarth and Mr. Horvath and later amended their complaint to name Ms. Horvath. Ex. 1. Plaintiffs' claims for defamation arising from Defendants' victim impact statements submitted in the Criminal Proceeding and a Facebook re-post by Ms. Haygarth were resolved in Defendants' favor on summary judgment. *See* ECF 92.

As the case heads to trial, Plaintiffs remaining claims are for defamation, false light, IIED, and conspiracy as relating to the anonymous social media posts. Ex. 2 (First Amended Complaint). Though each claim has its own elements, Plaintiffs' allegations make the false light, emotional distress, and conspiracy claims dependent on the defamation claim. *Id.* at ¶¶ 70, 75-76. That is, Plaintiffs claim that the alleged defamation was itself the cause of Plaintiff Wilson's emotional distress. Therefore, if the predicate defamation claim fails, the emotional distress and conspiracy claims fail as well. *Basilius v. Honolulu Pub. Co.*, 711 F.Supp. 548, 551 (D. Haw. 1989)

5

(holding that a plaintiff's emotional distress claim "stands or falls with the defamation claim; it is parasitic of it"); *Menash v. Bank of New York*, 850 F.Supp.2d 1120, 1138 (D. Haw. 2012) (conspiracy claim requires and underlying actionable claim).

Defendants' counterclaims against Plaintiffs for defamation and false light, based on the conduct summarized above, remain viable. Ex. 3.

## III.    ISSUES FOR TRIAL

### A.    Applicable Legal Framework for Trial: Defamation

All the claims in this action are grounded in claims for defamation and false light. Under Hawaiʻi law, the elements of a defamation claim are:

(1) a false and defamatory statement concerning another;

(2) an unprivileged publication to a third party;

(3) fault amounting to at least negligence on the part of the publisher; and

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Hamilton v. Lefkowitz*, No. CV 18-00501 JAO-WRP, 2019 WL 2583478, at \*5 (D. Haw. June 24, 2019) (citing *Gonsalves v. Nissan Motor Corp.*, 100 Hawaiʻi 149, 171, 58 P.3d 1196, 1218 (2002).

A communication is defamatory "when it tends to harm the reputation of another as to lower him in the estimation of the community[.]" *Nakamoto v. Kawauchi*, 142 Hawaiʻi 259, 270-71, 418 P.3d 600, 611-12 (2018). "As to the fourth

6

element, special harm is the loss of something *at least indirect pecuniary value*, such as the loss of society, companionship and association. A statement is actionable irrespective of special harm if the communication is libel. In that case, no further proof of injury or loss is required to recover general damages." *Id.* at 271, 418 P.3d at 612 (citations omitted, emphasis added).

Truth is an absolute defense to defamation. *Id.* at 274, 418 P.3d at 615. The literal truth of every word or detail of the challenged statement is not required; the statement need only be substantially true. *Kohn v. West Hawaii Today, Inc.*, 65 Haw. 584, 590, 656 P.2d 79, 883 (1982) ("[I]t is sufficient if the substance, the gist, the sting, of the matter is true.") (citation and internal quotation marks omitted). If a statement is proven true, it cannot serve as the basis for a defamation claim under Hawai'i law.[4]

> An allegedly defamatory statement is evaluated as a whole, not in pieces:
>
> This court previously stated the rule that: "**the law does not dwell on isolated passages, but judges of the publication as a whole**. This is undoubtedly the rule where the whole article relates to one subject for all that is said on the subject must be considered in order to determine the sense in which the article would rationally be understood by those reading it."

*Fernandes v. Tenbruggencate*, 65 Haw. 226, 230, 649 P.2d 1144, 1148 (1982), quoting *Kahanamoku v. Advertiser*, 25 Haw. 701 (1920) (emphasis added).

---

[4] "[S]ubstantial truth" is a matter for the jury to decide. *Nakamoto*, 142 Hawai'i at 274, 418 P.3d at 615.

US_ACTIVE\138079539\V-1

The false light tort is defined in the Restatement (Second) as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.*, 121 Hawai'i at 130, 214 P.3d at 1120, citing RESTATEMENT (SECOND) OF TORTS § 652E (1977).

## B.    Additional Standards Applicable to Plaintiffs' Claims

Because Plaintiff Wilson is a public figure (ECF 92 at PageID.1830), she must prove not only that Defendants are responsible for the anonymous statements (and that they were false), but also that they were made with actual malice by clear and convincing evidence. *Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974). In the context of defamation, actual malice is found in publications that are made with the knowledge that the statement in question is false, or with a reckless disregard for truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). The phrase "actual malice" is a term of art:

> "Actual malice" has become a term of art clearly distinguishable from the ordinary definition of "malice" in terms of ill will … "Actual malice" consists of "deliberate falsification" of facts or "reckless disregard" of the truth, i.e., reckless publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements.

US_ACTIVE\138079539\V-1

*Tagawa v. Maui Pub. Co.*, 50 Haw. 648, 652, 448 P.2d 337, 340 (1968) (citations omitted, emphasis added). This is a high standard: "An investigatory failure alone on the part of the publisher, *without a high degree of awareness of probable falsity* may raise the issue of negligence but not the issue of 'actual malice.'" *Id.*[5] **This prong of Plaintiffs' defamation claims must be shown by clear and convincing evidence.** *Beamer v. Nishiki*, 66 Haw. 572, 578, 670 P.2d 1264, 1270 (1983). And, this proof is required for **each defendant**. *Rodriguez*, 65 Haw. at 441, 653 P.2d 1152 ("Actual malice cannot be presumed from the mere fact of the defamatory character of the publication. *Affirmative proof of actual malice as to each defendant is required*.") (emphasis added).

Under Hawai'i law, Plaintiffs' civil conspiracy claim has three required elements: (1) the formation of a conspiracy, (2) wrongful conduct in furtherance of a conspiracy, *i.e.*, an actionable claim based on deceit; and (3) damages. *Menash v. Bank of New York*, 850 F.Supp.2d 1120, 1138 (D. Haw. 2012). Because there can be no civil claim based on conspiracy alone, Plaintiffs must prove an underlying

---

[5] *See also Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1991) ("Mere negligence does not suffice…the plaintiff must demonstrate that the author 'in fact entertained serious doubts as to the truth of his publication'"), quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Actual malice can also be shown by evidence that the author or speaker "acted with 'a high degree of awareness of … probable falsity.'" *Id.* quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

actionable clam. *Id.*, citing *Ellis v. Crockett*, 51 Haw. 45, 57-58, 451 P.2d 814, 822-23 (1969).

Plaintiffs' emotional distress claim is based on the same facts as the defamation claims and are therefore "parasitic" of their defamation claims. It must "stand or fall" with that claim. *Wilson v. Freitas*, 121 Hawai'i 120, 131, 214 P.3d 1110, 1121 (App. 2009). An intentional infliction of emotional distress claim requires that the act allegedly causing the harm was: (1) intentional or reckless, (2) outrageous, and (3) caused extreme emotional distress to another. *Hac v. University of Hawai'i*, 102 Hawai'i 92, 106-107, 73 P.3d 46, 60-61 (2003). "Outrageous" conduct is conduct that exceeds "all bounds of decency," "be regarded as atrocious, and utterly intolerable in a civilized community," and cause "an average member of the community … to exclaim, 'Outrageous!'" *Simmons v. Aqua Hotels & Resorts, Inc.*, 130 Hawai'i 325, 332, 310 P.3d 1026, 1033 (2013) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d).

Here, Defendants' actions cannot possibly constitute outrageous conduct because there is no evidence they have made defamatory statements of any kind and what statements they did make are privileged and not subject to a defamation claim. Their actions cannot, therefore, form the bases for an emotional distress claim. And, the anonymous statements—regardless of who made them—are substantially true.

10

A similar analysis follows for Plaintiffs' false light claims because they, too, are based on the same allegations as the defamation claims. Courts hold that where, as here, "a false-light claim is based on the same statements as a defamation claim, the false-light claim must be dismissed if the defamation claim is dismissed." *Id.*, citing *Gold v. Harrison*, 88 Hawai'i 100, 103, 962 P.2d 353, 362 (1998).

## C.    Additional Standards Applicable to Defendants' Counterclaims

Defendants are all private figures, and the nature of the statements made about them by Plaintiffs constitutes defamation *per se*. *Russell v. American Guild of Variety Artists*, 53 Haw. 456, 458, 497 P.2d 40, 42 (1972). Plaintiffs' statements about Defendants are libelous *per se* because they tend "to subject [Defendants] to social degradation [sic] and to the contempt of all right thinking people." *Id.*

To justify punitive damages, Defendants need to (1) prove tort liability for defamation and/or false light, and (2) establish by clear and convincing evidence that Wilson intended to harm Defendants, or recklessly disregarded a substantial risk of harm to Defendants, or otherwise acted in an outrageous or malicious manner. *Guieb v. Guieb*, 156 Hawai'i 162, 170, 571 P.3d 382, 390 (2025).

The interest protected by defamation actions is that of reputation. In defamation actions, general damages are imposed "…for the purpose of compensating the [claimant] for the harm which the defamatory publication is proved, or, in the absence of proof, is assumed to have caused to his reputation. It is

11

not necessary … to prove any specific harm to his reputation or any other loss caused thereby." RESTATEMENT (THIRD) OF TORTS, § 621; *Nakamoto v. Kawauchi*, 142 Hawai'i 259, 271, 418 P.3d 600, 6112 (2018). Generally, damages to reputation are not held to some kind of mathematical formula and to ascertain an exact amount of monetary damages from defamatory statements are "impossible for a jury to determine, which is why the law presumes damages in defamation *per se* cases." *Cohen v. Hansen*, No. 2:12-CV-1401 JCM (PAL), 2016 WL 1688004, *7 (D. Nev. Apr. 27, 2016). Furthermore, damages for loss to professional reputation "…are not the type of damages which can be proved with mathematical certainty and are usually best left as a question of fact for the jury." *Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 845 (9th Cir. 2014). If there is evidence of loss of reputation, shame, mortification, and general hurt feelings, the jury decides daamges. The "jury is permitted to assess damages considered to be the natural and probable consequences of the defamatory words." *Cohen v. Hansen*, *supra*.

*Van Poole v. Nippu Jiji Co.*, 34 Haw. 354, 357 (Haw. 1937) provides the long-standing standard in Hawai'i for awarding damages for *per se* defamation:

> Where the defamatory charge complained of is actionable *per se* [the claimant] is entitled to substantial damages. … Where a charge is libelous *per se* general damages are presumed. The general damages which the law presumes to result from the publication of defamatory matter arise by inference of law and they are not required to be proved by direct evidence. If the words are actionable *per se* damages may be presumed without proof of special damages. The presumption is that the victim of defamatory language libelous *per se* has suffered general

12

US_ACTIVE\138079539\V-1

damages is not a mere fiction to be lightly disregarded. It is the common experience of mankind that injury and resulting damage is the natural, proximate and necessary result of libels which hold a subject "up to scorn and ridicule and to feelings of contempt or execration, impair him in the enjoyment of society and injure those imperfect rights of friendly intercourse and mutual benevolence which man has with respect to man."

*Id.*, citing *Kahanamoku v. Advertiser*, supra, 25 Haw. at 713 (internal citations omitted). Because the law presumes general damages to result from the publication of defamatory matter, Defendants are not required to prove damages by direct evidence, even if no actual pecuniary loss in fact resulted. General damages are designed to compensate claimants for the substantial class of injuries arising from scorn, hurt feelings, mental suffering and anguish, and personal and public humiliation.

Here, the jury will hear how Defendants have been damaged:

- Ms. Haygarth has not been able to work in her profession as a life coach because any potential client that Googles her is faced with Plaintiffs' accusations that she is a supporter of pedophiles and associates with criminals. Her own emotional trauma from the online bullying impedes her effectiveness as a counselor to others.

- Above and beyond the emotional trauma from seeing Plaintiffs' relentless and never-ending posts about her, Ms. Horvath suffered from alopecia and

13

US_ACTIVE\138079539\V-1

required time away from work due to the emotional impact and stress of Wilson's vicious posts about her.

- Mr. Horvath experienced similar emotional trauma from seeing Plaintiffs' posts accusing him of child abuse and other criminal activity and lives in fear that his minor daughter will one day see all the false but deeply personal information posted about her.

All of the defendants have sought counseling services to deal with the stress caused by Plaintiffs' posts and Internet activity about them. Defendants will also present proof of specific damages they have suffered as a result of Plaintiffs' actions, which include not only counseling costs but also legal fees incurred in separate proceedings which were unnecessarily escalated by Plaintiff Wilson's actions and interference.

### D. Admissibility Issues Addressed in Defendants' *Daubert* Motion and Motions *in Limine*

#### 1. Mr. Feil's Testimony, the Draft Report, and Defendants' *Daubert* Motion

Although this Court already ruled on Defendants' *Daubert* motions for the exclusion of Mr. Feil's report and opinions (ECF 92), it appears that—based on the parties' exchange of proposed exhibits on July 7—Plaintiffs' nevertheless intend to try and use the Sourced Intelligence draft report ("**Draft Report**") at trial. Defendants will object to any effort to use opinion testimony from Mr. Feil or the Draft Report at trial. If Mr. Feil is not available to testify at trial, Defendants will

14

object to the use of any portion of the Draft Report as lacking foundation, among other things.

### 2.    Defendants' Motion *in Limine* No. 1 (ECF 101)

Defendants' Motion *in Limine* No. 1 sought an order excluding any argument and evidence, including documents and testimony, concerning Plaintiffs' contention that Mr. Horvath made death threats to Plaintiff Wilson. This motion was granted by the Court on July 10. Only if Defendants' introduce evidence of defamatory statements relating to the death threats will Plaintiffs be allowed to address the issue.

### 3.    Defendants' Motion *in Limine* No. 2 (ECF 102)

Defendants' Motion *in Limine* No. 2 sought an order excluding any argument and evidence by Plaintiffs, including documents and testimony, concerning or regarding alleged stalking by Mr. Horvath of Plaintiff Wilson. This motion was granted by the Court on July 10.

### 4.    Defendants' Motion *in Limine* No. 3 (ECF 103, Errata at ECF 108)

Defendants' Motion *in Limine* No. 3 sought an order excluding any argument or evidence regarding Defendants' communications with third parties to this litigation *after* the Defendants were served with the Complaint on January 7, 2023. In accordance with the Court's order on July 10, Defendants will submit a proposed limiting jury instruction regarding the issue on July 13, 2026.

15

### 5.    Defendants' Motion *in Limine* No. 4 (ECF 104)

Defendants' Motion *in Limine* No. 4 sought an order excluding any argument or evidence regarding Ms. Haygarth's re-posting of an article entitled "The Shanti Summary" on her personal Facebook page with commentary, as alleged in ¶ 39 of the First Amended Complaint. In accordance with the Court's order on July 10, Defendants will submit a proposed limiting jury instruction regarding the issue on July 13, 2026.

## IV.    PROCEDURAL ISSUES

There is a question as to order and presentation of the parties' cases in chief at trial. The parties intend to meet and confer on the issue, and Court may have a concept for presentation in mind about which it intends to inform the parties. Defendants suggest that a logical way for each side to present their case is for Plaintiffs to present their case in chief, Defendants present their defense, Plaintiffs present their rebuttal, and rest. Defendants may bring a motion for directed verdict following Plaintiffs' presentation of their case in chief. Following presentation of Plaintiffs' case in chief, Defendants would proceed to present their case in chief on their counterclaims, and so forth.

Although Defendants anticipate there will be a few common witnesses between the parties (namely, the named parties), the testimony of each witness for plaintiffs' claims and defendants' claims is expected to be different. Likewise, any

16

US_ACTIVE\138079539\V-1

additional witnesses called by Defendants for their defense will testify as to different facts in support of their counterclaims.

At this time, Defendants are aware that three of the witnesses they intend to call in their case-in-chief have some scheduling limitations. Wade Martin, who will be traveling to Hawai'i from British Columbia, Canada, is available to testify on August 6, 7, 10, and/or 11. Haley Winter, who will be traveling to Hawai'i from Saskatchewan, Canada, will also be available to testify on August 6, 7, 10, or 11. Paris McIvoy, whose testimony is limited to that of a records custodian, is available to testify only the second week of trial. Defendants intend to inquire whether Ms. McIvoy's testimony, which is limited to authentication of documents, can proceed remotely given that she is a resident of Saskatchewan, Canada.

DATED:  Honolulu, Hawai'i, July 13, 2026.

/s/ Laura P. Moritz
LOUISE K.Y. ING
LAURA P. MORITZ

Attorneys for
Defendants/Counterclaimants
PAULA HAYGARTH, BYRON
HORVATH, and
STEFANIE HORVATH

17