LOUISE K.Y. ING 2394
LAURA P. MORITZ 7860
JOSEPH B. ADAMS 11434

DENTONS US LLP
1001 Bishop Street, Suite 1800
Honolulu, HI 96813
Telephone: 808 524 1800
Facsimile: 808 524 4591
Email: louise.ing@dentons.com
laura.moritz@dentons.com
joseph.adams@dentons.com

Attorneys for Defendants/Counterclaimants
PAULA HAYGARTH, BYRON HORVATH,
and STEFANIE HORVATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, a Nevada limited liability company dba LIANA SHANTI ENTERPRISES and LIANE WILSON, also known in the community as LIANA SHANTI,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>PAULA HAYGARTH, BYRON HORVATH, STEFANIE HORVATH, JANE DOES 2-10, and JOHN DOES 1-10,<br><br>Defendants/ Counterclaimants. | CIVIL NO. 1:25-cv-00297-JAO-RT<br><br>**COUNTERCLAIMANTS' MOTION FOR EQUITABLE RELIEF REGARDING DEFAMATORY STATEMENTS; DECLARATION OF LAURA P. MORITZ; DECLARATION OF PAULA HAYGARTH; EXHIBITS "A"-"I"**<br><br>Judge: Honorable Jill A. Otake<br>Trial: August 3, 2026. |

# TABLE OF CONTENTS

I. INTRODUCTION..........2
II. FACTS AND PROCEDURAL BACKGROUND..........3
A. Statements Adjudicated to Be Defamatory..........3
B. Plaintiffs Continue to Make and Repeat the Statements Adjudicated to Be Defamatory..........7
III. ARGUMENT..........10
A. The Counterclaimants Prevailed on the Merits and Plaintiffs' Defamatory Speech is Not Constitutionally Protected..........11
B. Each of the Counterclaimants Will Suffer Irreparable Injury Absent a Permanent Injunction and Mandatory Relief and Monetary Damages Do Not Afford Complete Relief..........13
C. The Balance of Harm Favors Mandatory and Injunctive Relief for Counterclaimants..........15
D. The Public Interest is Advanced by the Equitable Relief Requested..........17
IV. CONCLUSION..........17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*B2Gold Corp. v. Christopher*,
Case No. 1:18-cv-1202, 2020 WL 2846633 (E.D. Va. May 28, 2020) ....12, 14, 17

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ....11

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ....2

*Hawaii Legal Short-Term Rental Alliance v. City and County of Honolulu*,
709 F.Supp.3d 1141 (D. Haw. 2023) ....14

*L.A. Police Protective League v. Gates*,
995 F.2d 1469 (9th Cir. 1992) ....11

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ....11

*Kingsley Books, Inc. v. Brown*,
354 U.S. 436 (1957) ....16

*Reno v. Nielson*,
424 F.Supp.3d 1045 (D. Haw. 2019) ....10

*Saadi v. Maroun*,
No. 8:07-cv-01976-T-24-MAP, 2009 WL 3617788 (M.D. Fla. Nov. 2, 2009) ....12, 14

*Saxby v. Easterbrook*,
3 C.P.D. 339 (1878) ....16

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ....11

*Wagner Equipment Co. v. Wood*,
893 F.Supp. 1157 (D. NM 2012) .......... 12

*Weitsman v. Levesque*,
Case No. 19-cv-461 JLS (AHG), 2020 WL 6825687 (S.D. Cal. Nov. 20, 2020) .......... 13

**State Cases**

*Balboa Island Village Inn, LLC v. Lemen*,
40 Cal.4th 1141, 56 P.3d 339 (2007) .......... 12, 15, 16

*Flint v. Smoke Burner Co.*,
110 Mo. 492, 19 S.W. 804 (1892) .......... 16

**Court Rules**

Federal Rules of Civil Procedure Rules 7 .......... 1

Federal Rules of Civil Procedure Rule 65 .......... 1

Federal Rules of Civil Procedure Rule 70 .......... 1

LR 7.1 .......... 1

LR7.8 .......... 1

**Constitutional Provisions**

United States Constitution, Amendment I .......... 2, 16

**COUNTERCLAIMANTS' MOTION FOR EQUITABLE RELIEF REGARDING DEFAMATORY STATEMENTS**

Defendants/Counterclaimants Paula Haygarth, Byron Horvath, and Stefanie Horvath ("**Counterclaimants**"), by and through their attorneys, Dentons US LLP, hereby move for equitable relief (1) requiring Plaintiffs/Counterclaim Defendants Life Mastery Network LLC and Liane Wilson, aka Liana Shanti (the "**Plaintiffs**"), to remove all statements about Counterclaimants found to be defamatory in this proceeding from all websites, forums, blogs, and social media platforms, including but not limited to, the @lianashanti Instagram account and the www.exposingfamilyabuse.com website, and (2) permanently enjoining Plaintiffs from further publicizing statements of and concerning Counterclaimants which have been found to be defamatory in this proceeding.

This Motion is made pursuant to Rules 7, 65, and 70 of the Federal Rules of Civil Procedure, Local Rule 7.1 ("**LR**"), and it is based upon the attached declarations, exhibits, and memorandum of law, the records and files of this case, and such other matters that may be brought before the Court at or before the hearing of this Motion. In accordance with LR7.8, counsel held a pre-filing conference on August 31, 2026 to discuss this Motion and were unsuccessful in reaching a resolution without the Court's assistance. Declaration of Laura P. Moritz ("Moritz Decl."), ¶ 3.

## I. INTRODUCTION

This Motion seeks equitable relief necessary to ensure that Counterclaimants do not continue to suffer harm caused by the defamatory statements for which the Plaintiffs have already been found liable. Although mandatory relief and prior restraints on speech are generally disfavored under the First Amendment of the United States Constitution, restraining speech which has been adjudicated to be defamatory does **not** run afoul of the First Amendment. To summarize, mandatory and injunctive relief is necessary and appropriate because:

- This Court and the jury have determined that certain statements made by Plaintiffs about Counterclaimants were defamatory *per se*;

- Though the jury's damages award is substantial, it does not afford complete relief because the defamatory statements remain posted on the Internet and Plaintiffs have indicated they will continue to post similar statements in the future;

- A narrowly tailored equitable order will not harm Plaintiffs, will spare Counterclaimants continued damage to their reputation and emotional well-being from the defamatory statements, and may minimize future litigation by defining the parameters of future conduct; and

- The public is well-served by an injunction designed to prevent further publication of false and defamatory statements because the continued utterance of defamation serves no public interest.

"[T]here is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Accordingly, this Court should not allow

Plaintiffs to keep making false statements about Counterclaimants that are unquestionably defamatory, and this Motion should be granted.

## II. FACTS AND PROCEDURAL BACKGROUND

### A. Statements Adjudicated to Be Defamatory

In the MSJ Order[1] and at the recent jury trial of this matter, it was adjudicated that Plaintiffs publicized several defamatory *per se* statements about each of the Counterclaimants. ECF 92 at PageID.1858, ECF 251 at PageID.6583-6588, ECF 253 at PageID.6608-6616, ECF 255 at PageID.6637-6645. Such defamatory *per se* statements included the following:

- Paula Haygarth abandoned her son as a baby (ECF 92 at PageID.1857-58; ECF 251 at PageID.6591);[2]
- "Jesus we ask you to DELETE AND DESTROY all toxic lies from this satan servant – PAULA HAYGARTH – who is campaigning to invalidate truths of #childabuse to cover up her own misery. She is hateful and envious, and in her hatred and envy, she cannot bring herself to acknowledge the pain of children who have been harmed by their parents" (ECF 251 at PageID.6583);

[1] "**MSJ Order**" refers to the May 22, 2026 *Order (1) Granting in Part Defendants' Daubert Motion, ECF No. 42; (2) Granting in Part Defendants' Motion for Summary Judgment on Plaintiffs' Complaint, ECF No. 46; (3) Granting in Part Defendants' Motion for Summary Judgment on Defendants' Counterclaims, ECF No. 49; and Denying Plaintiffs' Motion to Strike, ECF No. 72* (ECF 92).

[2] Examples of such statements include "She abandoned her own son Austin, and her guilt and shame have turned her into a soldier for satan," "Paula Haygarth. Abandon your own child so you have free time to attack other people's children [emoji]," and "Who is PAULA? … WHO IS AUSTIN, THE SON SHE ABANDONED AS A BABY." ECF 251 at PageID.6591.

- "Jesus we ask you to delete and destroy all evil within and emitted from back [sic] magic reiki witch Paula Haygarth" (*id.* at PageID.6584);

- "And when these satanists, Byron Horvath … along with Paula Haygarth, … began their satanic lies, defamation and libel, I KNEW Jesus would use these satanists for HIS purpose" (*id.* at PageID.6585; ECF 253 at PageID.6608);

- "What WE are doing in this JESUS LED community in calling out THESE PEOPLE … Paula Haygarth … Stefanie Vogt … Byron Horvath … This vile group of PEDOS PEDO SUPPORTERS PEDO ALIGNERS VICTIM BLAMERS" (*id.* at PageID.6586; ECF 253 at PageID.6611; ECF 255 at 6638);

- "It's all in plain sight. #pedos … #kidnappers [photo of Paula, Stefanie below]" (ECF 251 at PageID.6587; ECF 255 at PageID.6643);

- "Who is PAULA? A bitter aging woman with a bleak future, with a broke husband, desperate to get her claws on the BRADY'S [sic] wealth by gaining custody of her husband's children. … Austin was a very small child. Instead she chose to live her life of new age 'life coaching', completely abandoning her own son, and never looking back … She is a heavy drinker, and a regular user of weed … Paula, a woman who gave up custody of her own son, actively engaging in brainwashing these vulnerable young girls to hate their mother" (*id.* at PageID.6588);

- "…Their situation is dire. Isla is still with the man BYRON HORVATH who this little girl repeatedly says abused her in the recordings. Hit her. Locked her in a room for hours where she had to Pee on the floor. Wrestled this small child who has a serious heart condition into a panic attack" (ECF 253 at PageID.6609);

- "Mother/Child Bond – Abusers make it their mission to destroy the bond between mother and child … This is what is being done to Haley and Isla through the sick abusive actions of #byronhorvath … SADLY this is not uncommon" (*id.* at PageID.6610);

- "…Byron. Stalking Malie. Stalking the former supervisor. Stalking Haley when she began dating. And she has suffered A LOT of karma for her actions. And she has an awareness of that. And yes, we are starting to see the karma settling in … with Stefanie Vogt Horvath. Right now, Stefanie is stuck in the self-righteous, indignant, vindictive stage of wanting to hurt Haley. This comes from extreme jealously. Byron chose Haley. And Stefanie wanted Byron from way back in 2009. (only God can understand that one)[.] And after Haley left Byron, he stalked her and was rageful and jealous when she started seeing other men. Stefanie knows she's Byron's seconds or probably fourths fifths or twenty fifths based on who he follows on Twitter … but I digress[.] and this is her opportunity to punish choice number one. That's all Haley is to her. And she doesn't care that she is directly causing permanent harm to Isla. Damage that can never be undone. That's on HER SOUL. … These are harmful dangerous people. And Stefanie knows it. She's the one who had to stop the abuse when Byron was attacking his small child when she went into a panic. But her seething jealously of Haley blocks her from doing what's right. They ALL know Haley is an amazing mother. They KNOW Isla is so happy with her mom and that she is safe with her. But Isla is nothing more than a pawn in their sick and twisted game of trying to silence the REAL FAMILY DISGRACE from being revealed. It would destroy their entire fake alcohol rage fueled pretend 'happy family' façade. A façade that at this point, no one in the entire province of Saskatchewan believes anymore. But they still won't give it up. And every day they continue to punish Haley for a mistake she made (one that in no way hurt Isla) is another day they cause additional trauma to a little girl with a heart condition who just wants her mommy. To me? There is nothing sicker. Nothing more evil. Nothing more satanic. Than intentionally harming an innocent child. That, to me, is the most depraved of all beings walking this earth" (ECF 253 at PageID.6612; ECF 255 at 6639);

- "Evil dark satanic people like Byron Horvath … Stefanie Vogt … Manipulate and use corrupt systems to GAG AND SILENCE mothers peaking out about abuse. These people are UNSTABLE UNHINGED AND DANGEROUS[.] Please pray for Isla[.] Go to the EFC website and listen to Isla's pleas for help in her own

voice about what her satanic father did to her[.] exposingfamilycults.com" (ECF 253 at PageID.6614; ECF 255 at PageID.6641);

- "As a reminder: The Horvath … collection of abusers are DANGEROUS. The physical violence they have already displayed, in addition to being fueled by addictive substances, rage and anger at the truth coming out, is a toxic cocktail for Satanists. In addition, they are teamed up with felony kidnappers and psychological torturers: Rick Ross Joe Szimhart Steve Hassan…" (ECF 253 at PageID.6615; ECF 255 at PageID.6642);

- "BYRON AND STEFANIE ARE MISERABLE. SEX BETWEEN THEM ONLY HAPPENS UNDER THE INFLUENCE OF ALCOHOL. … THE DAMAGE INFLICTED UPON ISLA CONTINUES TO WORSEN AND IS AFFECTING THEIR HOME GREATLY. BYRON ACTUALLY CAN'T STAND TO HE [sic] AROUND STEFANIE BUT HIS EGO WILL NEVER ALLOW HIM TO ADMIT IT…" (ECF 253 at PageID.6616; ECF 255 at PageID.6644);

- "SASKATCHEWAN CULT EVIL. A general overview of the Wetiko virus of evil that this cluster of people has launched against people they do not even know. Details on the EXTRAORDINARY efforts they went to desstry [sic] the reputation, lives an [sic] income of innocent people. Get inside this truly sick and depraved sect of evil. [photo of Stefanie Horvath.] Stefanie Horvath is the 'new' wife of Haley Winter's Ex husband Byron Horvath. Stefanie has radically changed her appearance when she began dating Byron to appear more and more like Haley. According to what Haley has shared, this woman has been leading the charge to remove Haley's little girl, Isla from her" (ECF 255 at PageID.6637); and

- "Stefanie Vogt was after Byron since 2013, and dyed her hair blonde – after being almost jet black hair. Haley is blonde. Stefanie also created a 'winter wedding' almost identical to Haley and Bryon's (as seen in multiple videos) AND kept Haley and Byron's marital bedroom EXACTLY the same including

> leaving artwork on the wall that was GIFTED TO HALEY AT HER WEDDING (as seen in videos)[.] All indicative of obsession" (ECF 255 at PageID.6645).

### B. Plaintiffs Continue to Make and Repeat the Statements Adjudicated to Be Defamatory

In depositions and during trial testimony, Plaintiffs made it clear that they have no intention to stop making such defamatory statements about Counterclaimants. Indeed, many of the statements remain on Plaintiffs' social media and/or website, www.exposingfamilyabuse.com. At the her deposition, Ms. Wilson testified:

> Q: … Do you have any intention to stop posting on Instagram or Facebook or any of the other social media platforms about my clients?
>
> A: Any intention to stop? I have no intention to stop advocating for Isla and other victims of domestic violence and child sexual abuse.
>
> Q: That wasn't my question. My question was: Do you have any intention to stop posting on your social media platforms about my clients?
>
> A: But that's my answer. I will continue to post about people, including Isla, who is a victim of child sexual abuse.
>
> Q: It's a yes-or-n answer. So the question is: Do you have any intention to stop posting on your social media platforms about my clients?
>
> A: I've already answered.
>
> Q: No, you haven't.
>
> Mr. Portnoy: Move on.
>
> Ms. Moritz: That's the only answer you're going to give?
>
> A: Yes.

Moritz Declaration, Ex. A (Liane Wilson Deposition Transcript, Vol. II, 324:10-325:8).

Similarly, at trial, when questioned by counsel for Counterclaimants, Ms. Wilson made it clear she has no regret for any of the statements she has made about Counterclaimants and their families:

> Q: And you have no remorse for any of the statements you have made, that's - - you what testified here today, right?
>
> A: First of all, nobody asked me about remorse. But I absolutely stand behind what I said, because what I said is absolutely my opinion based on facts.
>
> Q: No remorse, correct?
>
> A: What do you - - what do you want - - what are you talking about with remorse?
>
> Q: Do you have any remorse? You know what the word means, right?
>
> A: I know what remorse means. But do you mean about getting involved with Haley? Yes, I have remorse for that because this got brought into my life. Do I have remorse for standing up for victims of child abuse? Absolutely not, zero. Nor would I.
>
> Q: And you don't have any remorse about posting anything about Isla online, right?
>
> A: Her mother asked me to, and I was - - yes.
>
> Q: Please answer my question, please. Do you have remorse about posting anything about Isla online?
>
> A: I have no remorse for posting about child advocacy, none.
>
> Q: And you will continue to do it, won't you, after this trial?
>
> A: Of course.

Ex. B (Transcript of Jury Trial – Day 7, page 7-177:13 through 7-178:12).

Some of these statements already remain on the Internet in perpetuity. On the www.exposingfamilyabuse.com website,[3] statements that Ms. Haygarth abandoned her own son remain to this day. Declaration of Paula Haygarth ("**Haygarth Decl.**"), Ex. C. Other statements still published about Ms. Haygarth include "…She is a heavy drinker, and a regular user of weed … Paula, a woman who gave up custody of her own son, actively engaging in brainwashing these vulnerable young girls to hate their mother" also remain on the website to this day. *Id.*, Ex. D. The website also still says that "Stefanie Horvath … has radically changed her appearance when she began dating Byron to appear more and more like Haley. According to what Haley has shared, this woman has been leading the charge to remove Haley's little girl, Isla from her." *Id.*, Ex. E. And also, "SASKATCHEWAN CULT EVIL. A general overview of the Wetiko virus of evil that this cluster of people has launched against people they do not even know. Details on the EXTRAORDINARY efforts they went to desstry [sic] the reputation, lives an [sic] income of innocent people. Get inside this truly sick and depraved sect of evil…" with photos of Stefanie Horvath and Paula Haygarth. *Id.*, Ex. F. These are the same statements this Court

[3] The website used to be known by the title www.exposingfamilycults.com. Haygarth Decl., ¶ 3.

and the jury found to be defamatory *per se*. *See* ECF 92 at PageID.1858; ECF 251 at PageID.6588; and ECF 255 at PageID.6637.

Plaintiffs denied any responsibility for the www.exposingfamilyabuse.com website at trial, but as this Court recognized in its MSJ Order, Plaintiffs admitted to the creation and maintenance of this website in other proceedings.[4] In any event, the jury adjudicated that Plaintiffs were responsible for the defamatory statements made on the website. ECF 251 at PageID.6588 (referring to Trial Exhibit No. 1106; ECF 255 at PageID.6637 (referring to Trial Exhibit No. 1054).

## III. ARGUMENT

In order to obtain a permanent injunction, a party must demonstrate "…(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Reno v. Nielson*, 424 F.Supp.3d 1045, 1060 (D. Haw. 2019),

[4] The Court stated: "…this conduct is troubling. At best, Plaintiffs' counsel misinterpreted Liane and neglected to diligently read the Position Statement she submitted in *United States v. Wilson*, and Liane then failed to thoroughly read her own declaration and correct the mistake before signing it. At worst, Liane intended to mislead this Court or Judge Mollway…" ECF 92 at PageID.1824. We know, now, that Ms. Wilson's contradictory declaration was not an oversight but a deliberate attempt on her part to disavow involvement in the website she previously boasted about creating.

citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Reno*, *supra*, 424 F.Supp.3d at 1060, citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

In making its determination on the equitable claim, the Court is bound by the factual findings of the jury verdict. *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016), citing *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1992). "Because the Seventh Amendment's second clause 'prohibit[s] … the courts of the United States to re-examine any facts tried by a jury' except as permitted under the narrow ['rules of the] common law,' the court then must abide by the jury's findings of fact in making any subsequent rulings." *Id.*

Here, Counterclaimants satisfy these requirements because they have prevailed in on the merits and a permanent injunction, coupled with mandatory relief, is the only manner in which Counterclaimants can obtain complete relief in conjunction with the jury's verdict in their favor.

### A. The Counterclaimants Prevailed on the Merits and Plaintiffs' Defamatory Speech is Not Constitutionally Protected

In the MSJ Order and following the jury trial of this matter, a verdict was reached in favor of Counterclaimants on all counts of defamation and false light as to both Plaintiffs. ECF 92, 251, 253, 255. Counterclaimants have succeeded on the

merits of their claims that Plaintiffs published false statements constituting defamation *per se* about each of them. The specific statements found to be defamatory are detailed in Section II.A, above.

Numerous courts, both federal and state, have held that courts may enjoin defamatory statements after there has been a determination that the speech is false and defamatory and the injunction is narrowly tailored to limit the prohibited speech that has been determined to be false. *B2Gold Corp. v. Christopher*, Case No. 1:18-cv-1202, 2020 WL 2846633, *7 (E.D. Va. May 28, 2020) (permanently restraining and enjoining defendant from publishing by mail, email, or social media the statements adjudicated to be defamatory *per se*); *Wagner Equipment Co. v. Wood*, 893 F.Supp. 1157 (D. NM 2012) (denying defendants' motion for judgment on the pleadings because an injunction prohibiting the repetition of statements determined by a jury to be defamatory was not a prohibited prior restraint); *Saadi v. Maroun*, No. 8:07-cv-01976-T-24-MAP, 2009 WL 3617788 (M.D. Fla. Nov. 2, 2009) (holding that an order to remove defamatory Internet postings and enjoining republication was appropriate because the judgment failed to provide a complete remedy against the continued existence of defamatory statements); *Balboa Island Village Inn, LLC v. Lemen*, 40 Cal.4th 1141, 1155-56, 56 P.3d 339, 349 (2007) (holding that a court may enjoin the repetition of a statement that was determined at trial to be defamatory).

Another example is *Weitsman v. Levesque*, Case No. 19-cv-461 JLS (AHG), 2020 WL 6825687 (S.D. Cal. Nov. 20, 2020), where the district court imposed mandatory and injunctive relief against a defendant with respect to statements which had been adjudicated to be defamatory. Similar to Plaintiffs here, the defendant in *Weitsman* had been making the statements in numerous online forums for more than four years, even after the initiation of litigation, as "…part of a sustained campaign to injure [the defamed party's] interests." *Id.*, at *16. It was also clear to the *Weitsman* court that the defamed party would continue to suffer injury to their reputation and business "unless and until this Court orders Defendant to stop."

It is without dispute that Counterclaimants have prevailed in establishing a violation of a legal right, and the Court is left to determine whether Counterclaimants have shown that the monetary award is an adequate remedy at law and that irreparable injury will occur if injunctive relief is not granted.

### B. Each of the Counterclaimants Will Suffer Irreparable Injury Absent a Permanent Injunction and Mandatory Relief and Monetary Damages Do Not Afford Complete Relief

At trial, there was considerable testimony about the harm Plaintiffs' defamatory statements have harmed each of the Counterclaimants.[5] There is no

---

[5] For example, *see* Ex. G (Day 5 Trial Transcript, pages 5-10:12 through 5-11:6; pages 5-25:3 through 5-28:19), Ex. H (Day 6 Trial Transcript, pages 6-30:24 through 6-32:4 and pages 6-229:18 through 6:231:5), and Ex. I (Day 7 Trial Transcript, page 7-58:20 through 7-59:6).

question this harm is irreparable; because Counterclaimants have no way of knowing how many people view and continue to view Plaintiffs' defamatory statements about them on social media and elsewhere, there is no possible way to try and repair their reputations with an unknown audience. *B2Gold Corp.*, 2020 WL 2846633 at *7. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Hawaii Legal Short-Term Rental Alliance v. City and County of Honolulu*, 709 F.Supp.3d 1141, 1156 (D. Haw. 2023), citing *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

Here, the jury verdict and damages award, though substantial, have not given Counterclaimants complete relief because the defamatory statements in Trial Exhibits 1054 (adjudicated to be defamatory at ECF 255, PageID.6637) and 1106 (adjudicated to be defamatory at ECF 251, PageID.6588) remain posted on the Internet, and Plaintiffs have testified unequivocally that they intend to continue posting about Counterclaimants. Exs. A, B. *Saadi v. Maroun*, *supra*, 2009 WL 3617788 at *2 (finding an injunction and order to remove defamatory statements from Internet postings was appropriate because although the continued existence of the statements would expose the defendant to further legal action, the fact that the defamatory statements remain on the Internet demonstrates the judgment did not have a deterrent effect). Civil damages are not a meaningful remedy to the parties that have been defamed, nor is it a meaningful deterrent to plaintiffs; Plaintiffs have

already told the court they do not intend to stop. The evidence at trial proved that Plaintiffs were viciously persistent in their defamation campaigns against each of the Counterclaimants, and that campaign continues to this day. Haygarth Decl., Exs. C-F.

Here, the injury to be avoided is the continued, persistent defamation of Counterclaimants and the harm to their reputation, business opportunities, and emotional well-being. The likelihood of recurrence is supported not only by Ms. Wilson's own testimony (at her deposition and at trial), but also the fact that a website controlled by her still broadcasts the offensive statements. Monetary damages will not provide an adequate remedy to Counterclaimants because, given that Plaintiffs continue to defame Counterclaimants, Counterclaimants "[will] be required to bring a succession of lawsuits if [the damage award] was insufficient to deter the [Plaintiffs] from continuing" to defame Counterclaimants. *Balboa Island Village Inn*, *supra*, 40 Cal.4th at 1158, 156 P.3d at 351 (nothing that monetary damages may not effectively deter "judgment proof" or wealthy defendants). Injunctive relief is appropriate and necessary.

### C. The Balance of Harm Favors Mandatory and Injunctive Relief for Counterclaimants

The harm to Counterclaimants outweighs any potential harm to Plaintiffs by being enjoined from repeating statements already determined by the Court and the jury to be defamatory *per se*. A narrowly-tailored injunction is appropriate to prevent

repetition of those defamatory statements and ongoing harm to Counterclaimants. *Balboa Island Village Inn*, 40 Cal.4th at 1148, 156 P.3d at 343 ("…an injunction issued following a trial that determined the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation is not a prior restraint and does not offend the First Amendment"). As the Court in *Balboa Island Village Inn* explained:

> … [P]reventing a person from speaking or publishing something that, allegedly, would constitute a libel if spoken or published is far different from issuing a posttrial injunction *after* a statement that has already been uttered has been found to constitute defamation. Prohibiting a person from making a statement or publishing a writing *before* that statement is spoken or the writing is published is far different from prohibiting a defendant from *repeating* a statement or *republishing* a writing that has been determined at trial to be defamatory and, thus, unlawful.

*Id.*, 40 Cal.4th at 1149-50, 156 P.3d at 344-45 (emphasis in original).[6]

A remedy in equity is warranted because Plaintiffs remain able to express themselves in a manner which does not repeat the statements that have been

---

[6] The Supreme Court of California in *Balboa Island Village Inn* cited many cases which make this distinction. *See e.g.*, *Saxby v. Easterbrook*, 3 C.P.D. 339 (1878) (issuing an injunction preventing defendants from repeating a statement claiming they had invented a railway device and plaintiffs had stolen it from them); *Flint v. Smoke Burner Co.*, 110 Mo. 492, 19 S.W. 804, 806 (1892) ("After verdict in favor of the plaintiffs, they can have an injunction to restrain any further publication of that which the jury has found to be an actionable libel or slander"); *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 437 (1957) (upholding a state law which authorized "a limited injunctive remedy" which prohibited the "sale and distribution of written and printed matter found after due trial to be obscene").

determined to be defamatory, and the balance of harm therefore favors an injunction preventing the Plaintiffs from repeating statements that have been found to be defamatory and harmful.

**D. The Public Interest is Advanced by the Equitable Relief Requested**

The public is well-served by entry of an injunction designed to prevent further publication of false and defamatory statements. Certainly, the continued utterance of the defamatory statements serves no public interest, and the public interest will not be disserved by an injunction narrowly tailored to prohibit repetition of the statements which qualify as defamatory because listeners will continue to have access to Plaintiffs' non-defamatory speech. *B2Gold Corp.*, *supra*, 2020 WL 2846633 at *7.

## IV. CONCLUSION

The proper scope of relief includes both a permanent injunction against future defamatory statements and mandatory relief to remove from publication all statements which have been found to be defamatory. Refusing mandatory relief and an injunction against repeating the defamatory statements has the same effect as allowing the defamatory speech to be repeated.

For the reasons set forth above, Counterclaimants respectfully request that this Court grant the motion and issue an order (1) requiring that Plaintiffs permanently "de-publish" those statements identified in section II.A, above, within ten (10) days

of the issuance of the order on this motion, and (2) enjoining Plaintiffs from repeating such statements already found to be defamatory *per se*.

Honolulu, Hawai‘i, September 21, 2026.

/s/ Laura P. Moritz
LOUISE K.Y. ING
LAURA P. MORITZ
JOSEPH B. ADAMS

Attorneys for Defendants/Counterclaimants
PAULA HAYGARTH, BYRON
HORVATH, and STEFANIE HORVATH