IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIFE MASTERY NETWORK LLC, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>PAULA HAYGARTH, ET AL.,<br><br>Defendants. | CIV. NO. 25-00297 JAO-RT<br><br>ORDER GRANTING DEFENDANTS'/ COUNTERCLAIMANTS' MOTION FOR EQUITABLE RELIEF (ECF NO. 278) AND DENYING AS MOOT DEFENDANTS'/ COUNTERCLAIMANTS' MOTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO RULE 54(B) (ECF NO. 274) |

**ORDER GRANTING DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR EQUITABLE RELIEF (ECF NO. 278) AND DENYING AS MOOT DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO RULE 54(B) (ECF NO. 274)**

Following a jury trial in which they prevailed on all counterclaims, Defendants/Counterclaimants Paula Haygarth ("Paula"), Byron Horvath ("Byron"), and Stefanie Vogt-Horvath ("Stefanie") (collectively, "Counterclaimants") filed a Motion for Equitable Relief Regarding Defamatory Statements ("Motion" or "Motion for Equitable Relief"). ECF No. 278. Plaintiffs/Counterclaim-Defendants Liane Wilson ("Wilson") and Life Mastery Network LLC ("Life Mastery") (collectively, "Counterclaim-Defendants") oppose.

ECF No. 281. For the following reasons, the Court GRANTS the Motion. The resolution of the Motion moots Counterclaimants' Motion for Rule 54(b) Certification, ECF No. 274.

## I. BACKGROUND[1]

### A. The Allegations, Relevant Pre-Trial Rulings, and Verdicts

After this case was originally brought in State Court in 2022, Counterclaimants removed it to federal court in 2025. *See* ECF No. 1 at 3–4. At that point, Wilson and Life Mastery had alleged in a First Amended Complaint ("FAC") the following claims against all Counterclaimants: Count I (Defamation – Libel); Count II (False Light); Count III (Intentional/Negligent Infliction of Emotional Distress); Count IV (Civil Conspiracy); and Count V (Punitive Damages). *See id.* Counterclaimants had filed a First Amended Counterclaim for Defamation and False Light/Invasion of Privacy against both Counterclaim-Defendants. *See* ECF No. 82-5 at 24–27.

Counterclaimants moved for summary judgment on Counterclaim-Defendants' FAC and (separately) on their counterclaims. *See* ECF Nos. 46, 49. Notably, Wilson and Life Mastery did not move for summary judgment. The

---

[1] A more detailed factual background can be found in the Court's Order dated May 22, 2026, which granted in part Counterclaimants' motions for summary judgment on Counterclaim-Defendants' claims and their own counterclaims. *See* ECF No. 92.

Court held a hearing on April 9, 2026, ECF No. 86, and subsequently granted in part summary judgment for Counterclaimants, *see* ECF No. 92. In particular, the Court determined that statements that Counterclaim-Defendants made about Paula abandoning her child were defamatory *per se*, *see* ECF No. 92 at 58–59. Such statements included:

- "She abandoned her own son Austin, and her guilt and shame have turned her into a soldier for satan." ECF No. 251 at 11.
- "Paula Haygarth. Abandon your own child so you have free time to attack other people's children." *Id.*
- "Who is PAULA? ... WHO IS AUSTIN. THE SON SHE ABANDONED AS A BABY." *Id.*

On August 3, 2026, the case proceeded to jury trial. ECF No. 180. At no point did Counterclaim-Defendants move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. After an eight-day trial, the jury rendered its verdicts. *See* ECF Nos. 245, 247, 249, 251, 253, 255.

The jury found Counterclaimants not liable for any claims Wilson and Life Mastery had alleged, *see* ECF Nos. 245, 247, 249, but did conclude Counterclaim-Defendants had committed the torts of defamation and false light against each of the Counterclaimants *see* ECF Nos. 251, 253, 255. Specifically, the jury found the following statements to be defamatory, some of which were posted on Wilson's

Instagram account, and some of which, as indicated, appeared on her website, www.exposingfamilyabuse.com ("Exposing Family Abuse website"):

- "Jesus we ask you to DELETE AND DESTROY all toxic lies from this satan servant – PAULA HAYGARTH – who is campaigning to invalidate truths of #childabuse to cover up her own misery. She is hateful and envious, and in her hatred and envy, she cannot bring herself to acknowledge the pain of children who have been harmed by their parents." ECF No. 251 at 3.
- "Jesus we ask you to delete and destroy all evil within and emitted from back [sic] magic reiki witch Paula Haygarth[.]" ECF No. 251 at 4.
- "And when these satanists, Byron Horvath … along with Paula Haygarth, … began their satanic lies, defamation and libel, I KNEW Jesus would use these satanists for HIS purpose." ECF No. 251 at 5; ECF No. 253 at 3.
- "What WE are doing in this JESUS LED community in calling out THESE PEOPLE … Paula Haygarth … Stefanie Vogt … Byron Horvath … This vile group of PEDOS PEDO SUPPORTERS PEDO ALIGNERS VICTIM BLAMERS." ECF No. 251 at 6; ECF No. 253 at 6; ECF No. 255 at 4.

- "It's all in plain sight. #pedos … #kidnappers [photo of Paula, Stefanie below]." ECF No. 251 at 7; ECF No. 255 at 9.
- "Who is PAULA? A bitter aging woman with a bleak future, with a broke husband, desperate to get her claws on the BRADY'S [sic] wealth by gaining custody of her husband's children. … Austin was a very small child. Instead she chose to live her life of new age 'life coaching', completely abandoning her own son, and never looking back … She is a heavy drinker, and a regular user of weed … Paula, a woman who gave up custody of her own son, actively engaging in brainwashing these vulnerable young girls to hate their mother." ECF No. 251 at 8, ECF No. 219 at 10; ECF No. 267 at 8–9 (establishing that this statement was in Exhibit 1106, which was a printout of the website).
- "…Their situation is dire. Isla is still with the man BYRON HORVATH who this little girl repeatedly says abused her in the recordings. Hit her. Locked her in a room for hours where she had to Pee on the floor. Wrestled this small child who has a serious heart condition into a panic attack." ECF No. 253 at 4.
- "Mother/Child Bond – Abusers make it their mission to destroy the bond between mother and child … This is what is being done to Haley

and Isla through the sick abusive actions of #byronhorvath … SADLY this is not uncommon." ECF No. 253 at 5.

- "…Byron. Stalking Malie. Stalking the former supervisor. Stalking Haley when she began dating. And she has suffered A LOT of karma for her actions. And she has an awareness of that. And yes, we are starting to see the karma settling in … with Stefanie Vogt Horvath. Right now, Stefanie is stuck in the self righteous, indignant, vindictive stage of wanting to hurt Haley. This comes from extreme jealously. Byron chose Haley. And Stefanie wanted Byron from way back in 2009. (only God can understand that one)[.] And after Haley left Byron, he stalked her and was rageful and jealous when she started seeing other men. Stefanie knows she's Byron's seconds or probably fourths fifths or twenty fifths based on who he follows on Twitter … but I digress[.] And this is her opportunity to punish choice number one. That's all Haley is to her. And she doesn't care that she is directly causing permanent harm to Isla. Damage that can never be undone. That's on HER SOUL. … These are harmful dangerous people. And Stefanie knows it. She's the one who had to stop the abuse when Byron was attacking his small child when she went into a panic. But her seething jealously of Haley blocks her from doing

what's right. They ALL know Haley is an amazing mother. They KNOW Isla is so happy with her mom and that she is safe with her. But Isla is nothing more than a pawn in their sick and twisted game of trying to silence the REAL FAMILY DISGRACE from being revealed. It would destroy their entire fake alcohol rage fueled pretend 'happy family' facade. A facade that at this point, no one in the entire province of Saskatchewan believes anymore. But they still won't give it up. And every day they continue to punish Haley for a mistake she made (one that in no way hurt Isla) is another day they cause additional trauma to a little girl with a heart condition who just wants her mommy. To me? There is nothing sicker. Nothing more evil. Nothing more satanic. Than intentionally harming an innocent child. That, to me, is the most depraved of all beings walking this earth." ECF No. 253 at 7; ECF No. 255 at 5–6.

- "Evil dark satanic people like Byron Horvath … Stefanie Vogt … Manipulate and use corrupt systems to GAG AND SILENCE mothers speaking out about abuse. These people are UNSTABLE UNHINGED AND DANGEROUS[.] Please pray for Isla[.] Go to the EFC website and listen to Isla's pleas for help in her own voice about

what her satanic father did to her[.] exposingfamilycults.com." ECF No. 253 at 9; ECF No. 255 at 7.

- "As a reminder: The Horvath … collection of abusers are DANGEROUS. The physical violence they have already displayed, in addition to being fueled by addictive substances, rage and anger at the truth coming out, is a toxic cocktail for Satanists. In addition, they are teamed up with felony kidnappers and psychological torturers: Rick Ross Joe Szimhart Steve Hassan…" ECF No. 253 at 10; ECF No. 255 at 8.
- "BYRON AND STEFANIE ARE MISERABLE. SEX BETWEEN THEM ONLY HAPPENS UNDER THE INFLUENCE OF ALCOHOL. … THE DAMAGE INFLICTED UPON ISLA CONTINUES TO WORSEN AND IS AFFECTING THEIR HOME GREATLY. BYRON ACTUALLY CAN'T STAND TO HE [sic] AROUND STEFANIE BUT HIS EGO WILL NEVER ALLOW HIM TO ADMIT IT…" ECF No. 253 at 11; ECF No. 255 at 10.
- "SASKATCHEWAN CULT EVIL. A general overview of the Wetiko virus of evil that this cluster of people has launched against people they do not even know. Details on the EXTRAORDINARY efforts they went to desstry [sic] the reputation, lives an [sic] income of

innocent people. Get inside this truly sick and depraved sect of evil. [photo of Stefanie Horvath.] Stefanie Horvath is the 'new' wife of Haley Winter's Ex husband Byron Horvath. Stefanie has radically changed her appearance when she began dating Byron to appear more and more like Haley. According to what Haley has shared, this woman has been leading the charge to remove Haley's little girl, Isla from her." ECF No. 255 at 3; ECF No. 219 at 2; ECF No. 266 at 201 (establishing that this statement was in Exhibit 1054, which was a printout of the website).

- "Stefanie Vogt was after Byron since 2013, and dyed her hair blonde – after being almost jet black hair. Haley is blonde. Stefanie also created a 'winter wedding' almost identical to Haley and Bryon's (as seen in multiple videos) AND kept Haley and Byron's marital bedroom EXACTLY the same including leaving artwork on the wall that was GIFTED TO HALEY AT HER WEDDING (as seen in videos)[.] All indicative of obsession." ECF No. 255 at 11; ECF No. 269 at 176–77 (establishing that statements about Stefanie's appearance attributed to Liana Shanti's Instagram account were later posted to the website).

The jury returned verdicts on August 13, 2026, awarding Byron and Stefanie $1.6 million each. *See* ECF No. 253 at 12; ECF No. 255 at 12. The jury also awarded Paula $1.6 million for the statements found to be defamatory at trial, and awarded an additional $500,000 in damages for the statements the Court found defamatory *per se* at the summary judgment stage. *See* ECF No. 251 at 9–11. Counterclaimants were each awarded $10 million in punitive damages. *See* ECF No. 251 at 12; ECF No. 253 at 14; ECF No. 255 at 14. In total, the jury awarded Counterclaimants $35.3 million in damages.

**B. The Post-Trial Motions**

After trial, Counterclaimants filed a Proposed Judgment in a Civil Case, which the Court construed as a request for partial judgment under Fed. R. Civ. P. 54(b). *See* ECF Nos. 272, 273. At the Court's direction, Counterclaimants then filed a Motion for Rule 54(b) Certification ("Certification Motion"), ECF No. 274, seeking Rule 54(b) certification of the Court's summary judgment order and the special verdict forms. Counterclaim-Defendants opposed. ECF No. 276.

On September 21, 2026, Counterclaimants filed the instant motion, ECF No. 278, which Counterclaim-Defendants also opposed, ECF No. 281. Counterclaimants filed a Reply on October 22, 2026. ECF No. 282. The Court held the Certification Motion in abeyance, pending the hearing on the instant

Motion, *see* ECF No. 279, which was held on November 6, 2026, *see* ECF No. 284.

## II. LEGAL STANDARD

A party seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006). The movant must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See id.* The decision to grant or deny permanent injunctive relief is an act of equitable discretion. *See id.*

## III. DISCUSSION

In their Motion, Counterclaimants ask the Court to: (1) order Counterclaim-Defendants to "permanently 'de-publish'" within 10 days all statements that the jury and the Court found to be defamatory; and (2) enjoin Counterclaim-Defendants from "repeating such statements." ECF No. 278 at 21–22. Counterclaim-Defendants respond that injunctive relief is an improper remedy and the elements required for a permanent injunction have not been satisfied. *See generally* ECF No. 281. The Court GRANTS the Motion.

## A. Repetition of Defamatory Statements

### 1. Defamation and the First Amendment

Before turning to the permanent injunction elements, the Court considers the law regarding equitable relief in defamation cases and concludes that the injunction Counterclaimants seek would not violate the First Amendment. As Counterclaim-Defendants correctly point out, injunctive relief in defamation cases is often disfavored because a permanent injunction can constitute a prior restraint on expression under the First Amendment. *See In re Dan Farr Prods.*, 874 F.3d 590, 596 (9th Cir. 2017) ("'Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context'") (citing *CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994)); *Weitsman v. Levesque*, 2020 WL 759356, at *11 (S.D. Cal. Feb. 14, 2020); *New Show Studios LLC. v. Needle*, 2016 WL 7017214, at *9 (C.D. Cal. Dec. 1, 2016), *aff'd sub nom. New Show Studios, LLC v. Howe*, 696 F. App'x 271 (9th Cir. 2017); *Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) ("[A]bsent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases.").

Nevertheless, the Ninth Circuit has previously held—albeit in an unpublished decision—that a court may enjoin offending parties from *repeating* statements determined at a trial to be defamatory. *See Ferguson v. Waid*, 798 F.

App'x 986, 989 (9th Cir. 2020) ("[W]e reverse and remand with instructions to revise section (a) [of the injunction] to add the underlined language: 'Sandra Ferguson is enjoined from repeating the same or effectively identical statements found to be defamatory in this case to past or present clients of Brian J. Waid, either in person, via telephone, or by electronic communications.'"). Citing *E & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992), the panel reasoned that injunctive relief would be narrowly tailored to eliminate only the specific harm alleged. *See Ferguson*, 798 F. App'x at 989. Other circuit and state appellate courts have similarly determined that injunctions narrowly tailored to prevent repetition of speech already deemed defamatory do not constitute unlawful prior restraints. *See Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993) ("An injunction that is narrowly tailored, based upon a continuing course of repetitive speech, and granted only after a final adjudication on the merits that the speech is unprotected does not constitute an unlawful prior restraint."); *Lothschuetz v. Carpenter*, 898 F.2d 1200, 120809 (6th Cir. 1990) (adopting dissenting opinion on equitable relief and issuing permanent injunction limited to any repeated

statements previously found to be false and libelous)[2]; *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155–56 (2007) (holding that a court may enjoin the repetition of a statement that was determined at trial to be defamatory).

Thus, despite the strong presumption against injunctive relief in defamation cases, a party may nonetheless obtain such relief by narrowly tailoring their request to limit repeated speech already found to be defamatory, *see Ferguson*, 798 F. App'x at 989, and by otherwise meeting their burden under the ordinary four-factor test for equitable relief, *see Weitsman*, 2020 WL 759356, at *11–12.

In this case, Counterclaimants seek an order enjoining Counterclaim-Defendants from repeating statements that have already found to be defamatory. *See* ECF No. 278 at 21–22. Such an injunction is narrowly tailored to statements already found to be unprotected by the First Amendment, and thus does not

---

[2] In case there is any confusion that the "dissenting" opinion in *Lothschuetz* outlines the Sixth Circuit's majority holding, the primary opinion's author, Circuit Judge Ralph B. Guy, Jr., acknowledged:

> The district court, which characterized the injunction requested by the plaintiffs as an unwarranted prior restraint on freedom of speech, refused to award injunctive relief. I would adhere to the general rule identified by the District of Columbia Circuit and uphold the district court's decision. Judge Wellford, joined by Judge Hull, is of a contrary view and thus *the dissent becomes the opinion of the court on this issue*.

*Id*. at 1206 (emphasis added).

constitute an unlawful prior restraint. *See Ferguson*, 798 F. App'x at 989; *Lothschuetz*, 898 F.2d at 1208–09; *Auburn Police Union*, 8 F.3d at 903; *Balboa Island*, 40 Cal. 4th at 1155–56.

Counterclaim-Defendants cite a number of cases suggesting that injunctive relief is inappropriate here. *See* ECF No. 281 at 15–19. But the Court agrees with Counterclaimants that Counterclaim-Defendants' authorities are not on point. *See* ECF No. 282 at 9–10. Counterclaim-Defendants' cases concern either statements not adjudicated to be defamatory, *see Demby v. Eng.*, 667 So. 2d 350, 355 (Fla. Dist. Ct. App. 1995) (no statements adjudicated as defamatory); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 179 (2d Cir. 2001) (no statements adjudicated as defamatory); *New Era Publications Int'l, ApS v. Henry Holt & Co.*, 695 F.Supp. 1493, 1528 (S.D.N.Y. 1988) (concerning defamation in copyright infringement and fair use context); *Sindi v. El-Moslimany*, 896 F.3d 1, 34 (1st Cir. 2018) (holding that an injunction sought was improperly entered prior to an adjudication that the relevant statements did not warrant First Amendment protection), or injunctions that swept more broadly than strictly necessary, *see Kinney v. Barnes*, 443 S.W.3d 87, 93 (Tex. 2014) (determining that enjoining a party from making similar defamatory statements "in any form" is an impermissible prior restraint); *Oakley, Inc. v.*

*McWilliams*, 879 F. Supp. 2d 1087, 1091 (C.D. Cal. 2012) (concluding that it is impermissible to enjoin general categories of statements).

Because an injunction as narrowly tailored as the one Counterclaimants propose here would not constitute an unlawful prior restraint, the Court now turns to the four-factor test for determining the applicability of injunctive relief.

**2. Permanent Injunction**

Here, Counterclaimants have satisfied the requirements to obtain a permanent injunction prohibiting Counterclaim-Defendants from repeating the defamatory statements identified above. *See eBay Inc.*, 547 U.S. at 391. The Court walks through each of the four preliminary injunction factors below.

***a. Irreparable Injury***

Counterclaimants argue that the irreparable injury is the "the harm to their reputation, business opportunities, and emotional well-being." *See* ECF No. 278 at 19. Counterclaim-Defendants respond that the reputational harm asserted has already occurred and that the jury has remedied it with damages. *See* ECF No. 281 at 10. The Court agrees with Counterclaimants.

The Ninth Circuit has held that reputational injuries, lost business opportunities, and loss of goodwill can constitute irreparable harm. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th

Cir. 1991). At least one other court has recognized that defamatory statements may cause irreparable reputational harm where the injured party cannot identify everyone who read them and thus cannot repair the resulting damage to their reputation. *See B2Gold Corp. v. Philip Bryson Christopher*, 2020 WL 2846633, at *7 (E.D. Va. May 28, 2020) ("[P]laintiffs have established that dissemination of the false and defamatory statements contained in the Spectre Report has caused irreparable harm. Because plaintiffs are not certain of the identities of the recipients of the Spectre Report, plaintiffs are unable to attempt to repair their reputations by contacting those individuals").

At trial, Counterclaimants testified that the dissemination of the defamatory statements identified above caused them irreparable harm in the form of physical and emotional injury, reputational injury, and loss of goodwill. *See* ECF Nos. 278-9; 278-10; 278-11. Paula, for instance, testified to the paranoia, shock, and terror she experienced as a result of the dissemination of the defamatory statements, as well as her inability to promote her business within her community. *See* ECF No. 278-9 at 5–10. Stefanie testified that she filed a police report, that she was scared to travel within and outside her community, and that her hair began falling out as a result of her stress. *See* ECF No. 278-10 at 5–7. And both Byron and Stefanie testified that owing to the size of their communities, almost "everyone" was

involved in discussing, either to their face or otherwise, the defamatory statements. *See id.* at 6–9.

The trial testimony thus established that the statements caused substantial reputational harm within Counterclaimants' communities and interfered with their personal and professional lives. This constitutes irreparable harm. *See Herb Reed*, 736 F.3d at 1250; *Rent-A-Ctr*, 944 F.2d at 603. And because Counterclaimants cannot be certain of the identities of the recipients of the defamatory statements, Counterclaimants are unable to attempt to repair their reputations by contacting those individuals. *See B2Gold Corp.*, 2020 WL 2846633, at *7.

Counterclaim-Defendants argue in response that the reputational harm has already occurred, and bolsters their argument with caselaw suggesting that the usual remedy in defamation cases is damages. *See* ECF No. 281 at 10. As discussed above, however, while Counterclaim-Defendants are correct that the traditional remedy for defamation is monetary damages, no authority appears to bar the provision of narrowly tailored injunctive relief in defamation cases. *See supra.* Nor is the Court persuaded that Counterclaimants' injuries are confined to past harm. As of the parties' last briefing in October 2026, Counterclaim-Defendants continue to publicly announce that Counterclaimants are engaged in child abuse. *See* ECF Nos. 282-3; 282-4; 282-5; 282-7. Indeed, when pressed at the hearing on the Motion, counsel said that Wilson was "going to continue to

advocate for the issues she feels devoted to." ECF No. 285 at 14. In other words, Counterclaim-Defendants have given no indication that they intend to stop. *See id.* Under these circumstances, the Court is persuaded that Counterclaimants face a continuing threat of reputational injury absent injunctive relief.

***b. Inadequacy of Damages***

Counterclaimants argue that monetary damages will not provide an adequate remedy because Counterclaim-Defendants continue to defame them. *See* ECF No. 278 at 19. Counterclaim-Defendants don't contest this but claim that they do not maintain any current control over the Exposing Family Abuse website on which defamatory statements are posted and that their Instagram accounts have no Highlights containing statements found to be defamatory. *See* ECF No. 281 at 11. Here, again, the Court sees monetary damages as inadequate to compensate for the harms befalling Counterclaimants.

The Ninth Circuit has explained that where the threatened injury is imminent and cannot reasonably be calculated, monetary damages do not provide an adequate remedy. *See Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1105 (9th Cir. 1994). As discussed above, Counterclaim-Defendants are continuing to allege that Counterclaimants are engaged in child abuse, such that the reputational injury already suffered remains imminent. *See* ECF Nos. 282-3; 282-4; 282-5; 282-7. And again, because Counterclaimants cannot be certain of the

identities of the recipients of the defamatory statements, the extent of the reputational harm cannot be reasonably calculated. *See B2Gold Corp.*, 2020 WL 2846633, at *7. As such, the Court concludes that monetary damages do not provide an adequate remedy. Moreover, although Counterclaim-Defendants' present control over the website bears on the scope of available injunctive relief, that argument doesn't squarely address the issue of whether monetary damages adequately compensate Counterclaimants for their lost business opportunities or the physical, emotional, and reputational harms.

Counterclaim-Defendants also contend that the damages awarded by the jury to Counterclaimants should deter future statements. *See id.* at 12. But that is directly undermined by the fact that the $35.3 million verdict has not deterred Counterclaim-Defendants from continuing to make statements about Counterclaimants. *See* ECF Nos. 245, 247, 249, 251, 253, 255. In such cases, injunctive relief may be appropriate. *See Balboa Island Village Inn, Inc.*, 40 Cal. 4th at 1158 (noting that monetary damages may not effectively deter "judgment proof" or wealthy defendants).

***c. Balance of Hardships***

Counterclaimants next argue that the balance of the hardships weighs in their favor, as the harm to Counterclaimants outweighs any potential harm to Counterclaim-Defendants from a court order enjoining them from repeating the

defamatory statements. *See* ECF No. 278 at 19–21. Counterclaim-Defendants argue that they have the constitutional right to speak freely without censorship, and that if the Court grants Counterclaimants injunctive relief, the harm to Counterclaim-Defendants' right to free speech would outweigh any harm to Counterclaimants. *See* ECF No. 281 at 12–13. The Court finds that the balance of the hardships weighs in favor of Counterclaimants.

As discussed above, the harm to Counterclaimants is both significant and irreparable without the provision of injunctive relief. Counterclaim-Defendants, meanwhile, have no constitutional right to repeat statements already determined to be defamatory. *See United States v. Alvarez*, 617 F.3d 1198, 1206 (9th Cir. 2010) ("[W]e believe the historical category of unprotected speech identified in *Gertz* [*v. Robert Welch, Inc.*, 418 U.S. 323 (1974)] and related law is defamation[.]"); *Balboa Island Village Inn, Inc.*, 40 Cal. 4th at 1148. And because the requested injunction would be narrowly tailored to cover only statements already determined to be defamatory, Counterclaim-Defendants are not enjoined from expressing themselves in a manner that does not repeat the statements determined to be defamatory. *See Balboa Island Village Inn, Inc.*, 40 Cal. 4th at 1158.

***d. Public Interest***

Lastly, Counterclaimants argue that the continued utterance of defamatory statements serves no public interest, and listeners would continue to have access to

Counterclaim-Defendants' non-defamatory speech. *See* ECF No. 278 at 21. Counterclaim-Defendants again argue that the public interest is not served by the censorship of speech. *See* ECF No. 281 at 13–14.

Although the public has a substantial interest in protecting freedom of expression, it also has an interest in protecting individuals against reputational injury caused by defamatory falsehoods. *See Gertz*, 418 U.S. at 341. Here, an injunction prohibiting repetition of statements already determined defamatory protects individuals against reputational injury and leaves Counterclaim-Defendants free to engage in other protected speech. As such, the public interest will not suffer from a narrowly tailored injunction prohibiting repetition of those statements already determined to be defamatory. *See B2Gold Corp.*, 2020 WL 2846633, at *7; *Balboa Island Village Inn, Inc.*, 40 Cal. 4th at 1158.

**B. De-publication of Defamatory Statements**

Counterclaimants also request that Counterclaim-Defendants remove statements found to be defamatory from the Exposing Child Abuse website within ten days of the issuance of the order. *See* ECF No. 278 at 21–22.

Other than declaring that they neither own nor maintain any control over the Exposing Family Abuse website, Counterclaim-Defendants make no specific arguments as to their opposition to the removal of defamatory statements. *See* ECF No. 281 at 11–12; ECF No. 281-1. In their Reply, Counterclaimants point out

Counterclaim-Defendants' non-responsiveness on the removal issue, and further to the inconsistencies in Counterclaim-Defendants' testimonies in different cases regarding responsibility over the website. *See* ECF No. 282 at 2–3, 7–8.

At least one court has determined that ordering the removal or deletion of posted speech determined to be defamatory is not a prior restraint on future speech. *See Kinney v. Barnes*, 443 S.W.3d 87, 89 (Tex. 2014) (holding that an injunction that requires "the removal or deletion" of speech does not enjoin future speech and is not a prior restraint). This makes sense because the removal from media of a previously-posted defamatory statement involves a defamatory statement that was *already made*. And the analysis of the preliminary injunction factors regarding the repeating of defamatory speech applies with equal force to the removal of defamatory speech from the website. As discussed above, Counterclaimants have demonstrated that they have suffered irreparable harm as a result of the publication of Counterclaim-Defendants' defamatory statements, that damages are unlikely to provide an adequate remedy, and that the public has no interest in the continued public existence of defamatory statements. On the balance of the hardships, Counterclaimants continue to suffer harm should the defamatory posts remain, while Counterclaim-Defendants will not suffer from any prospective restraints on speech if their past defamatory statements are taken down. As such, the Court

finds that injunctive relief requiring the removal of the statements already adjudicated defamatory from the Exposing Family Abuse website is warranted.

This leaves only the issue of logistics. Counterclaim-Defendants aver that they maintain no control over the website. *See* ECF No. 281 at 11–12; ECF No. 281-1. As it noted at summary judgment, however, the Court finds the inconsistencies in Counterclaim-Defendants' sworn testimonies regarding the website troubling, *see* ECF No. 92 at 24–25, and is not especially persuaded by Counterclaim-Defendants' categorical disclaimer of responsibility for the statements on the website. In her prior federal criminal proceeding, Wilson had represented to the judge that she had created the website. *See* ECF No. 263 at 29–30. Her husband, meanwhile, testified at trial in this case that he had purchased the domain name and web host for the website on behalf of one of Wilson's students, Briana. *See* ECF No. 266 at 97, 128–133. Other witnesses also testified to Wilson's pride in and public promotion of the website on her social media, *see* ECF No. 268 at 185–186, and she has further testified to knowing that her Instagram posts are screenshotted and posted onto the website by others, *see* ECF No. 269 at 175, 177. And as Counterclaimants argue, the jury eventually found her responsible for the content on the website. *See* ECF Nos. 251, 253, 255. Given the above, the Court is satisfied that Counterclaim-Defendants have the ability to

remove—or otherwise direct removal of—the statements found to be defamatory from the Exposing Family Abuse website.

### C. Certification to the Hawai‘i Supreme Court

Counterclaim-Defendants separately argue that the Court should certify to the Hawai‘i Supreme Court the question of whether the state constitution permits injunctions against future speech following adjudication of defamation. *See* ECF No. 281 at 19–20. Counterclaimants argue that certification is unnecessary and oppose any effort that would delay entry of final judgment. *See* ECF No. 282 at 15.

The Ninth Circuit has provided that certification to a state supreme court is a process that is reserved for state law questions that present significant issues, “including those with important public policy ramifications,” and that have not yet been resolved by the state courts. *Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003). Factors to consider in determining whether certification is appropriate include whether the state supreme court’s answer is “determinative” of the issue. *Id.* Certification should be taken only after careful consideration and should not be done so lightly. *See id.*

Here, the Court finds certification to the Hawai‘i Supreme Court to be unnecessary to resolve the present motion. The relief requested concerns either repetitions or removals of speech already found to be defamatory—a category of

speech not even Counterclaim-Defendants say is protected under the Hawai‘i constitution. *See Kremen*, 325 F.3d at 1037–38. Furthermore, the Court agrees with Counterclaimants that the effort to certify such a question would unnecessarily delay entry of final judgment in the matter. As such, the Court declines to certify the question presented.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS Counterclaimants' Motion for Equitable Relief, ECF No. 278. Counterclaim-Defendants are enjoined from repeating the statements already found to be defamatory, and are directed to remove (or direct removal of) the statements already found to be defamatory from the Exposing Family Abuse website.

Because the Court's resolution of the Motion for Equitable Relief disposes of all remaining claims in this action, entry of final judgment pursuant to Rule 54(b) is no longer necessary. Accordingly, the Court DENIES AS MOOT Counterclaimants' Motion for Entry of Final Judgment Pursuant to Rule 54(b), ECF No. 274. Counterclaimants are directed to submit a revised proposed final judgment reflecting the Court's rulings on the claims and the relief awarded.

IT IS SO ORDERED.

DATED: Honolulu, Hawai‘i, November 23, 2026.

Jill A. Otake
United States District Judge

CIV. NO. 25-00297 JAO-RT, *Life Mastery Network LLC, et al. v. Haygarth, et al.*.; ORDER GRANTING DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR EQUITABLE RELIEF (ECF NO. 278) AND DENYING AS MOOT DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO RULE 54(B) (ECF NO. 274)